UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| JOHN DOE,<br><br>　　　　　　*Plaintiff*,<br><br>　　v.<br><br>PRINCETON UNIVERSITY,<br><br>　　　　　　*Defendant.* | Civil Action No. 3:22-05887-ZNQ-DEA<br><br>Hearing Date: February 21, 2023 |

### REPLY IN SUPPORT OF
### DEFENDANT'S MOTION TO DISMISS

Linda Wong
WONG FLEMING
821 Alexander Road, Suite 200
Princeton, NJ  08543-3663
Tel.: (609) 951-9520
Fax: (609) 951-0270
Email: lwong@wongfleming.com

Laurel Pyke Malson (*pro hac vice*)
Amanda Shafer Berman (*pro hac vice*)
CROWELL & MORING LLP
1001 Pennsylvania Ave., N.W.
Washington, D.C. 20004
Tel.: (202) 688-3451
Email: LMalson@crowell.com,
ABerman@crowell.com

*Attorneys for Defendant Princeton University*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................... ii

INTRODUCTION............................................................................................................... 1

ARGUMENT ...................................................................................................................... 2

I. *Princeton III* and the other cases on which Doe relies addressed fundamentally different allegations and do not control here. .............................. 2

    A. The key allegations supporting the Title IX claims in *Princeton III* and *USciences* are not present here. ............................................................. 3

    B. *Princeton III* confirmed that Doe's allegations of "pressure" to address sexual assault do not suffice to support a Title IX claim. ........... 8

    C. Unlike in *Princeton III*, Doe does not allege facts that indicate that the disciplinary process or outcome resulted from gender bias. .............. 9

II. Doe's contract and good faith and fair dealing claims are meaningfully different from those in *Princeton III* and fundamentally deficient. ..................... 11

III. Doe's common negligence claim is barred by the NJCIA.................................. 13

CONCLUSION ............................................................................................................... 15

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Bass v. House of Prayer Cogic of Orange*,
   No. A-1284-20, 2021 WL 6132768 (N.J. Super. Ct. App. Div.
   Dec. 29, 2021) (per curiam) ................................................................................ 13, 14

*Booker v. Lehigh Univ.*,
   800 F. Supp. 234 (E.D. Pa. 1992), *aff'd*, 995 F.2d 215 (3d Cir. 1993) ....................... 15

*Bradshaw v. Rawlings*,
   612 F.2d 135 (3d Cir. 1979) ....................................................................................... 15

*Doe v. Princeton Univ.*,
   3:19-cv-07853 (Feb. 6, 2023), ECF No. 87 ................................................................. 4

*Doe v. Princeton Univ.*,
   30 F.4th 335 (3d Cir. 2022) .................................................................................*passim*

*Doe v. Princeton Univ.*,
   790 F. App'x 379 (3d Cir. 2019) ............................................................................ 5, 11

*Doe v. Rider Univ.*,
   No. 16-cv-4882, 2020 WL 634172 (D.N.J. Feb. 4, 2020) ........................................... 5

*Doe v. Samford Univ.*,
   29 F.4th 675 (11th Cir. 2022) ............................................................................... 6, 7, 9

*Doe v. Trs. of Bos. Coll.*,
   892 F.3d 67 (1st Cir. 2018) ....................................................................................... 15

*Doe v. Trs. of Dartmouth Coll.*,
   No. 21-cv-085, 2021 WL 2857518 (D.N.H. July 8, 2021) ........................................ 15

*Doe v. Univ. of the Sciences*,
   961 F.3d 203 (3rd Cir. 2020) ....................................................................................... 3

*Franco v. Fairleigh Dickinson Univ.*,
   248 A.3d 1254 (N.J. Super. Ct. App. Div. 2021) ....................................................... 14

*Freeman v. Busch*,
   349 F.3d 582 (8th Cir. 2003) ................................................................................................ 15

*Gendia v. Drexel Univ.*,
   No. 20-cv-1104, 2020 WL 5258315 (E.D. Pa. 2020) .......................................... 7, 9, 10

*Graddy v. Deutsche Bank*,
   No. 11-3038, 2013 WL 1222655 (D.N.J. Mar. 25, 2013) ............................................ 15

*McMahon v. Salmond*,
   573 F. App'x 128 (3d Cir. 2014) ..................................................................................... 11

