Linda Wong
WONG FLEMING, P.C.
821 Alexander Road, Suite 200
Princeton, NJ  08543-3663
Tel.: (609) 951-9520
Fax: (609) 951-0270
Email: lwong@wongfleming.com

Laurel Pyke Malson (*pro hac vice*)
Amanda Shafer Berman (*pro hac vice*)
CROWELL & MORING LLP
1001 Pennsylvania Ave., N.W.
Washington, D.C. 20004
Tel.: (202) 688-3451
Email: LMalson@crowell.com,
ABerman@crowell.com

*Attorneys for Defendant The Trustees of Princeton University*

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| JOHN DOE,<br><br>　　　　　*Plaintiff*,<br><br>　　v.<br><br>PRINCETON UNIVERSITY,<br><br>　　　　　*Defendant*. | Civil Action No. 3:22-cv-05887-RK-DEA<br><br>Hearing Date: February 20, 2024 |

## OPPOSITION TO MOTION FOR PARTIAL RECONSIDERATION

# **TABLE OF CONTENTS**

Page

THE LEGAL STANDARD FOR RECONSIDERATION ..........................................2

ARGUMENT .................................................................................................................3

    I.    Doe Transparently Attempts To Relitigate The Motion To Dismiss. ..............................................................................................................4

    II.    Reconsideration Is Not Warranted Because The Court Did Not Err. ..................................................................................................................7

        A.    The Court Did Not Err In Finding No Evidence Of Bias Based On Alleged Archaic Assumptions. .........................................8

        B.    The Court Did Not Err In Finding That Doe Failed To Plausibly Plead That Princeton's Treatment Of Doe Reflected Gender Bias. ......................................................................12

        C.    The Court Did Not Err In Finding That Doe Failed To Plausibly Plead That The Panel Decision Was Based On Gender Bias. ......................................................................................14

CONCLUSION ...........................................................................................................15

# **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*ABS Brokerage Servs. v. Penson Fin. Servs., Inc.*,
   No. 09-4590, 2010 WL 3257992 (D.N.J. Aug. 16, 2010) .................................... 2, 3, 4

*Blystone v. Horn*,
   664 F.3d 397 (3d Cir. 2011) ................................................................................ 2, 4, 6

*Doe v. Baum,*
   903 F.3d 575 (6th Cir. 2018) ........................................................................................8

*Doe v. Coll. of New Jersey*,
   No. CV223283MASLHG, 2023 WL 2812362 (D.N.J. Apr. 6, 2023) ......................11

*Doe v. Grinnell Coll.*,
   473 F. Supp. 3d 909 (S.D. Iowa July 9, 2019) .............................................................6

*Doe v. Marymount Univ.*,
   297 F. Supp. 3d 573 (E.D. Va. 2018) ...........................................................................6

*Doe v. Princeton Univ.,*
   790 F. App'x 379 (3d Cir. 2019) ..................................................................................9

*Doe v. Princeton Univ.*,
   No. CV197853ZNQTJB, 2023 WL 1778832 (D.N.J. Feb. 6, 2023) .........................11

*Doe v. Washington & Lee Univ.*,
   No. 6:19-cv-00023, 2021 WL 1520001 (W.D. Va. Apr. 17, 2021) ..............................6

*Dunn v. Reed Grp., Inc.*,
   No. 08-1632, 2010 WL 174861 (D.N.J. Jan 13, 2010) .................................................2

*Davis ex rel. LaShonda D. v. Monroe Cty. Bd. of Educ.*,
   526 U.S. 629 (1999) ...................................................................................................11

*Morse v. Lower Merion Sch. Dist.*,
   132 F.3d 902 (3d Cir. 1997) .......................................................................................10

*P. Schoenfeld Asset Mgmt. LLC v. Cendant Corp.*,
   161 F. Supp. 2d 349 (D.N.J. 2001) ......................................................................2, 4, 6

*Saravanan v. Drexel Univ.*,
  No. 17-3409, 2017 WL 4532243 (E.D. Pa. Oct. 10, 2017) ............................................8

*Saravanan v. Drexel University*,
  No. CV 17-3409, 2017 WL 5659821 (E.D. Pa. Nov. 24, 2017) ..................................12

