UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| JOHN DOE,<br><br>    Plaintiff,<br><br>    v.<br><br>PRINCETON UNIVERSITY,<br><br>    Defendant. | Civil Action No. 22-5887 (RK) (JTQ)<br><br>**OPINION** |

**KIRSCH, District Judge**

**THIS MATTER** comes before the Court upon Plaintiff John Doe's ("Doe" or "Plaintiff") Motion for Partial Reconsideration, ("Mot.," ECF No. 45), seeking reconsideration of the Court's December 19, 2023 Opinion and Order, (ECF Nos. 39, 40) dismissing Plaintiff's Title IX claim without prejudice. Defendant Princeton University ("Princeton" or the "University") filed an opposition brief. ("Opp'n," ECF No. 47).[1] The Court has considered the parties' submissions and resolves the matter without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1. For the reasons set forth below, Plaintiff's Motion is **DENIED**.

**I.    BACKGROUND**

The Court discussed the relevant facts at length in its prior Opinion. ("Challenged Op.," ECF No. 39.) As such, the Court briefly recites the key facts from the Challenged Opinion for purposes of resolving the subject Motion.

---

[1] Plaintiff named "Princeton University" as the Defendant in his Complaint. (*See* ECF No. 1.) Defendant noted in its Motion to Dismiss that the proper Defendant in the matter is actually "The Trustees of Princeton University." (ECF No. 24-1 at 1 n.1.)

This matter arises from Princeton's investigation and sanction of a male student, John Doe, and his alleged sexual misconduct against a female student, Jane Roe, on two occasions: once in October of 2017 and again in February of 2019. Plaintiff, then a Princeton student, first met Jane Roe when she was a senior in high school visiting Princeton during prospective students' weekend in October 2017. (*Id.* at 2–3.) Doe and Roe "immediately hit it off," and Plaintiff agreed to let Roe stay the night in his dormitory room. (*Id.* at 2.) Once in Plaintiff's room, Roe agreed to give Plaintiff oral sex at his request, and following same, the two exchanged contact information. (*Id.*) Roe slept on a couch in the common room in Plaintiff's dormitory room and left the dormitory before Plaintiff awoke the next morning. (*Id.*)

Following this initial meeting, Plaintiff and Roe remained friendly, with Roe informing Plaintiff that she had been accepted to Princeton. (*Id.* at 3) Roe matriculated to Princeton in the Fall of 2018, and the two continued to exchange messages. (*Id.*) On February 7, 2019, Plaintiff and Roe separately attended the same event, where they spoke and kissed. (*Id.*) Roe eventually went to Plaintiff's dormitory room, at which point Plaintiff alleges "Roe [] became aggressive," "push[ing] [Plaintiff] down on the bed with both hands," "suck[ing] on [Plaintiff's] neck," and "aggressively perform[ing] oral sex on him." (*Id.*) The parties then "decided to have sex," even though "Roe was a virgin, and Doe had only had sex with one girl." (*Id.* at 3–4.) Roe assisted Plaintiff in putting on a condom, and Plaintiff and Roe engaged in sexual intercourse. (*Id.*) During the encounter, Plaintiff asked Roe to stop, and Roe became uncomfortable upon hearing laughter coming from the common area outside Plaintiff's room. (*Id.* at 4.) Afterwards, Roe called a friend crying, and Plaintiff discovered he had "a large number of big, darkly colored hickeys on both sides of his neck." (*Id.*)

Approximately eight months after the February 2019 encounter, on October 27, 2019, Roe filed a complaint with Princeton's Title IX office, alleging "that Doe had physically forced her to perform oral sex on him in October 2017; had physically forced her to perform vaginal and oral sex in [February 2019]; and . . . had made her give him a hickey . . . in [February 2019] before allowing her to leave his room." (*Id.*) Thereafter, Princeton began its investigation. (*Id.* at 6.)[2]

