Linda Wong, Esq.
WONG FLEMING
821 Alexander Road, Suite 200
Princeton, NJ 08543-3663
Tel. (609) 951-9520
Fax (609) 951-0270
lwong@wongfleming.com

Amanda Shafer Berman, Esq. (pro hac vice)
Eli L. Berns-Zieve, Esq. (pro hac vice)
CROWELL & MORING LLP
1001 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
Tel. (202) 624-2576
ABerman@crowell.com
EBerns-Zieve@crowell.com

Attorneys for Defendant The Trustees of Princeton University, a not-for-profit educational corp.
of the State of New Jersey (incorrectly referenced in the Complaint as "Princeton University")

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| JOHN DOE,<br>Plaintiff,<br><br>-vs-<br><br>PRINCETON UNIVERSITY,<br>Defendant. | Civil Action No. 22-5887 (RK) (JTQ)<br><br>Return Date: December 2, 2024 |

## REPLY IN SUPPORT OF DEFENDANT THE TRUSTEES OF PRINCETON UNIVERSITY'S MOTION TO QUASH OR FOR A PROTECTIVE ORDER

**TABLE OF CONTENTS**

ARGUMENT .................................................................................................................2

I.    Princeton Has Standing to Move for a Protective Order ....................................2

II.   Plaintiff is Wrong on the Merits .......................................................................4

      A.    The Jurisprudence to which Plaintiff Cites is Inapposite and Not
            Binding.......................................................................................................4

      B.    Discovery of Roe is not "Unique and Relevant" and the Harm to
            Her Far Outweighs Plaintiff's Putative Need ......................................6

III.  The University Takes no Position on Plaintiff's Motion for Alternative
      Service.......................................................................................................11

CONCLUSION............................................................................................................11

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Aetrex Worldwide, Inc. v. Burten Distribution, Inc.*,
No. CIV.A. 13-1140 SRC, 2014 WL 7073466 (D.N.J. Dec. 15, 2014) ...................................3

*Ankele v. Hambrick*,
286 F. Supp. 2d 485 (E.D. Pa. 2003), *aff'd*, 136 F. App'x 551 (3d Cir. 2005) .......................4

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)................................................................................................................10

*Costantino v. City of Atl. City*,
No. CV 13-6667 (RBK/JS), 2015 WL 12806490 (D.N.J. Nov. 4, 2015)................................3

*DIRECTV, Inc. v. Richards*,
No. CIV. 03-5606 (GEB), 2005 WL 1514187 (D.N.J. June 27, 2005) ...................................3

*Doe v. Lynn Univ., Inc.*,
No. 9:16-CV-80850, 2017 WL 275448 (S.D. Fla. Jan. 19, 2017)...................................4, 5, 6

*Doe v. Ohio State Univ.*,
No. 2:15-CV-2830, 2016 WL 541289 (S.D. Ohio Feb. 11, 2016) ..................................4, 5, 6

*Doe v. Princeton Univ.*,
790 F. App'x 379 (3d Cir. 2019) .............................................................................................5

*Doe v. Texas Christian Univ., et al.*,
No. 4:22-CV-00297-O, 2022 WL 19403998, 2022 WL 2400796 (N.D. Tex.) .......................4

*Le v. Univ. of Med. & Dentistry*,
No. CIV.A. 08-991SRC, 2009 WL 1209233 (D.N.J. May 4, 2009), *aff'd sub
nom. Phat Van Le v. Univ. of Med. & Dentistry of N.J.*, 379 F. App'x 171 (3d
Cir. 2010) ...............................................................................................................................10

*O'Neal v. Middletown Twp.*,
No. 3:18-cv-5269-BRM-LHG, 2019 WL 77066 (D.N.J. Jan. 2, 2019)....................................3

*Pontes v. Rowan Univ.*,
No. 18-cv-17317, 2024 WL 3507737 (D.N.J. July 23, 2024) ..................................................3

**Statutes**

28 U.S.C. § 636(b)(1)(A).........................................................................................................5

**Rules**

Fed. R. Civ. P. 26.........................................................................................................................10

Roe makes clear in her sworn affidavit that she has no knowledge or information relating to Plaintiff's breach of contract claim against Princeton. Roe also makes clear that her participation in this lawsuit would cause her serious mental health harm. That notwithstanding, Plaintiff insists on taking Roe's deposition, seeking to broadly question Roe about matters beyond the scope of this breach of contract lawsuit. The Court should not allow Roe's deposition to proceed.

