

November 25, 2024

<u>**VIA ECF**</u>
The Honorable Justin T. Quinn
U.S. Magistrate Judge
U.S. District Court, District of New Jersey
Clarkson S. Fisher Building & U.S. Courthouse
402 East State Street
Trenton, NJ 08608

> **Re: John Doe v. Princeton University, et al., Civil Case No. 3:22-cv-05887-RK-JTQ,**
> **Request to Compel a Witness Who Can Testify About Three Relevant Topics**
> <u>**During Princeton's Rule 30(b)(6) Deposition**</u>

Dear Judge Quinn,

I write on behalf of Plaintiff, John Doe, pursuant to Local Rule 37.1 and Paragraph 6 of Your Honor's Civil Case Management Order. Mr. Doe respectfully requests that Defendant, Princeton University ("Princeton"), be required to produce an appropriate witness at Princeton's upcoming Rule 30(b)(6) deposition who will be prepared to testify about three relevant topics that were identified in Mr. Doe's Rule 30(b)(6) deposition notice. Princeton has objected to these three topics and has said it will not produce a witness who can testify about these topics. Princeton's Rule 30(b)(6) deposition is scheduled to go forward on December 4, 2024.

Mr. Doe's Rule 30(b)(6) deposition notice to Princeton was served on September 24, 2024 and identifies eight topics about which a corporate representative of Princeton is being asked to provide testimony. The last three, to which Princeton objects, all relate to whether Princeton has an institutional bias in favor of sexual assault complainants and whether that bias influenced its regime for investigating and resolving those claims. The three topics and Princeton's objections to each are set forth below:

*Topic 6:*

Topic 6 asks for a witness to testify on "[t]he drafting and implementation of" the very Title IX policy under which Mr. Doe was charged, including "[t]he steps that were taken to ensure its processes were neutral vis-à-vis complainants and respondents" and "[t]he reasons" Princeton adopted "a different investigative and hearing process" for those claims than it used "for other types of alleged conduct violations," including its rejection of "live hearing[s]" for the former but not the latter.

*Princeton's Response to Topic 6:*

In addition to a list of general objections and objections to definitions, and objections to certain words in the Topic itself as vague and ambiguous, Princeton objected to this Topic on relevance grounds and on the ground that it was duplicative of other discovery taken in this case or that is more easily available through other less burdensome means, such as the deposition testimony of other previously produced and forthcoming witnesses. Princeton objected further on the ground that the Topic "seeks information that is premised on argument," such as "the reasons for adopting a different investigative and hearing process."

*Topic 7:*

Topic 7 asks for a witness to testify about Princeton's decision to retain the "preponderance of evidence" standard after rescission of the Dear Colleague Letter in 2017, despite having adopted that standard because of the DCL regime, including but not limited to:

• The length of time Princeton used a "clear and convincing evidence" standard or other standard higher than preponderance of the evidence before 2014;

• The reasons that a higher standard was not reinstated after the DCL was rescinded;

• The individuals responsible for the decision to retain the preponderance of the evidence

standard.

*Princeton's Response to Topic 7:*

In addition to a list of general objections, objections to definitions, and objection to the phrase "individuals responsible for" as vague and ambiguous, Princeton objected to this Topic as overly broad and unduly burdensome "to the extent it calls for information that is neither relevant to Plaintiffs' sole remaining claim nor proportional to the needs of this case." Plaintiff objected to the Topic further on the grounds that it implicated the attorney-client or attorney work product privileges.

*Topic 8:*

Topic 8 asks for a witness to testify on Princeton's public opposition in 2019 (the same year Mr. Doe's proceeding began) to proposed federal rulemaking that would require live hearings with cross-examination in sexual misconduct cases (despite, again, the fact that Princeton was using live hearings to resolve non-Title IX claims).

*Princeton's Response to Topic 8:*

In addition to a list of general objections, objections to definitions, and objections to certain terms, Princeton objected to the topic on relevance grounds and objected to the extent it asked for information protected by the attorney client or work product privileges.

Princeton's primary objection seems to be that these topics are not relevant and not reasonably calculated to lead to the discovery of admissible evidence. *Id.* But all three topics seek information on why Princeton has adopted pro-complainant procedures in sexual misconduct cases that it has not adopted in any other type of conduct case and how Princeton has ensured that those procedures are implemented fairly vis-à-vis complainants and respondents.

In allowing for "relevant" discovery, Federal Rule of Civil Procedure 26 "has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978). Mr. Doe's contract claim concerns whether Princeton provided him with an "'impartial and unbiased'" hearing panel (Compl. ¶¶ 333-37) and whether that panel actually applied the "preponderance of evidence" standard in his case (*id.* ¶¶ 327-32). If a culture of pro-complainant bias pervades Princeton's Title IX regime, and if that motivated the adoption of the actual procedures used to resolve Title IX claims, that would be circumstantial evidence a factfinder could consider in weighing whether Mr. Doe's panel acted with bias. *See, e.g.*, *Roebuck v. Drexel University*, 852 F.3d 715, 717 (3d Cir. 1988) (single statement by university president five years before plaintiff's denial of tenure would support inference of racial bias, even though president was non-decisionmaker in initial decision to deny tenure, because jury could infer he "had a significant influence on the attitudes and procedures of the tenure decisionmakers" by virtue of his position). Providing a deposition witness who can provide testimony on these topics, thus, plainly seeks discoverable, relevant information.

The parties have made a good-faith effort to resolve this dispute without involving the Court, as contemplated by Rule 37.1 and Your Honor's Civil Case Management Order. After Princeton initially objected to these three topics, counsel for Mr. Doe spoke on the phone with counsel for Princeton about Princeton's objections. Mr. Doe's counsel explained why these three topics were relevant, consistent with the explanation provided herein. Princeton's counsel did not address the objections other than relevance but said he would confer Princeton to see if Princeton would reconsider in the light of their conversation. On November 13, Princeton's counsel wrote to Mr. Doe's counsel to say that Princeton would continue to object to these three topics and

would not provide a witness who could provide testimony on these topics at the upcoming Rule 30(b)(6) deposition scheduled for December 4th.

Accordingly, Mr. Doe respectfully requests that Princeton be ordered to produce an appropriate witness who can testify about Topics 6, 7, and 8 at the upcoming December 4th Rule 30(b)(6) deposition.

Respectfully submitted,

FORD O'BRIEN LANDY LLP

_s/ Jamie Hoxie Solano_
Jamie H. Solano
Bryan McCracken
275 Madison Avenue, 24th Floor
New York, NY 10016
(212) 858-0040

DILLON PLLC
Justin Dillon (pro hac vice)
Chris Muha (pro hac vice)
Kimberly Blasey (pro hac vice)
DILLON PLLC
1717 K Street, Suite 900
Washington, DC 20006
T: (202) 787-5858

_Counsel for John Doe_