

December 6, 2024

**VIA ECF**
The Honorable Justin T. Quinn
U.S. Magistrate Judge
U.S. District Court, District of New Jersey
Clarkson S. Fisher Building & U.S. Courthouse
402 East State Street
Trenton, NJ 08608

>          **Re: John Doe v. Princeton University, et al., Civil Case No. 3:22-cv-05887-RK-JTQ,**
>          **Request to Compel Princeton to Produce Documents and**
>          **Permit Limited Discovery Beyond Today**

Dear Judge Quinn,

I write on behalf of Plaintiff, John Doe, pursuant to Local Rule 37.1 and Paragraph 6 of

Your Honor's Civil Case Management Order. Mr. Doe is writing to address two discovery-

related issues. First, Mr. Doe seeks the Court's assistance to compel the defendant, Princeton

University ("Princeton"), to produce two types of documents (likely anonymized already)

contained in seven other case files (for a total of 14 documents) where Princeton handed down a

term of suspension or 48 months of probation for a substantiated complaint of non-consensual

sexual contact (the charge Mr. Doe was found responsible for here) (the "Similar

Recommendation Records").

As discussed below, the Similar Recommendation Records are relevant because several

of Princeton's employees have now testified that they considered the underlying facts of these

other cases in arriving at Mr. Doe's sanction. Other information in discovery seems to suggest

that the sanctions in these case files reflect that Mr. Doe's sanction was inconsistent if Princeton

actually believed the evidence supported Jane Roe's allegations. Thus, the Similar

Recommendation Records are relevant to test the veracity of these witnesses' testimony and also

because they are likely to show that John Doe's disciplinary finding was not based on a preponderance of evidence but instead ended in a recommended punishment designed to be, in Princeton's mind, toothless because Princeton did not actually believe Jane Roe's allegations but punished John Doe nonetheless. Second, Mr. Doe respectfully requests that the Court grant leave for two discrete discovery items to happen outside of the discovery period that closes today: (1) that Plaintiff be permitted to take Jane Roe's deposition in the event that the Court resolves the pending motion to quash and/or for alternative service in Plaintiff's favor (*see* ECF Nos. 76, 78-79, 81); and (2) that Princeton be permitted a reasonable time to produce the Similar Recommendation Records.

*The Similar Recommendation Records Dispute*

The requested Similar Recommendation Records consist of two types of documents— panel memos and decision letters—contained in the case files of seven other disciplinary cases included in a list that Princeton eventually produced. As discussed further below, witnesses in depositions have admitted that they relied on these cases in determining Mr. Doe's sanction. On February 6, 2024, Mr. Doe served document production requests on Princeton. Request for Production No. 2 sought "[a]ll documents or communications that . . . refer to [or] relate to . . . the University's disciplinary proceeding against John Doe, including . . . resolution of any appeals[.]" Request for Production No. 7 sought, for each investigation conducted by Princeton in a specified time period, "documents sufficient to show" the policy provision alleged to have been violated, "the finding or outcome" of each investigation, and "any sanction imposed." On August 12, 2024, Princeton filed objections and responses to Request Nos. 2 and 7. It objected to Request No. 2 on relevance and undue burden grounds, among others, but responded that it

would produce responsive documents. It objected to Request No. 7 on similar grounds and stated it would not produce documents responsive to that request.

These records are relevant and discoverable in light of the allegations in Mr. Doe's Complaint that his sanction—48 months of *probation* for non-consensually kissing Jane Roe, taking off her clothes, and touching her bare breast while she supposedly said no "*ten or more times*"—was evidence that Princeton did not *really* think a preponderance of evidence supported his conviction, but instead was just "splitting the baby" in an effort to appease Roe (with a "guilty" finding on *something*) without "really" punishing him. *See, e.g.*, Compl. ¶¶ 17, 311.

Discovery to date has supported this explanation[1] and reflects why Princeton should be required to produce the Similar Recommendation Records in this case. Cole Crittenden, one of the two people who recommended Mr. Doe's sanction, was deposed and defended the sanction by testifying that it was based in part on a list of precedents for the same category of violation that he and the other sanctioner (Kathleen Deignan) reviewed. Nolan McCarty, one of Mr. Doe's appeals panelists, likewise testified that in weighing a student's appeal of a particular sanction, the appeals panelists were given a list of those precedents. Astonishingly, at the time of these depositions, Princeton had not produced the list of precedents that these people plainly relied on in determining Mr. Doe's sanction. Princeton has since produced the list (the "List").

The information contained in the List revealed that in several prior cases, students who were found responsible for the same type of conduct Mr. Doe had allegedly engaged in actually received 12-month *suspensions*, while some others received very lengthy terms of probation. The

---

[1] Indeed, one of Mr. Doe's appeals panelists—Rochelle Calhoun, Princeton's current Vice President for Campus Life—effectively admitted she was "surprised" that someone with Mr. Doe's finidngs would be sanctioned with probation.

descriptions included in the List of the wrongful conduct in those prior cases, however, was very brief (typically just one sentence).

