

LINDA WONG
Member of NJ, PA, NY, VA, GA and DC Bars

lwong@wongfleming.com

December 11, 2024

**VIA ECF**

Honorable Justin T. Quinn, U.S.M.J.
U.S. District Court, District of New Jersey
Clarkson S. Fisher Building & U.S. Courthouse
402 East State Street
Trenton, NJ 08608

Re:   *Doe v. Princeton University*, et al., Civil Case No. 3:22-cv-05887-RK-JTQ,
      **Response to Plaintiff's Request to Compel and to Extend Discovery**

Dear Judge Quinn,

In this lawsuit, Princeton has produced 11,861 pages of documents, including documents from 11 University officials and employees. Plaintiff also has deposed 10 University officials and employees for a total of approximately 50 hours, in addition to taking a day-long Rule 30(b)(6) deposition. In short, Princeton has bent over backwards to accommodate Plaintiff's discovery requests on an expedited basis. Yet Plaintiff is not satisfied.

On the day discovery closed, Plaintiff requested via letter (ECF 86) that this Court compel Princeton to produce records from seven different student disciplinary cases, in different academic years involving different students, different investigating panels, different sanctioning panels, and different appeals panels (the "Different Disciplinary Records"). These documents are irrelevant to Plaintiff's breach of contract claim. In addition, they contain the most sensitive

821 ALEXANDER ROAD, SUITE 200 ◆ P.O. BOX 3663 ◆ PRINCETON, NJ 08543-3663
TEL: (609) 951-9520 ◆ FAX: (609) 951-0270
**WWW.WONGFLEMING.COM**

CALIFORNIA ◆ FLORIDA ◆ GEORGIA ◆ ILLINOIS ◆ INDIANA ◆ MICHIGAN
NEW JERSEY ◆ NEW YORK ◆ PENNSYLVANIA ◆ TENNESSEE ◆ TEXAS ◆ WASHINGTON

ATTORNEYS ADMITTED SOLELY IN THE JURISDICTION WHERE LISTED OFFICE IS LOCATED, UNLESS OTHERWISE NOTED

information relating to student-on-student sexual misconduct cases, involving students unrelated to and unaware of this lawsuit. For both of these reasons, in addition to the lateness of Plaintiff's request, the Court should decline to compel production of the Different Disciplinary Records.

Plaintiff's sole remaining claim is a breach of contract claim alleging that the investigating panel in his student discipline case failed to apply the preponderance standard when finding him responsible for violating University policy. Plaintiff does not allege that the sanction he received—48-month disciplinary probation—constituted a breach of contract. Importantly, the University officials who investigated the case (the "investigating panel") are different from those University officials who assigned the penalty in the case (the "sanctioning panel"). Again, Plaintiff's stated breach of contract claim relates solely to the work of the investigating panel, and not the work of the sanctioning panel. But now, at the close of the discovery, Plaintiff seeks discovery with respect to the sanctioning panel, even though such discovery is unrelated and irrelevant to Plaintiff's breach of contract claim. (There is also a separate and distinct "appeals panel," meaning that Plaintiff's student discipline case was reviewed by three different University panels, comprised of three different sets of individuals.)

To try to overcome this disconnect, Plaintiff posits that the work of the *sanctioning panel* somehow reflects whether the *investigating* panel appropriately applied the preponderance of the evidence standard in reaching a finding of responsibility. *See* ECF 86 at 3. But the sanctioning panel has no role in determining responsibility, it does not consider the strength of the evidence supporting responsibility, and it does not apply the preponderance standard when determining the appropriate sanction. *See* 2019 *Rights, Rules, Responsibilities* § 1.3.12.2.

The deposition testimony of the members of the sanctioning panel nails the coffin shut. Both sanctioning panel members testified that they *did no*t consider the strength of the evidence



in Plaintiff's case. When one member of the sanctioning panel, Dean Deignan, was asked whether she ever considered the strength of the evidence against Plaintiff, she testified: "No. That was not our role. We accepted the findings of the [Investigating] Panel and our job started at that point going forward. So we did not go back and sort of second guess . . . put our own spin on the facts that the [Investigating] Panel had determined." Ex. A, Deignan Dep. Tr. at 15:5-8 (cleaned up). The second member of the sanctioning panel, Vice Provost Crittenden, similarly testified that, in determining Plaintiff's sanction, he did not consider the strength of the evidence against Plaintiff: "[T]he role that Kathleen Deignan and I played was not to make determinations about strength of evidence; but, rather, once those determinations have been made and a[n] [investigating] panel has determined responsibility, to then assign an appropriate penalty."[1] Ex. B, Crittenden Dep. Tr. at 22:6-11. To the extent the sanctioning panel reviewed the facts underlying the precedents on which they relied for guidance, which were kept in a running list of sanctions imposed in Title IX cases, they did so only to determine which prior cases were most similar in terms of the violations found. *See* Ex. A at 14:3-9.

