# EXHIBIT A

```
                                                          Page 1

 1              UNITED STATES DISTRICT COURT
                FOR THE DISTRICT OF NEW JERSEY
 2

                Civil Action No. 3:22-5887 (RK)(JTQ)
 3

      JOHN DOE,
 4

          Plaintiff,                    REMOTE VIDEOTAPED
 5                                       DEPOSITION OF:

          vs.                           KATHLEEN DEIGNAN
 6

      PRINCETON UNIVERSITY,
 7

          Defendants.
 8     _____

 9         TRANSCRIPT of the stenographic notes of the
10     proceedings in the above-entitled matter, as
11     taken by and before RITA GARDNER, a Notary
12     Public and Certified Court Reporter of the State
13     of New Jersey, held REMOTELY VIA ZOOM, on
14     Friday, November 8, 2024, commencing at 9:33
15     a.m.
16
17
18
19
20
21
22
23
24
25
```

```
 1     A P P E A R A N C E S :
 2         DILLON PLLC (DC)
           By:  CHRISTOPHER C. MUHA, ESQUIRE
 3         And  KIMBERLY BLASEY, ESQUIRE
           1717 K Street NW Ste 900
 4         Washington, DC 20006
           Cmuha@dillonpllc.com
 5         Kblasey@dillonpllc.com
           (202) 787-5871
 6         Attorneys for the Plaintiff
 7         CROWELL & MORING LLP
           By:  AMANDA BERMAN, ESQUIRE
 8         And  DERICK DAILEY, ESQUIRE
           1001 Pennsylvania Ave NW
 9         Washington, DC 20004
           Aberman@crowell.com
10         Ddailey@crowell.com
           (202) 624-2500
11         Attorneys for Defendant Princeton University
12
       A L S O  P R E S E N T:
13
           VERITEXT LEGAL SOLUTIONS
14         By:  MAGGIE KANE, VIDEOGRAPHER
15
16
17
18
19
20
21
22
23
24
25
```

```
 1    the charges that this person has been found
 2    responsible for?
 3         A.   The former. We would look at the --
 4    we would look at the full context in which these
 5    cases are not alike. They are all very
 6    different. They are all very -- very fact
 7    specific, and so we would look at the context,
 8    the full context before we would impose a
 9    sanction.
10         Q.   And then when you are comparing them
11    to the other case precedents, are you looking at
12    the specific facts of those other cases or are
13    you just looking at here is another case where
14    somebody has been found responsible for the same
15    charge?
16              MR. DAILEY:  Objection as to form.
17         A.   No, we would look at the facts of
18    other cases and look at these -- at the case in
19    front of us and say, "Do we think there were
20    factors in this particular case that made the
21    charges seem more or less serious?"
22    BY MS. BLASEY:
23         Q.   So you had access to the case files
24    of all of cases of the precedence that you were
25    looking at?
```

KATHLEEN DEIGNAN

Page 15

1     A.    We did.
2     Q.    Okay.  Did you consider your opinion
3  about the strength of the evidence in the case
4  that you were determining the sanction for?
5     A.    No.  That was not our role.  We --
6  we accepted the findings of the Panel and our job
7  started at that point going forward.  So we did
8  not go back and sort of second guess, if that is
9  the right word, or put on our own spin on the
10 facts that the Panel had determined.
11    Q.    Got it.  Was it always you and Cole
12 Crittenden on every case determining the
13 sanction?
14    A.    Yes.
15    Q.    So there were no other people that
16 could have been put on the sanctioning panel?
17    A.    No.
18    Q.    And how -- how many times would you
19 and Cole meet before issuing a final sanction?
20    A.    Once.
21    Q.    Did you ever meet more than once?
22    A.    It is possible that we met more than
23 once, but that would have been atypical.
24    Q.    Did you ever meet with anyone other
25 than Cole before issuing a sanction?