*Mittra v. Univ. of Med. & Dentistry of N.J.*,
   719 A.2d 693 (N.J. Super. Ct. App. Div. 1998) ............................................................ 11

*Monaghan v. Holy Trinity Church*,
   646 A.2d 1130 (N.J. Super. Ct. App. Div. 1994) ......................................................... 15

*Steinberg v. Sahara Sam's Oasis, LLC*,
   142 226 N.J. 344 (2016) .......................................................................................... 13, 14

**Statutes**

N.J. Stat. 2A:53A-10 .......................................................................................................... 14

New Jersey Charitable Immunities Act (NJCIA) ............................................. 2, 13, 14, 15

The Trustees of Princeton University ("Princeton" or the "University") submit this Reply in Support of their Motion to Dismiss under Fed. R. Civ. P. 12(b)(6).

## INTRODUCTION

Doe's response ("Opp'n") to Princeton's Motion to Dismiss boils down to his assertion that this case is identical to *Doe v. Princeton University*, 30 F.4th 335, 342 (3d Cir. 2022) ("*Princeton III*"), so his claims must be allowed to proceed. Doe is wrong.

The allegations in *Princeton III* were fundamentally different. There, a male student who was expelled for sexual misconduct alleged that he and a female student were treated differently after reporting similar violations of the RRR, and again when both violated a no-contact order. 30 F.4th at 344-45. Factual allegations of that type—indicating different treatment of a man and woman for the same claimed misconduct—are *not* presented here. Doe's allegations are, in essence, that the University misjudged two students' credibility and made an incorrect decision. Even if true, such allegations would not show gender bias and so are insufficient to support a Title IX claim.

Doe argues that the "inexplicable" result of the disciplinary proceeding is sufficient evidence of gender bias. But that contradicts Doe's own allegations and the Panel documents on which he relies, which in fact *explain* the Panel's reasons for finding Doe responsible for unwanted touching and kissing. Even if the Court did not agree with that reasoning, a disputable result is not enough to show gender bias—even when combined with allegations of "pressure" to address sexual assault. If that were all it took to plead a viable Title IX claim (or contract-based claims based on a student handbook

promising "fairness"), every disciplinary decision would lead to a judicial re-do.

Finally, Doe's argument that his negligence claim survives the New Jersey Legislature's decision to grant universities charitable immunity for such claims makes no sense. If Doe were right that a plaintiff need not even attempt to articulate a *gross* negligence claim to survive a Rule 12 motion, but can simply assert a common negligence claim and leave it to the factfinder to determine whether the negligence rises to the level of gross, the New Jersey Charitable Immunities Act ("NJCIA") would have little effect. But New Jersey courts have rejected similar attempts to eviscerate the NJCIA and avoid its purpose: to allow charitable institutions like universities to conduct their business without constant risk of negligence claims. Like the rest of his claims, Doe's negligence claim should be dismissed with prejudice.

## ARGUMENT

**I.    *Princeton III* and the other cases on which Doe relies addressed fundamentally different allegations and do not control here.**

The core—indeed almost the entirety—of Doe's response regarding his Title IX claims is that *Princeton III* "forecloses Princeton's arguments." Opp'n 1. It does not—nor do the other cases on which Doe relies. Those Title IX claims were sustained based on allegations that men and women that similarly violated the University's policies were treated differently. No such allegations are present here. Doe's generic allegations of "pressure" to address sexual misconduct cannot supply what his Complaint lacks: specific facts showing *this disciplinary decision* resulted from gender bias.

2

**A.     The key allegations supporting the Title IX claims in *Princeton III* and *University of the Sciences* are not present here.**

Doe tries to analogize his Title IX claim to *Princeton III* and *Doe v. University of Sciences*, 961 F.3d 203 (3rd Cir. 2020). Those cases involved fundamentally different allegations: that similar rule violations by men and women were treated differently.