*United States ex rel. Schumann v. AstraZeneca Pharms. L.P.*,
  769 F.3d 837 (3d Cir. 2014) .........................................................................................2

*United States v. Grape*,
  549 F. 3d 591 (3d Cir. 2008) ........................................................................................3

*Verdu v. Trustees of Princeton Univ.*,
  CV 19-12484 (FLW), 2020 WL 1502849 (D.N.J. Mar. 30, 2020), aff'd,
  No. 20-1724, 2022 WL 4482457 (3d Cir. Sept. 27, 2022) ............................................9

**Statutes**

Title IX, 20 U.S.C. § 1681 ...........................................................................................*passim*

**Other Authorities**

Fed. R. Civ. P. 12..............................................................................................................12

L. Civ. R. 7.1(i) ..................................................................................................................2

Plaintiff John Doe's ("Doe") Motion for Partial Reconsideration is a transparent attempt to relitigate the recently decided Motion to Dismiss by recapitulating the same arguments, based on the same cases, already presented to, considered, and thoughtfully rejected by the Court. Doe does not come close to justifying a different outcome now, let alone meet the high standard for a grant of reconsideration.

Having failed to adequately plead his Title IX claim and unable to point to an intervening change in controlling law or newly available evidence, Doe now asserts a need to correct "three clear legal errors" by this Court. ECF 45 at 5. But Doe does not point to facts or law overlooked by the Court, show that the decision results in manifest injustice, or otherwise provide a basis to upend the Court's sound conclusion that Doe failed to meet his pleading burden to show gender-based discrimination giving rise to a viable Title IX claim. That Doe believes the Court should have ruled differently does not mean it committed "clear legal error" warranting reconsideration. A reconsideration motion would follow every dismissal were that the case.

Moreover, the Court *did not err*. Rather, the Court found that—unlike those cases where Title IX claims survive the pleading stage—Doe failed to allege *specific facts* plausibly allowing an inference of gender bias, particularly in light of the thoroughness of Princeton's investigation (as demonstrated by Doe's own allegations) and as the University found Doe *not responsible* on all but the least serious offense. Because Doe fails to meet the high bar for reconsideration, the Court should deny the Motion.

## THE LEGAL STANDARD FOR RECONSIDERATION

Motions for reconsideration are proper under Local Civil Rule 7.1(i) if there are "matters or controlling decisions which counsel believes the Judge . . . has overlooked." L. Civ. R. 7.1(i); *Dunn v. Reed Grp., Inc.*, No. 08-1632, 2010 WL 174861, at *1 (D.N.J. Jan 13, 2010). But "reconsideration is an extraordinary remedy that is granted 'very sparingly.'" L. Civ. R. 7.1(i) cmt. 6(d) (internal quotation omitted). The Third Circuit thus has held the scope of a motion for reconsideration to be "extremely limited." *Blystone v. Horn*, 664 F.3d 397, 415 (3d Cir. 2011). "Such motions are not to be used as an opportunity to relitigate the case; rather, they may be used only to correct manifest errors of law or fact or to present newly discovered evidence." *Id.* "A party seeking reconsideration must show more than a disagreement with the Court's decision, and recapitulation of the cases and arguments considered by the court before rendering its original decision fails to carry the moving party's burden." *P. Schoenfeld Asset Mgmt. LLC v. Cendant Corp.*, 161 F. Supp. 2d 349, 352 (D.N.J. 2001) (internal quotation omitted).

Accordingly, an order or judgment may be altered or amended only if the party seeking reconsideration shows: "(1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court [made its initial decision]; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice." *United States ex rel. Schumann v. AstraZeneca Pharms. L.P.*, 769 F.3d 837, 848–49 (3d Cir. 2014). A court commits clear error of law "only if the record cannot support the findings that led to the ruling." *ABS Brokerage Servs. v. Penson Fin. Servs., Inc.*, No. 09-

2

4590, 2010 WL 3257992, at *6 (D.N.J. Aug. 16, 2010) (citing *United States v. Grape*, 549 F. 3d 591, 603–04 (3d Cir. 2008)). "Thus, a party must . . . demonstrate that (1) the holdings on which it bases its request were without support in the record, or (2) would result in 'manifest injustice' if not addressed." *Id.* Doe's motion fails in both respects.