The three panelists assigned to conduct the investigation interviewed Roe and Doe, whose descriptions of the encounters differed significantly. (*Id.*) The panel also interviewed numerous witnesses. (*Id.* at 7–8.) On March 20, 2020, the panel issued its decision, which found Plaintiff "not responsible" for the October 2017 encounter, but "responsible for nonconsensual conduct and [sexual] penetration" during the February 2019 incident. (*Id.* at 8–9.) The panel sanctioned Plaintiff with a two-year suspension. (*Id.* at 9.) Plaintiff appealed the panel's decision, which was granted by Princeton's five-member appellete board, who remanded the matter for further investigation. (*Id.*) On remand, the panel again interviewed Roe and Plaintiff, as well as other witnesses. (*Id.*) On June 23, 2020, the panel issued its second decision, finding Plaintiff "not responsible for all of Roe's allegations except one: the allegation that Doe had kissed her and touched her breasts without consent at the beginning of the encounter." (*Id.* at 10.) Plaintiff was "sanctioned with 'censure' and 48 months of disciplinary probation," a punishment that would be noted in his student records. (*Id.*) Plaintiff again appealed this decision, but the appeal was denied on August 3, 2020. (*Id.*)

On October 5, 2022, Plaintiff brought suit in federal court against Defendant, alleging claims for violation of Title IX, breach of contract, breach of the duty of good faith and fair dealing,

---

[2] As the Court summarized in its Challenged Opinion, Roe's Complaint, and Princeton's Title IX investigation, were governed by Princeton's code of student conduct entitled "Rights, Rules, Responsibilities." (Challenged Op. at 4–5.) This policy prescribed the contours of the investigation that Princeton was required to follow. (*Id.* at 4–6.)

3

and negligence. Defendant filed a Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), contending that the Complaint fails to allege any evidence of gender bias or that the University violated its own Policy in investigating Roe's complaint against Plaintiff. (ECF No. 24.)

Following briefing, the Undersigned granted Princeton's Motion to Dismiss as to the Title IX, breach of duty and good faith and fair dealing, and negligence claims, but denied the Motion as to the breach of contract claim. Relevant to the pending Motion, the Court held that Plaintiff failed to allege a Title IX claim and dismissed same without prejudice. (*See* Challenged Op. at 27.)[3] The Court first found that Plaintiff had alleged external pressures on Princeton, including increased scrutiny into Princeton's handling of prior sexual misconduct investigations; however, under binding Third Circuit precedent, while these pressures were relevant and "factor[ed] into the total mix of information," they failed to give rise, on their own, to a Title IX claim. (*Id.* at 13–14.)

The Court then considered Plaintiff's claims in light of *Princeton III*[4] and *University of Sciences*,[5] as Plaintiff argued his case was factually similar to those Third Circuit decisions. (*Id.* at 14–16.) The Court found these prior precedents inapposite to Plaintiff's allegations. The Court held, *inter alia*, that Plaintiff failed to show that Princeton ignored male complaints of sexual misconduct, that Princeton failed to interview Plaintiff or his witnesses, or that University personnel made gender-based comments during their investigation. (*Id.* at 16–19.) Instead, the Court noted that Princeton had interviewed twenty-six total witnesses, including those friendly to Plaintiff, and had interviewed Plaintiff multiple times. (*Id.*). Moreover, the Court held that Plaintiff

---

[3] As Plaintiff only moves the Court to reconsider its dismissal of the Title IX claim, (Mot. at 1), the Court need not discuss its analysis pertaining to any other claim.
[4] *Doe v. Princeton Univ.*, 30 F.4th 335 (3d Cir. 2022).
[5] *Doe v. Univ. of Scis.*, 961 F.3d 203 (3d Cir. 2020).

failed to adequately allege gender bias based on "archaic assumptions," including Plaintiff's allegations that the panel did not believe that Roe could have been the aggressor based on assumptions of Roe due to her gender. (*Id.* at 18–19.) The Court ultimately held that "[w]hile Plaintiff may have disagreed with the outcome of the second decision on remand, he has not connected the unfavorable decision to any indicia of gender bias." (*Id.*)

Instead of filing an amended pleading, as the Court granted Plaintiff leave to do so, Plaintiff filed the subject Motion, which is now ripe.