The sole question remaining in this suit is whether Princeton substantially complied with its policies. That is readily answerable from the record. Asking Roe about her allegations of assault or what she experienced—or even her memory of the investigation—would yield little, if any, information relevant to Doe's breach of contract claim against Princeton. And it would yield no information not already provided to Doe in the panel's detailed interview notes and investigation reports, or through the testimony of the persons who conducted the disciplinary hearing.

Plaintiff cites a collection of Title IX lawsuits to oppose Princeton's motion, but this is not a Title IX lawsuit. It is a breach of contract lawsuit, where Plaintiff alleges that Princeton did not substantially comply with its discipline policies. This breach of contract lawsuit requires zero information from Roe. And even if Roe possessed information relating to the breach of contract claim, the harm to Roe outweighs Plaintiff's need for this information.

This Court is not an appellate arm of the University's disciplinary process and should not allow a free-ranging deposition of a non-party on extremely sensitive topics that bear little to no relation to Plaintiff's remaining breach of contract claim. This is particularly so when, as here, a deposition risks serious mental health harm to the deponent. The Court should grant the relief requested and enter a protective order barring the deposition.[1]

---

[1] As discussed below, the University requests that the Court bar Roe's deposition, but takes no position on Plaintiff's request for alternative service.

## ARGUMENT

Princeton has standing to move for a protective order barring Roe's deposition and Plaintiff does not contend otherwise. Plaintiff only argues that courts routinely deny motions like this one, but the cases he cites are all distinguishable. In most, the Plaintiff had been permitted to pursue Title IX and other claims that substantively challenge the outcome of the disciplinary process. Not so here, where only a breach of contract claim is live, and the scope of relevant discovery should be correspondingly narrowed. Plaintiff's argument that Roe's testimony is uniquely relevant is also wrong. The record already reflects the questions put to Roe by the disciplinary panel. And responses to questions *not* put to Roe in Princeton's disciplinary proceeding are not relevant.

## I.    PRINCETON HAS STANDING TO MOVE FOR A PROTECTIVE ORDER

Plaintiff's threshold argument is that "Princeton lacks standing to bring this motion at all." ECF 78 at 14. He further contends that Princeton's supposed failure to explain why it has standing is because it is "desperate to avoid the collection of obviously relevant testimony." ECF 78 at 15. That of course is not the case. Plaintiff overlooks the real, far simpler reason.

As stated in the first sentence of Princeton's brief, it moved to quash "or, in the alternative, for a protective order barring Roe's deposition."[2] ECF 76-1 at 4. That Princeton has standing to seek a protective order is beyond dispute. The cases cited in Plaintiff's brief make this very point:

> If a party lacks standing to move to quash or modify a subpoena, however, a party may utilize another mechanism to challenge a subpoena that seeks irrelevant information. A party can move for a protective order in regard to a subpoena issued to a nonparty if it believes its own interests are jeopardized by discovery sought from a third party and has standing under Rule 26(c) to seek a protective order regarding subpoenas issued to non-parties which seek irrelevant information.

---

[2] The University moved to quash in part as the Court's Case Management Order, in Paragraph 6, expressly acknowledged the propriety of motions to quash subpoenas on behalf of third parties. But the University also sought other relief—a protective order.

*Aetrex Worldwide, Inc. v. Burten Distribution, Inc.*, No. CIV.A. 13-1140 SRC, 2014 WL 7073466, at *4 (D.N.J. Dec. 15, 2014) (cited by Plaintiff at 14); *see also Pontes v. Rowan Univ.*, No. 18-cv-17317, 2024 WL 3507737, at n. 4 (D.N.J. July 23, 2024) (cited by Plaintiff at 14) (acknowledging that courts in this district allow parties to move for a protective order in regard to a third-party subpoena on relevance grounds); *DIRECTV, Inc. v. Richards*, No. CIV. 03-5606 (GEB), 2005 WL 1514187, at *4 (D.N.J. June 27, 2005) (cited by Plaintiff at 14)  (noting that the party should have moved for a protective order instead of to quash). These cases, in turn, reference other cases that make even clearer that parties have standing to seek protective orders regarding third-party subpoenas. *See, e.g.*, *Costantino v. City of Atl. City*, No. CV 13-6667 (RBK/JS), 2015 WL 12806490, at *3 (D.N.J. Nov. 4, 2015) (collecting cases holding "that a party can move for a protective order in regard to a subpoena issued to a non-party which seeks irrelevant information").