Mr. Doe subsequently deposed Kathleen Deignan (the second sanctioner). Ms. Deignan was asked to explain why Mr. Doe had been sanctioned with only probation even though his conduct more closely resembled the brief descriptions in the prior cases included on the List where a full year's suspension had been handed down. Ms. Deignan responded that she and Mr. Crittenden had access to the entire case file of each of those prior cases and that their judgment about which cases were the most closely analogous ones was based on all of the underlying facts in those cases, not just the brief blurb that appeared on the List. Ms. Deignan stated repeatedly in her deposition testimony that the summaries on the List did not provide enough information for her to say whether Mr. Doe's conduct was more or less severe than the conduct in those other cases, and instead that it was likely that she specifically reviewed (or simply remembered) the facts in each case file before sanctioning Mr. Doe. In either scenario, she believes that she relied on the facts of these other cases in fashioning an appropriate sanction for Mr. Doe.  In other words, at least some of Princeton's employees used the content of the case files of those cases that appear on the List to determine the resolution and punishment in Mr. Doe's disciplinary action, but Princeton is refusing to produce those records here.

Upon hearing Ms. Deignan's testimony, Mr. Doe asked Princeton to produce not the entire underlying case files, but instead merely the panel memos and decision letters for certain cases identified on the List that resulted in certain sanctions. A panel memo is a memorandum that summarizes the facts, investigation, and analysis drafted by the investigative panel, which explains their findings and rationale. A decision letter is the separate letter that imposes a sanction. This narrow request eliminates any purported undue burden concerns because he is not

seeking the entire contents of each case file, but instead is seeking only the panel memos and decision letters. Moreover, if the memos and letters are styled similarly to Mr. Doe's files, these documents are already anonymized; they refer to the parties as "complainant" and "respondent" and to any witnesses by letter designation. Mr. Doe's counsel explained all of the above to Princeton in an effort to obtain them without further burdening the Court, but Princeton refused to produce the records and depositions continued.

On December 3, 2024, Mr. Doe's counsel raised the issue again with Princeton's counsel. Princeton responded that it would not produce the panel memos, even though its deponents had relied on them, on the grounds that they were "not relevant" and would "reflect personally identifiable information" even if redacted. Counsel for Mr. Doe and counsel for Princeton met and conferred the following day. Counsel for Mr. Doe explained, again, the relevance and minimal burden of these records as explained herein. Princeton refused to provide a meaningful explanation to the contrary and asserted instead that it was standing on its objections.

The Similar Recommendation Records are plainly relevant to test the veracity of the witness's testimony that Mr. Doe received a sanction that was in line with other similar cases, and is also relevant as circumstantial evidence reflecting that the sanction was the result of an unfair process, in breach of Princeton's contract. The records are likely anonymized and any burden in producing them is hardly undue. Accordingly, Mr. Doe respectfully requests that Princeton be ordered to promptly produce the requested Similar Recommendation Records.

*Limited Discovery Beyond The Close of Discovery*

The discovery period in this case currently ends today. Mr. Doe respectfully requests that the Court permit: (1) Plaintiff time to depose Jane Roe in the event the Court denies Princeton's

motion to quash; and (2) Princeton a reasonable time to produce the Similar Recommendation Records.

As set forth in Mr. Doe's Memorandum in Opposition to the Motion to Quash and in Support of His Cross-Motion for Alternative Service, Mr. Doe has undertaken significant efforts to timely serve and depose Jane Roe within the discovery period. On November 4, 2024, Princeton filed a motion to quash Jane Doe's deposition. On November 19, 2024, Mr. Doe filed a cross-motion to permit alternative service of Jane Roe's deposition subpoena. Both motions remain pending before Your Honor. We have conferred with Princeton's counsel, who is not opposed to allowing this deposition to occur outside of the discovery period in the event the Court denies Princeton's motion to quash.

Mr. Doe's delay in requesting this Court's assistance in compelling Princeton to produce the Similar Recommendation Records is due to Princeton initially concealing the List and the more recent revelation that its employees had access to, and were considering, not only the List but also the information contained in the Similar Recommendation Records. Mr. Doe was hopeful that further discussion with Princeton would obviate the need of further burdening the Court. Mr. Doe should not be penalized simply because Princeton did not appropriately and timely produce all of the records its employees relied upon in Mr. Doe's disciplinary proceedings.

Accordingly, we respectfully request that in the event the Court permits Jane Roe's deposition to proceed forward, the Court grant leave for that deposition to occur outside of the discovery period. Mr. Doe also respectfully requests that the Court permit Plaintiff a reasonable time to produce the Similar Recommendation Records in the event the Court grants his request

that Princeton be compelled to do so.

<div style="margin-left:50%">

Respectfully submitted,

FORD O'BRIEN LANDY LLP

*s/ Jamie Hoxie Solano*
Jamie H. Solano
Bryan McCracken
275 Madison Avenue, 24th Floor
New York, NY 10016

DILLON PLLC
Justin Dillon (pro hac vice)
Chris Muha (pro hac vice)
Kimberly Blasey (pro hac vice)
1717 K Street, Suite 900
Washington, DC 20006

*Counsel for Plaintiff John Doe*

</div>