      Even setting aside that the sanctioning panel has no role in determining responsibility and does not weigh evidence, the Court should deny Plaintiff's request for two other reasons.

---

[1] Plaintiff nonetheless asserts that "[d]iscovery to date has supported" his theory that his sanction reflects the sanctioning panel's view of the evidence against him. ECF 86 at 3. He cites—and mischaracterizes—testimony from Vice President for Campus Life Rochelle Calhoun, a member of the *appeals* panel. *See id.* at 3 n.1. Plaintiff claims she "effectively admitted she was 'surprised' that someone with Mr. Doe's finidngs [*sic*] would be sanctioned with probation." *Id.* But when asked whether she was surprised that Plaintiff received 48 months of probation, Vice President Calhoun said: "Was it surprising that he only got 48 months of probation? I don't recall being surprised." Ex. C, Calhoun Dep. Tr. at 49:8–50:2. Plaintiff's counsel then asked whether "sitting here today" it was "surprising to [her] that he only got probation," and she *again* responded, "it is not surprising[.]" *Id.* at 52:3-11.

3



*First*, it is too late. Princeton served its objections to Plaintiff's discovery requests almost four months ago. It made its first document production more than three months ago; Plaintiff had ample time after that to follow up on any perceived deficiencies or absences. Plaintiff deposed Vice Provost Crittenden more than two months ago, after which Plaintiff first requested production of the List. Princeton then searched for and produced the List,[2] providing it before Plaintiff deposed former Dean Deignan—who Plaintiff questioned at length about the List—over a month ago. Plaintiff questioned several other Princeton witnesses about the List afterward. And yet Plaintiff now requests—in a letter sent on the last day of discovery—that the Court compel yet another production.[3] The Court should not reward Plaintiff's delay.

*Second*, the Different Disciplinary Records contain extremely sensitive personal information about other students and their disciplinary proceedings. Even if anonymized through redaction of student names, the description of the allegations and circumstances will be recognizable to students involved with those disciplinary processes, and likely also to friends and family of the parties.[4] Such personal and sensitive information about students not involved in this

---

[2] Plaintiff claims Princeton "concealed" the List. ECF 86 at 6. This is false. Dean Deignan, who retired before discovery began, maintained the List in hard copy. Locating the List was thus not as simple as identifying electronic records, but Princeton found and produced it soon after Plaintiff first asked for it after a deposition (not in a specific written discovery request). That Plaintiff claims Princeton "did not appropriately and timely produce all [ ] records," *id.*, is particularly rich as Plaintiff made his final production *on the very last day of the discovery period*.

[3] As compared to Princeton's five productions totaling 11,861 pages, Plaintiff has produced only 368 pages of documents. His suggestion that Princeton is resistant to discovery is unfounded.

[4] Depending on the outcome of this motion, Princeton may seek additional protections for these records, including a bar on filing them as exhibits or describing them in publicly filed briefs.

matter should not be made part of this case and potentially disclosed, even in redacted form, in filings. This is thus a situation where any potential evidentiary need for the requested discovery—which, as discussed above, is non-existent—is well outweighed by the burden and potential harms. *See Reichard v. United of Omaha Life Ins. Co.*, 805 F. App'x 111, 116-17 (3d Cir. 2020) (affirming denial of motion to compel discovery where production would have imposed a substantial burden on defendant and "the information's value to [plaintiff] would have been minimal at best").

The Court therefore should deny Plaintiff's request and decline to re-open discovery.

    Respectfully submitted,

*/s/ Linda Wong*
Linda Wong
WONG FLEMING
821 Alexander Road, Suite 200
Princeton, NJ 08540
lwong@wongfleming.com

*/s/ Amanda Shafer Berman*
Amanda Shafer Berman (*pro hac vice*)
Eli Berns-Zieve (*pro hac vice*)
CROWELL & MORING LLP
1001 Pennsylvania Ave., N.W.
Washington, D.C. 20004
aberman@crowell.com
eberns-zieve@crowell.com

*Counsel for Defendant*

cc:     All Counsel of Record (via ECF)