In *University of the Sciences* ("*USciences*"), decided two years before *Princeton III*, two females accused a male student of violating the sexual misconduct policy, and he was expelled. *Id.* at 205. The plaintiff alleged that the university "encouraged" the first complainant "to find other women willing to make a complaint against him," prompting a second complaint. *Id.* at 207–08. He also alleged that the university did not investigate the first complainant and a witness for breaching the school's confidentiality policy and colluding, but "permitted and encouraged" their policy violation. *Id.* at 211. The plaintiff further alleged that the university "had notice that [the second complainant] may have violated the Policy" but "never investigated" that breach. *Id.* at 210–11. On review of a decision dismissing Title IX claims, the Third Circuit found the "complaint contains plausible allegations supporting" a Title IX claim by alleging *in combination* that the University (1) succumbed to pressure to hold men responsible for sexual assault, *and* (2) "engaged in selective investigation and enforcement of its policies[.]" *Id.* at 209–10.[1]

---

[1] This Court's recent denial of a motion to dismiss in *Doe v. Princeton University*, 3:19-cv-07853-ZNQ-TJB (Feb. 6, 2023), ECF No. 87, hinged on similar allegations. The court gave "greatest weight" to allegations that Princeton did not pursue action against a female when the male reported that she also engaged in nonconsensual sexual activity. *Id.* at 13–14. No such allegations are present here.

3

This Complaint includes no such allegations of disparate treatment of policy violations by men and women. It presents only generic assertions that a male student was treated unfairly during the disciplinary process and wrongly found responsible for one of several claimed Policy violations, resulting in a period of probation.

Like *USciences*, *Princeton III* addressed allegations that rule violations by a male and a female student were treated differently, resulting in expulsion of the male while the female's alleged violations were ignored. There, a couple in a violent relationship both asserted violations of Princeton's RRR. 30 F.4th at 340. When the male complained, he allegedly was advised to "seek mental health services" but not "file a Title IX complaint." *Id.* But when the female student complained, she allegedly was told the University "wanted [her] to press charges." *Id.* The plaintiff further alleged that he sought to pursue a counterclaim, but was discouraged by the University. *Id.* at 341. And the plaintiff alleged that both students violated a no-contact order (the female when she intentionally "approached Doe on a campus running trail" and the male when he "accidentally 'liked' one of Roe's social media posts"), but the female was "simply told . . . not to let it happen again," while the male was given "a reprimand and a written warning" after the University launched another disciplinary investigation. *Id.* at 340–41. Based on these allegations of disparate treatment, the Third Circuit held the plaintiff had "stated a plausible [Title IX] claim," zeroing in on the allegations that "Roe's report of misconduct was treated with greater urgency and seriousness than [the male's report], and Roe's [no-contact order] violation … produced only a mild University response,"

4

while the plaintiff's violation provoked a serious response. *Id.* at 343. No such allegations of disparate treatment of similar rule violations are present here.[2]

This case is far more analogous to cases alleging that the outcome of a disciplinary proceeding was erroneous, but lacking specific allegations showing different treatment of men and women. For example, in *Doe v. Princeton University*, 790 F. App'x 379 (3d Cir. 2019) ("*Princeton II*"), the Title IX claim was dismissed because the plaintiff failed to "plead[ ] facts showing Princeton treated him differently because of his sex." *Id.* at 383. He alleged that "the panel acted improperly" in numerous ways—but, as here, "d[id] not plead facts indicating that any of this alleged unfavorable treatment was due to his sex." *Id.* at 382–84. The plaintiff asserted that he "would not have been subject to Princeton's discriminatory acts if he were a female victim," but the Third Circuit held that such allegations were "too 'generalized' and 'conclusory'" to support Title IX claims. *Id.* at 383–84 (citation omitted). The Third Circuit reached the same conclusion when affirming dismissal in *Verdu v. Trustees of Princeton University*, explaining

---

[2] Doe also points (Opp'n 16, n.4) to the court's denial of a second motion to dismiss in *Doe v. Rider University*, No. 16-cv-4882, 2020 WL 634172 (D.N.J. Feb. 4, 2020) ("*Rider II*"), after the plaintiff amended his complaint to add new allegations supporting his Title IX claim. But those new allegations went well beyond those here. The plaintiff alleged (*inter alia*) that "deficient policies and procedures [were] deliberately designed to subject male students … to less favorable treatment than female students" and "provided evidence to suggest that a gender stereotype adverse to males … *caus[ed] the disciplinary procedures to end adversely to male accusers.*" *Id.* at *10 (emphasis added). He also alleged specific statements against men made by the dean in charge of the disciplinary panel. *Id.* at *11. There are no such allegations here. Rather, Doe asserts more generic "allegations of a bias against the alleged perpetrator in favor of the victim," which the *Rider II* court reconfirmed are "insufficient to show … gender bias." *Id.* at *9.