## ARGUMENT

Doe seeks reconsideration citing "three clear legal errors" by this Court. ECF 45 at 5. But Doe cannot obfuscate what his arguments and cases make plain: that the claimed "clear legal errors" are no more than his disagreement with the Court's conclusions. The standard for granting reconsideration demands more.

Doe first asserts that the Court erred in holding that his allegations do not support his claim that the panel appointed by Princeton's Title IX Coordinator to investigate and adjudicate the sexual misconduct claims against him (the "Panel") applied archaic assumptions indicative of gender-bias. Doe's argument in this regard is doubly deficient. Not only has the "archaic assumptions" theory not been applied in this Circuit as a standalone basis for Title IX liability in disciplinary cases, but Doe fails to plausibly plead any gender-based archaic assumptions by the Panel.

Doe next contends the Court erred in finding that Princeton's treatment of Doe relative to its treatment of Roe did not evidence gender bias. The gist of his argument is that procedural irregularity alone may suggest gender bias sufficient to survive a motion to dismiss. *See* ECF 45 at 13. But this point too was made before, *see* ECF 26 at 28, and this Court thoughtfully explained that courts in this Circuit grant motions to

3

dismiss Title IX claims "that lack allegations and evidence of gender bias in the investigations and demonstrate a thorough investigation." ECF 39 at 16. That conclusion is fundamentally sound, not "clear error" justifying reconsideration.

Finally, Doe contends that the Panel's "inexplicable" rationale is evidence of gender bias. Again, facts and argument raised before (ECF 26 at 28-30.) are not a sound basis for reconsideration. This Court already considered and reasonably rejected the same line of argument, zeroing in on the absence of allegations showing that the Panel's decision was not just wrong, but predicated on gender bias. Thus, the Court did not commit "clear legal error," and Doe's motion for reconsideration should be denied.

## I.     Doe Transparently Attempts To Relitigate The Motion To Dismiss.

Doe runs afoul of the fundamental requirement that a motion for reconsideration must do more than relitigate issues and arguments already advanced before the Court. *Blystone*, 664 F.3d at 415. His reconsideration arguments all rely on facts, cases, and reasoning addressed in the briefing on the motion to dismiss, and considered and rejected by the Court as insufficient to sustain his Title IX claim. And nowhere does Doe argue—as he must—either that "(1) the holdings on which [he] bases [his] request [are] without support in the record, or (2) would result in 'manifest injustice' if not addressed." *ABS Brokerage Servs.*, No. 2010 WL 3257992, at *6. Doe's disregard for the applicable standard alone warrants denial of his motion.

Doe first flouts the reconsideration standard in making his "archaic assumptions" argument. *See Blystone*, 664 F.3d at 416; *P. Schoenfeld Asset Mgmt. LLC*, 161

4

F. Supp. 2d at 352. This is not a close call. Doe's reconsideration motion cites to the same cases and uses the same sentence and argument structure as his opposition to Doe's motion to dismiss. *Compare* ECF 45 at 9–10 *with* ECF 26 at 30–31. By way of example, in opposing Princeton's motion to dismiss, Doe argued that the Court improperly made gender-based assumptions about virgins:

> The panel's reasoning betrayed precisely that when it concluded that because Roe was a virgin, she would not have been upset when Doe said he wanted to stop having sex. Compl. ¶236. Only two things can possibly explain that conclusion: (1) the panel thought that virgins *in general* do not get upset when their partner wants to stop when they're in the middle of losing their virginity; or (2) the panel thought that *female* virgins in particular tend to react that way. The first—that *most* virgins, in taking the momentous step of deciding to have sex for the first time, would not be upset at their partner's stopping it mid-way—is nonsensical. The second plays into antiquated tropes about female virginity and women's sexual desires.