## II.     LEGAL STANDARD

Reconsideration is an "extraordinary remedy" to be granted "sparingly." *United States v. Coburn*, No. 19-120, 2022 WL 874458, at *2 (D.N.J. Mar. 23, 2022) (quoting *NL Indus. Inc. v. Com. Union Ins. Co.*, 935 F. Supp. 513, 516 (D.N.J. 1996)). "The purpose of a motion for reconsideration . . . is to correct manifest errors of law or fact or to present newly discovered evidence." *Howard Hess Dental Labs. Inc. v. Dentsply Int'l, Inc.*, 602 F.3d 237, 251 (3d Cir. 2010) (quotation marks omitted) (quoting *Max's Seafood Café ex rel. Lou-Ann, Inc. v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999)). To succeed on a motion for reconsideration, a movant must show "(1) an intervening change in the controlling law; (2) new evidence that was not available when the court issued its order, or (3) the need to correct a clear error of law or prevent manifest injustice." *Gibson v. State Farm Mut. Auto. Ins. Co.*, 994 F.3d 182, 190 (3d Cir. 2020) (citing *Lazaridis v. Wehmer*, 591 F.3d 666, 669 (3d Cir. 2010)).

Pursuant to Local Civil Rule 7.1(i), a party may move for reconsideration within fourteen (14) days of an entry of order or judgment on the original motion. In its brief, the party must "set[] forth concisely the matter or controlling decisions which the party believes the Judge has overlooked." *See* L. Civ. R. 7.1(i). "The word 'overlooked' is the operative term in the Rule."

5

*Bowers v. Nat'l Collegiate Athletic Ass'n*, 130 F. Supp. 2d 610, 612 (D.N.J. 2001) (citing Allyn Z. Lite, *New Jersey Federal Practice Rules* 30 (2001)). A motion for reconsideration does not entitle a party to a second bite at the apple, and reconsideration is inappropriate when a party merely disagrees with a court's ruling or when a party simply wishes to re-argue its original motion. *Sch. Specialty, Inc. v. Ferrentino*, No. 14-4507, 2015 WL 4602995, *2–3 (D.N.J. July 30, 2015); *see also Florham Park Chevron, Inc. v. Chevron U.S.A.*, 680 F. Supp. 159, 162 (D.N.J. 1988).

### III. DISCUSSION

Here, Plaintiff does not argue that any new law or evidence requires reconsideration, instead focusing on what he perceives are three legal errors in the Challenged Opinion. First, Plaintiff contends that the Court erred in holding that "archaic assumptions" could not provide evidence of gender bias in cases relating to sexual misconduct investigations. (Mot. at 1–4.) As such, Plaintiff argues that the Court ignored Plaintiff's evidence related to the panel's use of archaic assumptions. (*Id.* at 5–8.) Second, Plaintiff avers that the Court erred by rejecting evidence that Plaintiff was treated less favorably than Roe because the allegations were "not the *same kinds* of uneven treatment alleged in *Princeton III*." (*Id.* at 8–11 (emphasis in original).) Third, Plaintiff contends that the Court erred in rejecting the panel's "inexplicable" and "perplexing" rationale as evidence of gender bias. (*Id.* at 11–12.) The Court addresses each in turn.

#### A. EVIDENCE OF ARCHAIC ASSUMPTIONS

Plaintiff first contends that the Court "contravened Third Circuit precedent" in failing to credit Plaintiff's allegations of "archaic assumptions" as evidence of gender discrimination. (Mot. at 1–2.) Plaintiff also argues that the Court "ignored" and "gave little attention" to Plaintiff's allegations of archaic assumptions in the complaint. (*Id.* at 5.) Plaintiff points to his allegations

regarding the panel's credibility determinations relating to believing Roe's story, as opposed to Plaintiff's. (Mot. at 5–7.)

The Court first notes that Plaintiff raises arguments—including the same sets of facts—the Court previously considered in ruling on the Challenged Opinion. (*See* Challenged Op. at 4–10.) On this basis alone, Plaintiff's disagreement with the Court is not a valid basis for reconsideration. *Bowers v. Nat'l Collegiate Athletic Ass'n*, 130 F. Supp. 2d 610, 612 (D.N.J. 2001) ("Mere disagreement with a decision of the District Court should normally be raised through the appellate process and is inappropriate on a motion for reargument.").