Plaintiff entirely ignores Princeton's request for a protective order. Specifically, the first sentence of Plaintiff's opposition addresses only "Princeton's motion to quash" and then Plaintiff's conclusion "respectfully asks this Court to deny Princeton's motion to quash and to grant his cross-motion for alternative service." ECF 78 at 5, 29. Nothing in between addresses Princeton's request for a protective order. *See generally* ECF 78. Put differently: Princeton's request for a protective order is unopposed. The Court should treat it as such and grant the University's motion for a protective order barring Roe's deposition. *See O'Neal v. Middletown Twp.*, No. 3:18-cv-5269-BRM-LHG, 2019 WL 77066, at *3 (D.N.J. Jan. 2, 2019) ("Plaintiffs fail to present any substantive argument in opposition to Defendants' argument, and therefore, have conceded the point."); *Ankele v. Hambrick*, 286 F. Supp. 2d 485, 496 (E.D. Pa. 2003), *aff'd*, 136 F. App'x 551 (3d Cir. 2005) ("Plaintiff makes no response to this argument, and thus has waived his opportunity to contest it.").

## II.    PLAINTIFF IS WRONG ON THE MERITS

Plaintiff contends courts "routinely deny motions like the one Princeton brings," but the three cases cited are inapposite. The Court should weigh the unique factors in play here, including the nature of the remaining claim and the particular harms that deposing Roe poses, and conclude that it is not necessary or appropriate to permit Plaintiff to take the extreme step of deposing a sexual misconduct victim in a breach of contract lawsuit that the victim had no role or information relating to the alleged breach.

### A.    The Jurisprudence to which Plaintiff Cites is Inapposite and Not Binding

Plaintiff points to three cases—*Doe v. Lynn University, Doe v. Texas Christian University, and Doe v. Ohio State University*—to support his argument that courts "routinely deny motions like the one Princeton brings here." ECF 78 at 16; *see generally id* at 16-21. A cursory read of each proves otherwise.

To state the obvious: this is not a Title IX case. Plaintiff seems to think otherwise. Each of the three cases he cites are Title IX cases. *See Doe v. Texas Christian Univ., et al.*, No. 4:22-CV-00297-O, 2022 WL 19403998, 2022 WL 2400796 (N.D. Tex.); *Doe v. Lynn Univ., Inc.*, No. 9:16-CV-80850, 2017 WL 275448, at *2 (S.D. Fla. Jan. 19, 2017); *Doe v. Ohio State Univ.*, No. 2:15-CV-2830, 2016 WL 541289, at *1 (S.D. Ohio Feb. 11, 2016). This matters. As Plaintiff acknowledges, the *Doe v. TCU* court concretely linked its decision to allow Roe's deposition to proceed to Doe's Title IX claims. *See* ECF 78 at 18 (quoting *Doe v. TCU*, 2022 WL 19403998, at *2 (N.D. Tex. Sept. 21, 2022), *reconsideration denied*, No. 22-cv-00297, 2022 WL 19403997 (N.D. Tex. Oct. 27, 2022)). The same plainly cannot be done here; no such claims remain live.

To circumvent this reality, Plaintiff argues that his contract claim similarly "turns on 'the accuracy of the outcome' and whether his panel acted with 'bias.'" ECF 78 at 18. Not so. Princeton is not contractually required to reach the outcome of Plaintiff's choosing. It need only not

substantially deviate from its policies. *Doe v. Princeton Univ.*, 790 F. App'x 379, 385 (3d Cir. 2019) (holding that New Jersey law requires a plaintiff to show "the institution violate[d] in some *substantial* way its rules and regulations") (quotations omitted).