that allegations of "procedural irregularities" and that Princeton "investigated and disciplined … based on [ ] generalized archaic stereotypes about the sexes" were insufficient to sustain a Title IX claim. No. 20-1724, 2022 WL 4482457, at *3 (3rd Cir. Sept. 27, 2022), *pet. for cert. filed*, 2022 WL 4482457 (U.S. Dec. 27, 2022) (No. 22-590).

Similarly, in *Doe v. Samford University*, 29 F.4th 675 (11th Cir. 2022), the Eleventh Circuit affirmed dismissal of a Title IX claim based on allegations that the male respondent and female complainant were treated differently during the disciplinary proceedings, and the university reached the wrong outcome. The court agreed that the male student's allegations of "procedural irregularities . . ., 'public pressure[ ] to comply with Title IX,' public statements by university officials, and 'statistics revealing numerous allegations against male students' . . . do not make it plausible that Doe was suspended on the basis of sex"—whether "viewed in isolation or collectively[.]" *Id.* at 687. The allegations in *Samford* were similar to those here; the plaintiff complained that the investigation was flawed because the university "did not provide [him] with a written notice of the allegations … before [he] was interviewed"; the investigator was insufficiently trained; and the investigator "failed to ask [the female student] certain questions." *Id.* at 682. The plaintiff also disagreed with the investigator's finding that the complainant was more credible based on witness statements, alleging that he had submitted contrary evidence. *Id.* at 683. The Eleventh Circuit properly rejected those allegations of procedural deficiencies and erroneous credibility determinations as insufficient to sustain a Title IX claim. *Id.* at 690. This Court should do the same.

6

In short, Doe's allegations far more closely align with the facts and reasoning in *Princeton II* and *Samford University* than in *Princeton III* and *USciences*. Like the students in *all* of those cases, Doe claims that the University's process was flawed and Roe's version of events was unfairly credited over his, resulting in an erroneous decision. Unlike the students in *USciences* and *Princeton III*, however, Doe does not allege that the University treated his alleged policy violations differently than alleged violations by Roe or any other woman. His Complaint is thus fundamentally different.

Doe tries to overcome that key difference by arguing that allegations that he was treated less favorably than Roe during the disciplinary process are "far worse" than allegations that a university pursued disciplinary action for a male's rule violation but not a female's violation. Opp'n 23. But his are exactly the type of allegations found insufficiently indicative of gender bias in cases including *Samford*, *Princeton II*, *Gendia v. Drexel University*,[3] *Rider I,* and *Verdu*. This Court and others have consistently declined to allow Title IX claims to proceed based on generic allegations that a male respondent was treated unfairly and the wrong decision reached. This Court should hold that line.

---

[3] No. 20-cv-1104, 2020 WL 5258315, at *3 (E.D. Pa. 2020) (dismissing Title IX claim based on allegations that university "assumed the truthfulness of Roe's account," "asked [] gender-biased questions," and improperly credited the female over the male because such allegations did not connect the decision "to [Doe's] or Roe's gender").

7

### B. *Princeton III* confirmed that Doe's allegations of "pressure" to address sexual assault do not suffice to support a Title IX claim.

Hanging his hat on *Princeton III* despite the dissimilarity of the allegations, Doe argues that he alleged the same "pressure" on Princeton to address sexual assault, focusing on the 2011 "Dear Colleague" letter ("DCL"). It cannot be that every university that once implemented that DCL (rescinded in 2017) is condemned to have all sex-related disciplinary decisions reviewed in court. That is contrary to the Third Circuit's admonition, most recently in *Princeton III*, that "pressure from DoEd and the 2011 [DCL] cannot alone support a plausible claim of Title IX sex discrimination." 30 F.4th at 345 (internal quotation marks and citation omitted).