ECF 26 at 30. Doe's reconsideration motion similarly states:

> Mr. Doe testified from the beginning that when he made up an excuse for he and Ms. Roe to stop having sex, she became upset. Compl. ¶236. The panel deemed this "not credible" because they thought it implausible that Ms. Roe, as a virgin, would be upset at the idea of stopping. *Id.* That means the panel thought one of two things: (1) *all* virgins (both male and female), upon taking the momentous step of losing their virginity, typically wouldn't be upset if their partner suddenly stopped before it was even over; or (2) *female* virgins generally wouldn't get upset if their male partners suddenly wanted to stop. The first is hard to believe: It's highly unlikely that the panel believed that people *in general* are ambivalent about losing their virginity and wouldn't be upset if it were awkwardly cut off midway through. What's far more likely is that the panel was influenced by archaic views of how *women* experience losing their virginity . . . . .

ECF 45 at 9. The similarities are undeniable. The argument is structurally and linguistically almost identical, and the allegations and the case law cited are the same.[1] But this Court's reconsideration jurisprudence demands more than cloaking the same argument in slightly different verbiage and claiming "clear legal error." *See Blystone*, 664 F.3d at 416; *P. Schoenfeld Asset Mgmt. LLC*, 161 F. Supp. 2d at 352.

Doe's second claimed "clear legal error"—that the Court erred in finding that Princeton's treatment of Doe as compared to Roe did not show gender bias—is similarly flawed. At heart, Doe's point is that the Court erred in not finding that the alleged procedural irregularities sufficed to state a Title IX claim. *See* ECF 45 at 12-13. But Doe acknowledges that the Court considered and rejected these so-called irregularities, finding they did not show gender bias. He cannot point again to the same litany of alleged wrongs, misconstrue the Court's opinion addressing them, and prevail.

Doe's charade wholly unravels in the third act. Section III—"The Panel's Rationale Supplies Still More Evidence of Gender Bias"—dispenses with any pretense that this motion is other than an effort to impermissibly relitigate the Court's ruling. Missing is *any* argument as to how the Court erred. Doe suggests that the Court "did not even address" the Panel's rationale (ECF 45 at 15)—but the Court in fact did address the Panel's rationale. *See, e.g.*, ECF 39 at 12 (noting that Doe alleges an

---

[1] *Compare* ECF 45 at 8-9 (citing *Doe v. Marymount Univ.*, 297 F. Supp. 3d 573, 587 (E.D. Va. 2018); *Doe v. Washington & Lee Univ.*, No. 6:19-cv-00023, 2021 WL 1520001 (W.D. Va. Apr. 17, 2021); *Doe v. Grinnell Coll.*, 473 F. Supp. 3d 909 (S.D. Iowa July 9, 2019)) *with* ECF 26 at 30 (citing same).

6

"incoherent and unsupported rationale that calls the decision against [Doe] into grave doubt" and that Doe took issue with the Panel's "inexplicable rationale"). Rather than explaining where the Court went wrong, Doe regurgitates the same authority and argument—that the Panel's "inexplicable" rationale is evidence of gender bias—set forth in his opposition brief. *Compare* ECF 45 at 15–16 *with* ECF 26 at 28–30. But *at no point* in Section III does Doe explain how the Court erred. Rote recitation of arguments made in earlier briefing, untethered from any explanation of how the Court erred, falls woefully short of the standard governing reconsideration in this District.

In sum, Doe fails to satisfy the standard for reconsideration with regard to each of his claimed legal errors. Denial of his motion is warranted on this basis alone.

## II.     Reconsideration Is Not Warranted Because The Court Did Not Err.

The reconsideration standard is a bulwark against motions like Doe's. But Doe's motion should be denied for a second, independent reason: the Court did not err in either its application of the law or assessment of the allegation—and specifically how those alleged facts do not plausibly show gender bias.

First, the Court did not err in finding no evidence of bias based on the Panel's alleged archaic assumptions. Not only is Doe wrong to suggest that the Third Circuit's decision in *University of the Sciences* somehow redefined and expanded the "archaic assumptions" theory, such that it, standing alone, raises a plausible inference of gender bias in student disciplinary cases, but even were that the case the Court correctly found that Doe failed to plausibly plead gender bias in Princeton's disciplinary process.