The Court need not decide whether archaic assumptions alone can, without more, support a Title IX claim. In the Challenged Opinion, the Court adhered to the "straightforward pleading standard" adopted by the Third Circuit in *University of Sciences* for Title IX claims: "to state a claim under Title IX, the alleged facts, if true, must support a plausible inference that a federally-funded college or university discriminated against a person on the basis of sex." (Challenged Op. at 13 (quoting *Doe v. Univ. of Scis.*, 961 F.3d 203, 209 (3d Cir. 2020)).) The Court further explained, citing again to the same Third Circuit opinion, that a party is "free to characterize their claims however they wish." (*Id.*)

Plaintiff points to the allegations in the Complaint in which the panel deemed Plaintiff's testimony "not credible" because "it found implausible that Roe, as a virgin, would help Doe put a condom on when he had trouble doing so, or that she would be upset that Doe wanted to stop having sex." ("Compl.," ECF No. 1 ¶ 236.) Plaintiff also argues that "the panel discredited Plaintiff's story of an aggressive Ms. Roe because her words and actions 'completely contradict[ed] that story.'" (Mot. at 6.) These allegations, without any reference to gender, at most, demonstrate bias in favor of sexual assault victims but fails to allege a Title IX violation. (*See*

7

Challenged Op. at 17 (collecting cases for the proposition that "[e]ven where there are allegations of bias in favor of sexual assault victims, without further allegations specifically regarding gender, courts have held these claims have failed to adequately plead a Title IX claim").) Regardless, the Court found Plaintiff's allegations regarding the panel's discriminatory credibility determinations "conclusory" and as such, failed to allege a Title IX violation. (*See* Challenged Op. at 18.) Plaintiff points to the same allegations in his original complaint to recycle the same argument—one the Court already rejected, and as such the Court denies Plaintiff's Motion on this ground. *See Bowers*, 130 F. Supp. 2d at 612.

### B. UNEVEN TREATMENT OF PLAINTIFF

Plaintiff next contends that the Court incorrectly "rejected [Plaintiff's allegations] as evidence of bias because they were not the *same kinds* of uneven treatment alleged in Princeton III." (Mot. at 8 (emphasis in original).) Plaintiff contends that the Court erred by failing to credit the "several important ways in which Princeton treated Ms. Roe more favorably than he or applied different standards to them." (*Id.*) Further, Plaintiff contends that the Court erred in concluding that only "a *completely* one-sided investigation" can be evidence of gender bias. (Mot. at 10 (emphasis in original).)

Plaintiff seeks to manufacture a clear legal error by contending that the Court held that only the same kinds of unequal treatment as alleged in *Princeton III* can state a Title IX claim. In the Challenged Opinion, the Court summarized *Princeton III* and the allegations alleged therein only because Plaintiff directed the Court there, contending *Princeton III* was "[e]ven more on point" than *University of Sciences* and drawing numerous comparisons to the facts of that case. (*See* ECF No. 26 at 18–26.) As such, in the Challenged Opinion, the Court reviewed the facts and holding of *Princeton III*. (See Challenged Op. at 13–15.) In doing so, the Court did not hold that only the

8

same kinds of unequal treatment alleged in *Princeton III* could allege a Title IX claim. Rather, the Court considered whether the facts of *Princeton III* were sufficiently analogous to those alleged in Plaintiff's Complaint. Ultimately, the Court found *Princeton III* sufficiently distinct, as in that case, after both the male and female complained to the University regarding alleged harassment from the other, Princeton encouraged the male party to seek "mental health services" while encouraging the female party to "file a Formal Title IX complaint," and after both parties violated a no-contact order, Princeton subjected the male to formal disciplinary proceedings while dismissing the female's violation. (*See* Challenged Op. at 14–15.)