Plaintiff's other cases are also distinguishable, both procedurally and substantively. The *Lynn University* court, for example, involved an Article III jurist's review of a magistrate judge's non-dispositive discovery orders pursuant to a "clearly erroneous or contrary to law" standard. *See Lynn Univ.*, 2017 WL 275448, at *1 (citing 28 U.S.C. § 636(b)(1)(A)). That the court, applying a highly deferential standard of review, did not overturn the magistrate's decision does not mean it would have been error for the magistrate to grant the motion. Further, key to that court's decision was that "Mary Roe possesses certain information about her interactions with Defendant that is both unique and relevant to Plaintiff's Title IX claim." *Lynn Univ.*, 2017 WL 275448, at *2. As discussed above, this is not a Title IX case; as discussed below, Jane Roe possesses no "unique and relevant" information. *See infra* at Section II.B.

Similarly, *Doe v. OSU* involved a subpoena to testify at a preliminary injunction hearing, a distinction upon which the court premised its decision, noting that in the discovery context "special consideration is given to non-parties to avoid imposing undue burdens upon them" but that "[n]on-party witnesses are routinely subpoenaed to testify at trial." *Doe v. OSU*, 2016 WL 541289, at *2. Additionally, Roe there had already sat for a deposition (which, according to the docket, there was no attempt to quash or bar through a protective order). *Id.* at *1. *OSU* thus differs in important respects from this case.

Plaintiff attempts to distinguish *Doe v. Amherst College*, on which Princeton relies, and which proffers a straightforward approach for this Court: bar non-party depositions that seek discovery obtainable from the opposing party where the non-party establishes that the deposition

will harm them. *See* ECF 76-1 at 6. The gist of Plaintiff's argument against *Amherst* seems to be that the Court should not credit Roe's affidavit. *See* ECF 78 at 21. But as discussed below, there is no basis to simply disregard sworn testimony. *See infra at* II.B. Amherst thus remains the most analogous case, and this Court should similarly protect the non-party sexual assault victim from an invasive deposition that is not necessary in the context of a straightforward contract claim against Princeton regarding its compliance with the RRR.

### B. Discovery of Roe is not "Unique and Relevant" and the Harm to Her Far Outweighs Plaintiff's Putative Need

The discovery Plaintiff seeks of Roe is not relevant, let alone uniquely so. *See Lynn Univ.*, 2017 WL 275448, at \*2. Plaintiff contends he seeks to depose Roe for the same reasons noted by the *TCU* court. ECF 78 at 21-22. But the *TCU* court very specifically linked its holding to Doe's Title IX claims—which do not exist here. Moreover, Plaintiff makes clear that he seeks *not* to ask Roe about the process, but to re-do the investigation, arguing that "what [Princeton] would have found if it had" asked Roe certain questions is relevant to his breach of contract claim. *See* ECF 78 at 22. That goes far beyond the logical scope of Doe's claim that Princeton did not follow the procedures set forth in the RRR, which do not mandate any particular approach to the questioning of a sexual assault complainant. But even setting that aside, Plaintiff has already been provided documents and testimony illustrating the nature and scope of the disciplinary panelists questioning of Roe.

Plaintiff suggests that Roe's testimony will fill a discovery void. No such void exists, and Roe's affidavit makes clear that she does not have any information that has not already been provided. Plaintiff again misconstrues Princeton's responses to his Requests for Admission ("RFAs") to suggest Roe's testimony will answer yet unanswered discovery requests. *Id.* But the University answered Plaintiff's RFAs and confirmed that the comprehensive interview summaries

in the disciplinary case file, all of which are single-spaced and at least nine pages long constitute the definitive record of what was or was not asked of Roe. ECF 76-1 at 11. Panel members similarly have confirmed: "[T]he only information that the Panel can rely on is what is in the interview notes. We can't rely on anything that we recall that is not in the interview notes. We can only rely on the information in the interview notes, and that information has been shared with both parties, and they have an opportunity to respond to it." Ex. 1 (Hubert Deposition Excerpts). There is thus no reason to ask Roe what was or was not asked of her, or what was or was not included in the case file—the case file and evidentiary record are clear, and the University does not deny that they are definitive accountings of what the investigative panel considered.

Plaintiff attempts to muddy this point with deposition testimony. He points to Dean Joyce Chen Shueh's testimony that she could not recall if the panel asked Roe to submit SHARE[3] records as evidence of the need for Roe's deposition. *See* ECF 78 at 23. But again, the detailed summaries of the panel's interview of Roe—the official records of what she was asked—show what she was and was not asked about.[4] Additionally, as deposition testimony makes clear, investigative panels only consider what is in the case file. *See* Ex. 1. If the SHARE records are not in the case file, they were not considered. There is no need to depose Roe on that point.