The same goes for the so-called "student pressure" on Princeton; *i.e.*, the allegations that some students have pressed for continued application of the DCL or more victim-centered measures. Such advocacy cannot mean that every sexual misconduct decision adverse to a male now gives rise to a viable Title IX claim, thus requiring the courts to devote substantial resources to reconsider disciplinary decisions. Allegations of pressure must amount to more than complaints about a defunct DCL and the campus "me-too" movement.[4] A Title IX claim survived in *Princeton III* only because allegations of pressure were "*coupled with* [] allegations about Princeton's

---

[4] *Verdu*, 2022 WL 448257, at *3 (alleged "history of complaints to [DoEd] about Princeton's purported failure to respond adequately to allegations of sexual misconduct advanced by female students and the resulting pressure … to remedy that perception" are "not enough to state a plausible claim … under Title IX").

8

selective handling of [ ] misconduct reports and Order violations." *Id.* (emphasis added).

As discussed above, no such allegations of disparate treatment for similar violations of the Policy are present here. Doe's assertion that the Panel improperly found his accuser more credible is not analogous. Decisions regarding which of two parties' stories to believe are necessary in the course of any disciplinary process. The fact that a panel chose to credit a woman over a man—or vice versa—cannot be sufficient to state a plausible claim for gender-based discrimination. *See Samford Univ.*, 29 F.4th at 691 (factfinders in disciplinary proceedings must be given leeway to make credibility determinations); *Gendia*, 2020 WL 5258315, at *3 (credibility determination does not give rise to a viable Title IX claims unless "connect[ed]" to gender).

While Doe's "pressure" allegations may be similar to those in *Princeton III*, he lacks the allegations of disparate treatment of men and women for similar acts that the court relied on to conclude that the Title IX claims were plausible there.

### C. Unlike in *Princeton III*, Doe does not allege facts that indicate that the disciplinary process or outcome resulted from gender bias.

Doe tries to overcome the absence of allegations showing different treatment of men versus women for the same behavior by asserting (1) the Panel's decision was "inexplicable" and (2) the Panel relied on "archaic assumptions about gender." Opp'n 23–26. Those conclusory assertions are not supported by the Complaint.

Doe's assertion that the Panel's decision was "inexplicable" ignores his own allegations and the Supplemental Memo. As Doe admits, the Panel explained why it

9

found Doe responsible for unwanted touching/kissing: Roe consistently testified she said no "ten or more times." Opp'n 24. The Supplemental Memo explains that this testimony was supported by other evidence including "contemporaneous text messages" Roe sent to friends that "suggested that she was not interested in being with [Doe] in his room[.]" Suppl. Mem. 7 (Ex. 3 to Def.'s Mot. to Dismiss, ECF No. 24-5). Even if other decisionmakers might have reached a different conclusion given the conflicting stories and evidence, the Panel's conclusion is thus hardly "inexplicable."[5]

That leaves Doe's allegations that the Panel's doubts about Doe's story and statements noting Roe was a virgin stemmed from "archaic assumptions" about men and women's sexual inclinations. This is thin gruel from which to proceed with a Title IX claim. "[T]here is nothing inherently or impliedly gendered about" such statements. *Gendia*, 2020 WL 5258315, at *4. And importantly, the Panel found Doe *not responsible* for the charge related to those statements: non-consensual intercourse.

Doe thinks he has found the magic formula for a viable Title IX claim: general allegations of "pressure" to address sexual assault, plus allegations that a male respondent was treated unfairly and wrongly found responsible. But the sum of those

---

[5] Doe makes a tortured argument based on the time between the unwanted kissing for which he was found "responsible" and the sexual acts for which he was found "not responsible." But the Panel explained—construing the evidence in Doe's favor—that Doe might reasonably have believed that later sexual acts were consensual because Roe actively participated. Suppl. Mem. 10–11. In any event, Doe's argument is irrelevant; the question is not whether the Panel's conclusions are the best construction of the evidence, but whether Doe alleged facts indicating they resulted from gender bias.

10

parts falls short of the "total mix" of allegations found sufficient in *Princeton III* and *USciences*. This Court should decline to extend those decisions by allowing Doe's Title IX claim to proceed absent specific alleged facts showing gender bias in the proceeding.

## II. Doe's contract and good faith and fair dealing claims are meaningfully different from those in *Princeton III* and fundamentally deficient.