7

Second, the Court did not err in finding that Doe failed to plausibly plead that Princeton's treatment of Doe relative to its treatment of Roe indicates gender bias. Doe's argument in this regard is at base a disagreement with the Court's construction of his pleadings. But that does not mean the Court committed "clear legal error."

Finally, the Court did not err in finding Doe failed to plausibly plead that the Panel's decision was so "inexplicable" such that it evidenced gender bias.

### A. The Court Did Not Err In Finding No Evidence Of Bias Based On Alleged Archaic Assumptions.

Doe's contention that the Court committed "clear legal error" in finding his "archaic assumptions" allegations too conclusory to sustain his Title IX claim fails on the law and the facts.

This Court was correct to note that the "archaic assumptions" theory Doe relies on to support his Title IX claim has been held by many courts, including in this Circuit, to apply to claims of gender discrimination only in the athletic context. *See Doe v. Baum*, 903 F.3d 575, 587–88 (6th Cir. 2018) (noting "archaic assumptions about the sexes" do not "appl[y] in the context of university of disciplinary proceedings" but only where "Title IX plaintiffs use the archaic-assumptions theory to show that a school denied a student an equal opportunity to participate in an athletic program because of historical assumptions about boys' and girls' physical capabilities"); *Saravanan v. Drexel Univ.*, No. 17-3409, 2017 WL 4532243, at *4 (E.D. Pa. Oct. 10, 2017) (same). And even after

8

*University of the Sciences*, no court in this Circuit has applied that concept to sustain a claim asserting gender bias in a disciplinary process.

But even if "archaic assumptions" could lead to Title IX liability in the disciplinary context, the Court still did not err. Rather, it rightly found Doe's "archaic assumption" allegations impermissibly conclusory and lacking specific facts showing gender bias. ECF 39 at 18; *see Princeton II*, 790 F. App'x at 383 (the allegations of sex discrimination "are too 'generalized' and 'conclusory'").[2]

To support that he "pled concrete allegations plausibly showing 'archaic assumptions,'" Doe points to Paragraph 236 of the Complaint. ECF 45 at 9. But the parties briefed this exact argument at the motion to dismiss stage, and what was true then is true now: Doe does not plead specific facts that plausibly suggest gender bias.

Paragraph 236 begins with the allegation that Princeton found Doe "not credible" because "it found it implausible that Roe, as a virgin, would help Doe put on a condom . . . or that she would be upset that Doe wanted to stop having sex." Compl. ¶ 236. But that sentence does not include specific facts plausibly alleging gender bias. In fact, there is no reference or explanation at all as to how this statement is impermissibly gendered. Simply put, both women *and* men can be virgins, and both

---

[2] *See also Verdu v. Trustees of Princeton Univ.*, No. CV 19-12484 (FLW), 2020 WL 1502849, at *4-*5 (D.N.J. Mar. 30, 2020), aff'd, No. 20-1724, 2022 WL 4482457 (3d Cir. Sept. 27, 2022) (finding complaint did not support plausible gender discrimination claims where plaintiff alleged the University "infantilized" the female complainant because such "allegations do not reference gender, let alone suggest that gender was a motivating factor in the University's decision").

9

female *and* male virgins can be unknowledgeable about condoms or content with stopping intercourse—a point implicitly conceded by Doe when he alleged he too was a virgin and struggled to apply a condom (Compl. ¶ 132).

Rather than plead specific facts, Doe concludes by simply stating that the assumption "betrayed archaic assumptions." *Id.* But cursorily characterizing conduct as gender-biased does not suffice. *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 n.8 (3d Cir. 1997) ("[C]onclusory allegations or legal conclusions masquerading as factual allegations will not suffice to [overcome] a motion to dismiss."). Plaintiff must plead specific facts plausibly showing gender-biased assumptions. The Court did not err in finding that Doe failed to do so.

Doe nevertheless contends it is "hard to believe" that the Panel would have been drawing assumptions about virgins generally, as opposed to female virgins. ECF 45 at 9. But even so, Doe *does not* explain how any such "archaic assumption" related to alleged conduct for which he ultimately was found *not* responsible—*i.e.*, nonconsensual intercourse—affected the finding as to the lesser conduct for which he *was* found responsible (*i.e.*, nonconsensual sexual contact). *See id.* ¶¶ 106, 299.