As the Court stated in the Challenged Opinion, in the case at bar, Plaintiff did not file any complaint with the school or receive a more severe discipline than a female for the same conduct, and as such, the Court found the case inapposite. (*See id.* at 17–18.) While Plaintiff again contends that credibility determinations in Roe's favor and the panel's "harsh[er]" questioning of Plaintiff evidences gender bias, as the Court previously ruled, these allegations demonstrate at most bias in favor of sexual assault victims. (*See id.* at 17.) Nor did the Court conclude that only a "completely one-sided investigation" can amount to a Title IX claim. Instead, the Court reviewed the allegations regarding Princeton's investigation and held that Plaintiff failed to allege that he was treated differently based on his sex. (*Id.* at 16–18.) While Plaintiff disagrees with the Court's conclusion, Plaintiff merely "ask[s] the Court to rethink what is ha[s] already thought through—rightly or wrongly," which is improper on a reconsideration motion. *See Oritani Sav. & Loan Ass'n v. Fid. & Deposit Co. of Md.*, 744 F. Supp. 1311, 1314 (D.N.J. 1990) (citations and internal quotation marks omitted); *Schiano v. MBNA Corp.*, No. 05-1771, 2006 WL 3831225, at *2 (D.N.J. Dec. 28, 2006) ("Mere disagreement with the Court will not suffice to show that the Court overlooked relevant facts or controlling law . . . .").

9

### C. THE PANEL'S "PERPLEXING" RATIONALE

Finally, Plaintiff argues that the Court's "opinion did not even address" Plaintiff's argument that the Princeton's panel "perplexing" and "inexplicable" rationale evidenced gender bias. (Mot. at 11–12.) Plaintiff contends that the panel's rationale and decision—finding Doe responsible for non-consensual kissing and touching at the beginning of the February 2019 incident despite evidence of Roe "cover[ing] [Plaintiff's] neck in hickeys"—"makes zero sense and is still more evidence of bias." (*Id.*) However, this again is the same argument Plaintiff advanced in his opposition to Princeton's Motion to Dismiss. *See Columbus Life Ins. Co. v. Wilmington Tr., N.A.*, No. 20-7959, 2021 WL 3012864, at *1 (D.N.J. July 16, 2021) (motions for reconsideration do not "entitle a party to a second bite at the apple"); *In re Wojtaszek*, No. 20-3029, 2021 WL 2070596, at *1 (D.N.J. May 21, 2021) ("[A] a motion for reconsideration is inappropriate when a party merely disagrees with a court's ruling or when a party simply wishes to re-argue or re-hash its original motion.").

The Court disagrees that the panel's "inexplicable" rationale was overlooked. Rather, the Court considered Princeton's entire investigation, including its findings on remand and its ultimate decision only to find Plaintiff responsible for unlawful kissing and touching at the beginning of the encounter. (*See* Challenged Op. at 9–10 (describing allegations relating to Princeton's investigation on remand and second sanction of Plaintiff).) As such, the Court concluded that Princeton conducted a "thorough investigation, which included granting Plaintiff's first appeal, and then in large measure found in his favor on a number of the most egregious allegations which resulted in a significantly reduced sanction." (*Id.* at 19.) Plaintiff failed to demonstrate that the alleged "perplexing" decision was based on Plaintiff's gender. At most, Plaintiff alleges that the University chose to believe Roe, the sexual assault victim. (*See id.* at 17 (collecting cases for

10

proposition that "[e]ven where there are allegations of bias in favor of sexual assault victims, without further allegations specifically regarding gender, courts have held these claims have failed to adequately plead a Title DC claim").) As the Court previously explained, these allegations did not rise to a claim of discrimination based on gender, and Plaintiff merely recycles the same argument again on reconsideration. The Court will not indulge Plaintiff's attempted "second bite at the apple." *See Columbus Life Ins. Co.*, 2021 WL 3012864, at *1.

## IV. <u>CONCLUSION</u>

For the foregoing reasons, Plaintiff's Motion for Partial Reconsideration is **DENIED**. An appropriate Order will accompany this Opinion.

_____
**ROBERT KIRSCH**
**UNITED STATES DISTRICT JUDGE**

<u>Dated</u>: July 29th, 2024