Plaintiff's reliance on Randy Hubert's deposition testimony to demonstrate his need for Roe's deposition similarly does the opposite. Ms. Hubert, who chaired the investigative panel, testified "I don't know what we would have asked her" when asked why the panel did not ask Roe about the testimony of Students M and N. ECF 78 at 22. In other words, the panel didn't think it

---

[3] The Sexual Harassment/Assault Advising, Resources and Education ("SHARE") office.

[4] Each interview summary, the shortest of which is nine (9) single-spaced pages, concludes with: "The notes from the interview were read back to [Jane Roe] and she agreed they were accurate." These are exhaustive summaries, not rough notes.

made sense to ask Roe about certain other students' testimony. But even if Plaintiff disagrees (again seeking to have this Court second-guess the minutiae of the panel's investigative process), to ask Roe why the panel did not ask her certain questions would be nonsensical. Roe, of course, cannot answer why other people did not ask her particular questions. Plaintiff knows this. He instead intends to ask Roe *about* the testimony of Students M and N; *i.e.*, to re-do that part of the investigation. That is beyond the scope of the pending contract claim, and not good reason to subject Roe to an invasive and potentially quite harmful deposition.

Plaintiff's assertion that Roe may recall the investigation more clearly than the investigators misses the point.[5] Plaintiff has not identified any questions relevant to his breach of contract claim to which he does not already have answers. He instead argues that "asking Jane Roe questions the investigators did *not* ask her will demonstrate the prejudice Mr. Doe did (or did not) suffer[.]" ECF 78 at 23-24. Again, Plaintiff is trying to re-do the underlying investigation, which is beyond the scope of this litigation as narrowed through Rule 12 motions practice; the remaining claim concerns only whether Princeton substantially complied with its policies. Plaintiff does not have a contractual right to have the University ask specific questions of his choosing; nothing in the RRR provides any such right to disciplinary respondents to dictate the course of the investigation against them. Were that so a viable contract claim would survive to trial—and likely prevail— in every university disciplinary case. That of course is not the case.

Plaintiff thus has not established any need for Roe's testimony. He nevertheless argues that his "need for Jane Roe's testimony substantially outweighs any potential emotional difficulty" to Roe. ECF 78 at 24. That Plaintiff does not believe a deposition will harm Roe is clear. He does all

---

[5] Roe also has already said under oath that she does *not* recall precisely what was asked of her. ECF 76-2 ¶ 13.

he can to trivialize her harm. He claims, for example, that Roe's harms "appear to be less severe than the ones alleged" in the cases he cites. *Id.* How Plaintiff concludes PTSD and suicidal ideation requiring *inpatient psychiatric care* is less serious than "depression" goes unexplained. *Compare* ECF 78 at 24 (citing depression and grand mal seizures) *with* ECF 76-2 ¶ 12. Plaintiff further notes Roe "does not supply any medical documentation." *Id.* The suggestion that, absent medical documentation, the Court should assume Roe lied in her affidavit is contrary to law. Affidavits made under penalty of perjury do not require medical documentation to have evidentiary value.[6]

The harm to Roe is clear—as is the harm to Princeton. As argued in Princeton's opening brief, involving Roe in this litigation will have a chilling effect on students' participation in future disciplinary proceedings. ECF 76-1 at 13. Plaintiff's only response to this argument is that students participating in disciplinary proceedings are already subject to defamation suits. *See* ECF 78 at 16. Plaintiff misses the fact that defendants in defamation suits are only subject to discovery *if* a plaintiff alleges sufficient factual matter that, accepted as true, states a claim to relief that is plausible on its face. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Doe doubles down, making the absurd assertion that, if universities can block third-party subpoenas, that will further chill complainants because it will lead to more plaintiffs like Doe suing individuals like Roe for defamation to secure their testimony about alleged deficiencies in a school's process. *See* ECF 78 at 16. But discovery must be relevant to the causes of action at issue. *See generally* Fed. R. Civ. P. 26. Participants in school disciplinary proceedings cannot be deposed—let alone about "the deficiencies in a school's process"—just because someone sues