New Jersey cases make clear that to fulfill basic "fairness" requirements, the University need only show it substantially followed its rules.[6] The Third Circuit applied this standard when it affirmed dismissal of contract claims in *Princeton II*, finding that Princeton substantially complied with the RRR's requirements. 790 F. App'x at 385. In *Princeton III*, the plaintiff alleged facts that (if true) could be construed as showing that the disciplinary process did not comply with core RRR requirements—but those alleged facts are meaningfully different from those here.

To begin, the *Princeton III* court framed its analysis of the contract claim[7] around the seriousness of the sanction imposed: expulsion. The court explained that a university must have sufficient evidence to expel a student because of the extreme nature of that sanction. 30 F.4th at 346. Thus, the context in which the *Princeton III* court considered claimed breaches of the RRR differed greatly from the context here, where Doe received probation. But in any event, the alleged violations of the RRR in

---

[6] *See Mittra v. Univ. of Med. & Dentistry of N.J.*, 719 A.2d 693, 698 (N.J. Super. Ct. App. Div. 1998); *McMahon v. Salmond*, 573 F. App'x 128, 132 (3d Cir. 2014).

[7] *Princeton III* recognizes—contrary to Doe's assertion—that New Jersey law does *not* view the private university-student relationship as strictly contractual, and courts therefore do not strictly construe documents like the RRR. *See* 30 F.4th at 345–46.

11

*Princeton III* were very different from Doe's generic allegations of unfairness.

<u>First</u>, in *Princeton III*, the male plaintiff alleged that the University did not pursue an investigation when he complained his ex-girlfriend harassed him, behavior prohibited under the RRR. 30 F.4th at 340. But when the same female student claimed intimate relationship violence, the University urged her to pursue an investigation. *Id.*

<u>Second</u>, the plaintiff alleged that Princeton treated the two students' no-contact order violations differently. When the female violated the order by confronting the male *in person*, she was told not to do it again. *Id.* at 340–41. But when the male student self-reported that he had mistakenly liked a social media post by the female, the University initiated another disciplinary action, prompting a reprimand and written warning. *Id.* at 341. These allegations of different handling of similar rule violations led the court to conclude that the plaintiff had sufficiently alleged that Princeton breached the RRR's guarantees of fairness and non-bias. There is no comparable alleged deviation here.

<u>Finally</u>, the court found that "an implied covenant claim arising from the Panel's 'contravention of the preponderance of the evidence standard' would fail because Doe pleads the same fact in support of his contract claim." *Id.* at 348 n.16. That is the case here, where Doe alleges identical facts to support his breach of contract and good faith and fair dealing claims.[8] Unlike in *Princeton III*, therefore, Doe's good faith and fair dealing claim is redundant and should be dismissed.

---

[8] *See* Compl. ¶ 340 ("For all of the reasons stated in Count II [Breach of Contract], the University breached the covenant of good faith and fair dealing.").

### III. Doe's common negligence claim is barred by the NJCIA.

Doe admits he did not plead gross negligence. *See* Opp'n 29. But contrary to Doe's assertions, it *does* matter whether he pled negligence or gross negligence; they are two distinct causes of action. While negligence and gross negligence "fall on a spectrum," *Steinberg v. Sahara Sam's Oasis, LLC*, 226 N.J. 344, 366 (2016), a plaintiff must still allege that the acts rise to the level of gross negligence. Doe did not even try.

Gross negligence is "more than ordinary negligence"; it requires a "failure to exercise the slightest degree of care or an extreme departure from the standard of reasonable care[.]" *Id.* at 348–49, 364. It requires more than mistaken judgment, *id.* at 364; the conduct must be egregious. *Bass v. House of Prayer Cogic of Orange*, No. A-1284-20, 2021 WL 6132768, at *3 (N.J. Super. Ct. App. Div. Dec. 29, 2021) (per curiam) (citation omitted) (dismissing the complaint under the NJCIA because the plaintiff only made "bare conclusions lacking factual support" to support her gross negligence claim).

Doe concedes that the NJCIA "immunizes" an ordinary negligence claim. Opp'n 28. But if Doe were correct that an ordinary negligence claim must still be permitted to proceed so that a factfinder can decide whether it rises to the level of gross, that would undermine the intent behind the NJCIA.[9] *See Bass*, 2021 WL 6132768, at *2 (a plaintiff cannot "avoid the protection given by the [NJCIA] merely by making unspecified

---

[9] *See* N.J. Stat. 2A:53A-10 (the NJCIA "shall be liberally construed so as to afford immunity . . . from liability . . . in furtherance of the public policy for the protection of nonprofit corporations . . . organized for . . . educational . . . purposes").