Doe next asserts, without citation, that he "concretely" pled that "Princeton's application of different standards to the parties' conduct after the incident plausibly betrayed archaic assumptions." ECF 45 at 10. But in the next sentence Doe notes that the Panel discredited his story *not* because of bias, but because Roe's "words and actions to her friends 'completely contradicted' [his] story." *Id.* Doe then argues that the Panel

10

not crediting his story plausibly suggests archaic assumptions regarding gender roles. *Id.* But Doe does not explain or plead specific facts to show how making credibility determinations is an "archaic assumption" based on gender roles. And what Doe suggests—that gender bias exists wherever a disciplinary panel makes credibility determinations adverse to a male—would enshrine Article III courts as appellate arms of university disciplinary processes, which is just what the Supreme Court has warned against. *Davis ex rel. LaShonda D. v. Monroe Cty. Bd. of Educ.*, 526 U.S. 629, 648 (1999).

Doe points to a number of cases that he says show that courts in the "modern era of Title IX litigation" routinely second-guess university disciplinary decisions. ECF 45 at n.3. But *none* of the cases to which he cites support his far-reaching proposition that a credibility determination adverse to a male respondent, on its own, is *per se* evidence of gender-bias. To the contrary, the three cases he cites all involve procedural flaws far more serious than those alleged here. In *Doe v. College of New Jersey*, the plaintiff plausibly alleged a gender-biased process based on a panoply of egregious procedural flaws, including failure to notify Doe of the allegations against him and Roe's initial complaint *for three years*; failing to consider statements from plaintiff's advisor; and refusing to allow plaintiff an opportunity to be heard once he obtained an advisor. No. CV223283MASLHG, 2023 WL 2812362 (D.N.J. Apr. 5, 2023). Similarly, the court in *Doe v. Princeton* allowed the case to proceed not because of any adverse credibility determination as to Doe, but because Doe plausibly alleged that the university failed to investigate his claims regarding Roe's own alleged sexual misconduct.

11

No. CV197853ZNQTJB, 2023 WL 1778832, (D.N.J. Feb. 6, 2023)1 (Feb. 6, 2023). And the court in *Saravanan v. Drexel University* investigated sexual misconduct claims against Doe *and Roe*, but expelled Doe while placing Roe only on probation. No. CV 17-3409, 2017 WL 5659821 (E.D. Pa. Nov. 24, 2017). Thus, while courts have entertained Title IX disciplinary cases beyond the Rule 12 stage, they do so only where there are sufficient specific alleged facts to plausibly show that the decision resulted from gender bias. This Court rightly concluded that was not the case here. *See* ECF 39 at 19 ("While Plaintiff may have disagreed with the outcome of the second decision on remand, he has not connected the unfavorable decision to any indicia of gender bias.").

In sum, Doe makes much of the Panel's allegedly archaic assumptions as "evidence that come from the mouths of the adjudicators themselves." ECF 45 at 7. But specific alleged facts showing gender bias are conspicuously absent. Accordingly, this Court did not err in dismissing the Title IX claim.

> **B.     The Court Did Not Err In Finding That Doe Failed To Plausibly Plead That Princeton's Treatment Of Doe Reflected Gender Bias.**

Doe asserts that the Court erred in two other ways. First, Doe asserts the Court erred in finding his examples of supposed bias not actionable because they were not precisely the same kinds of treatment at issue in *Princeton III*. *See* ECF 45 at 12. Second, Doe contends the Court erred in concluding that only "completely one-sided" investigations support a finding of gender bias. Doe's argument fails on both fronts.

12

That Doe now contends *Princeton III* does not control is particularly rich after his opposition to Princeton's motion to dismiss argued the same case "forecloses Princeton's arguments." ECF 26 at 6. And the Court plainly considered and addressed that line of attack, beginning its opinion with: "[Doe's] claims that his case is factually similar to *Princeton III* and *University of the Sciences* . . . .". ECF 39 at 14.