---

[6] Plaintiff also mischaracterizes Roe's affidavit. He claims that although she "alleges that learning about the existence of the lawsuit as difficult for her, [she] does not similarly allege that her questioning by Princeton was." ECF 78 at 24. Setting aside that Roe is attesting, not "alleging," and that PTSD and suicidal ideation are more than just "difficult for her," Plaintiff is wrong. Roe's affidavit describes the disciplinary process as "a very traumatic time in my life[.]" ECF 76-2 ¶ 13.

them for defamation. Nor are defamation suits the deep freeze Doe thinks they are. There are far more structural impediments to discovery in a frivolous lawsuit—including, as noted above, pleading and discovery standards—than to a third-party subpoena. On this point, Doe's jurisprudential authority is again self-defeating; it suggests defamation suits premised on utterances in school disciplinary proceedings are uniquely *unlikely* to proceed to discovery. Doe cites *Khan v. Yale University*, which established as a matter of Connecticut public policy a qualified privilege for statements made by individuals alleging sexual assault in campus disciplinary proceedings precisely because of the risk of defamation suits chilling participation: "[t]he hesitation to report sexual misconduct may be especially pronounced on college campuses, and fears and concerns surrounding such reports would undoubtedly be compounded if victims had to worry that any report they made could also be the subject of a defamation suit."[7]

Lastly, the mitigation measures Doe offers are not enough. There simply is no need for Plaintiff's counsel to spend *five hours* questioning Roe about the disciplinary process. *See* ECF 78 at 25. If the Court is not inclined to bar Roe's deposition, it should limit it to written questions to be answered under oath—or, in the alternative, to no more than *two hours* of questioning about *the University's process* (the basis for Doe's sole cause of action), *not* the underlying events. And, if the Court allows the deposition to proceed at all, it should take Doe at his word; if his need for Roe's deposition is because the investigative panelists cannot answer certain questions, limit Roe's deposition to those specific questions.

---

[7] New Jersey law affords absolute immunity for statements made in school disciplinary proceedings. *See, e.g.*, *Le v. Univ. of Med. & Dentistry*, No. CIV.A. 08-991SRC, 2009 WL 1209233, at *6 (D.N.J. May 4, 2009), *aff'd sub nom. Phat Van Le v. Univ. of Med. & Dentistry of N.J.*, 379 F. App'x 171 (3d Cir. 2010) (granting summary judgment on plaintiff's defamation claims under New Jersey law as statements made during a graduate school disciplinary proceeding were subject to absolute immunity).

III. **THE UNIVERSITY TAKES NO POSITION ON PLAINTIFF'S MOTION FOR ALTERNATIVE SERVICE**

Plaintiff's motion for alternative service is flawed in many respects.

First, Plaintiff has not sought permission from this Court to file a motion. *See* Civil Case Management Order ¶ 5.

Second, Plaintiff's Rule 37.1 certification notwithstanding, the parties never met and conferred about this particular request. Plaintiff never asked Princeton for its position on the cross-motion, and so Princeton offered only its view that the deposition should not proceed. Had the parties conferred on this issue, Princeton would have informed Plaintiff that, if the Court allows Roe's deposition (which it should not), Princeton takes no position on the proposal of alternative service. Much effort and expense might have been saved had Plaintiff followed the rules.

Notwithstanding that Plaintiff's motion for alternative service flouts this Court's rules, Princeton takes no position on whether the Court should allow alternative service if it allows Roe's deposition—which it should not.

## **CONCLUSION**

For the foregoing reasons, the University respectfully requests that the Court grant its motion to quash the deposition subpoena to Jane Roe or issue a protective order barring the deposition in full. If the Court declines to bar the deposition in full, it should either (a) limit it to written questions to be answered under oath, or (b) limit the virtual deposition to two hours in time and the scope and form of the disciplinary process in substance.

Respectfully submitted,

 /s/ Linda Wong
Linda Wong, Esq.
WONG FLEMING
821 Alexander Road, Suite 200
Princeton, NJ 08543-3663

Tel. (609) 951-9520
Fax (609) 951-0270
lwong@wongfleming.com

Amanda Shafer Berman, Esq. (*pro hac vice*)
Eli L. Berns-Zieve, Esq. (*pro hac vice*)
CROWELL & MORING LLP
1001 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
Tel. (202) 624-2576
ABerman@crowell.com
EBerns-Zieve@crowell.com

*Attorneys for Defendant The Trustees of Princeton University, a not-for-profit educational corp. of the State of New Jersey (incorrectly referenced in the Complaint as "Princeton University")*