13

allegations of gross negligence lest the [Act] be rendered so ineffective as to be virtually meaningless") (internal quotation omitted). New Jersey courts therefore dismiss gross negligence claims when "there are no facts establishing . . . gross negligence." *Franco v. Fairleigh Dickinson Univ.*, 248 A.3d 1254, 1269–70 (N.J. Super. Ct. App. Div. 2021). Doe did not even try to cast his negligence claim as "gross," let alone plead supporting facts.

Doe relies on *Steinberg* to suggest there is no difference between regular and gross negligence for pleading purposes. But that plaintiff alleged *both* types of negligence, and the court found that allegations that a water park failed to "exercise the slightest degree of care," leading to "a catastrophic spinal cord injury," could support the gross negligence claim. 226 N.J. at 348–49. While the court noted that an "aggregation of . . . acts" may show gross negligence, *id.* at 363, nothing in its discussion suggested that a plaintiff need only plead common negligence to pursue a gross negligence claim.

Unlike in *Steinberg*, Doe did not even attempt to articulate how his allegations show gross negligence. Doe's last-minute argument that the NJCIA does not apply "because some unspecified actions of the [University] allegedly constitute gross negligence is an obvious attempt to circumvent application of the [NJCIA] and defeat the immunity that the Legislature clearly made available to" Princeton. *Monaghan v. Holy Trinity Church*, 646 A.2d 1130, 1133 (N.J. Super. Ct. App. Div. 1994). The Court should reject this attempt to eviscerate the NJCIA.

14

Finally, Doe has not adequately pled *any* negligence claim because a key element is missing: the duty of care.[10] Doe points to a few cases from other jurisdictions finding a duty of care between a school and a student, but the prevailing view since the 1970s has been the opposite.[11] Even setting that aside, Doe does not explain how his allegations show a breach of duty sufficient to give rise to a negligence claim, let alone a gross negligence claim. Doe's negligence claim thus must be dismissed.[12]

## CONCLUSION

The Court should dismiss all of Doe's claims with prejudice.

Respectfully submitted,

*/s/ Linda Wong*
WONG FLEMING
821 Alexander Road, Suite 200
Princeton, NJ  08543-3663
Tel.: (609) 951-9520
Email: lwong@wongfleming.com

Laurel Pyke Malson (*pro hac vice*)
Amanda Shafer Berman (*pro hac vice*)

---

[10] Doe argues that the Court should not consider this alternative reason for dismissing the negligence claim because Princeton did not discuss it in its pre-motion conference letter. Opp'n 29. Princeton does not read this Court's judicial preferences as barring it from articulating a related, alternative reason for dismissing a claim when it squarely addressed the primary "basis" for dismissing in the shorter pre-motion letter.

[11] *E.g.*, *Doe v. Trs. of Bos. Coll.*, 892 F.3d 67, 94 (1st Cir. 2018) (no duty of care in a disciplinary process); *Freeman v. Busch*, 349 F.3d 582, 587–88 (8th Cir. 2003); *Bradshaw v. Rawlings*, 612 F.2d 135, 141 (3d Cir. 1979); *Doe v. Trs. of Dartmouth Coll.*, No. 21-cv-085, 2021 WL 2857518, at *10 (D.N.H. July 8, 2021); *Booker v. Lehigh Univ.*, 800 F. Supp. 234, 237 (E.D. Pa. 1992), *aff'd*, 995 F.2d 215 (3d Cir. 1993).

[12] *See Graddy v. Deutsche Bank*, No. 11-3038, 2013 WL 1222655, at *3 n.1 (D.N.J. Mar. 25, 2013) (dismissing both common and gross negligence claims because plaintiffs could not establish that defendant owed a duty of care).

CROWELL & MORING LLP
1001 Pennsylvania Ave., N.W.
Washington, D.C. 20004
Tel.: (202) 688-3451
Email: LMalson@crowell.com,
ABerman@crowell.com
*Attorneys for Defendant Princeton University*

16