Doe now misconstrues the Court's opinion, suggesting that the Court dismissed his Title IX claim because he failed to plead the specific conduct at issue in *Princeton III*. *See* ECF 45 at 12. Not so. Nor did the Court hold that only that specific conduct suffices to state actionable gender bias. Rather, the Court heeded Doe's call to analogize his case to *Princeton III* and *University of the Sciences*, and found that the allegations in both of those cases and others where Title IX claims survived involved far more than coupling generic assertions that a male student was treated unfairly with external pressure allegations, and it pointed to the unique alleged facts here, including that Doe admitted he was found responsible for *only one* of several claimed violations).[3] *See generally* ECF 39.

Nor did the Court err by supposedly concluding that only "a *completely* one-sided investigation" suffices to plead gender bias. ECF 45 at 14. Doe again mischaracterizes the Court's holding. The Court did not state that *only* "a *completely* one-sided

---

[3] Doe characterizes *Princeton III* as having found sufficient allegations of gender bias where "a male [received] a harsher sanction than a female." ECF 45 at 13. Doe analogizes this to his allegations that he received harsher questioning and more skepticism from the Panel. *Id.* But he ignores that *Princeton III* involves allegations of violations *by both parties*. There are no such allegations here.

13

investigation" suffices to show gender bias. *Id.* Rather, the Court noted the thoroughness of Princeton's investigation and the absence of specific facts that, if true, would plausibly show that his disciplinary proceeding or its outcome was infected by gender bias. ECF 39 at 17–18. In some circumstances, less than "a *completely* one-sided investigation" may suffice to state a Title IX claim. But that is not the case here, where on remand the Panel re-interviewed Doe, Roe, and several student witnesses (Compl. ¶¶ 252, 267–72), considered additional evidence, including electronic "prox records" (*Id.* ¶ 270), and "confronted [Roe]" about changes and "inconsistencies" in her prior testimony (*Id.* ¶ 103, 252)—and where Doe failed to allege facts plausibly suggesting that the University's decision to *not* interview other witnesses resulted from gender bias.

Notwithstanding Princeton's fulsome, multi-stage investigation, and notwithstanding the absence of any specific factual allegations of bias, Doe in effect claims that a university violates Title IX unless it interviews *all witnesses* a male respondent puts forth. He contends it is clear legal error for this Court to conclude otherwise. But that is not the law. The Court did not err, and should rebuff Doe's attempt to get it to change its considered view of the alleged facts.

### C. The Court Did Not Err In Finding That Doe Failed To Plausibly Plead That The Panel Decision Was Based On Gender Bias.

Plaintiff's final argument—that the Panel's allegedly "inexplicable" decision demonstrates bias—does not explain how the Court erred. Regardless, the Court did not. The Panel explained why it credited Roe over Doe regarding the nonconsensual

14

touching and kissing charge. *See* ECF 24-5 at 6–10. Doe even acknowledges that the Panel found Doe responsible for unwanted touching/kissing not based on bias, but because Roe consistently testified she said no "ten or more times." ECF 26 at 29.

The Court was justified in rejecting Doe's "inexplicable outcome" argument based on the University's "thorough investigation, which included granting Plaintiff's first appeal, and then in large measure [finding] in his favor on a number of the most egregious allegations which resulted in a significantly reduced sanction." ECF 39 at 19. It thus plainly considered Doe's allegations and arguments, but reasonably rejected them as insufficient to show that the decision was predicated on gender-bias. Yet again, the Court did not err—let alone so clearly err as to justify granting reconsideration.

## **CONCLUSION**

The Court should deny Doe's Motion for Partial Reconsideration.

Respectfully submitted,
*/s/ Linda Wong*
WONG FLEMING, P.C.
821 Alexander Road, Suite 200
Princeton, NJ  08543-3663
(609) 951-9520
lwong@wongfleming.com

Laurel Pyke Malson (*pro hac vice*)
Amanda Shafer Berman (*pro hac vice*)
CROWELL & MORING LLP
1001 Pennsylvania Ave., N.W.
Washington, D.C. 20004
(202) 624-2500
LMalson@crowell.com
ABerman@crowell.com
*Attorneys for Defendant The Trustees of Princeton University*

15