## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

———————————————————

JOHN DOE,

            Plaintiff,

          v.

PRINCETON UNIVERSITY,

            Defendant.

———————————————————

Civil Action No. 22-5887 (RK)(JTQ)

**MEMORANDUM & ORDER**

This matter comes before the Court on a motion by Defendant Princeton University to quash a subpoena from Plaintiff John Doe seeking the deposition of non-party Jane Roe or, in the alternative, for a protective order barring Roe's deposition. Plaintiff has cross-moved for an Order permitting Plaintiff to serve the deposition subpoena on Roe by alternative means, specifically, text message and email, which is unopposed. The Court held oral argument on February 11, 2025. The Court has carefully considered the submissions of the parties and the arguments of counsel. For the reasons below, Defendant's motion is denied, and Plaintiff's motion is granted.

I. Princeton's Motion to Quash/For a Protective Order

  A. Background

In October 2022, Plaintiff filed a four-court Complaint against Defendant Princeton University alleging gender-based discrimination in violation of Title IX, breach of contract, breach of the duty of good faith and fair dealing, and negligence.

Plaintiff's claims arise from Princeton's investigation and adjudication of sexual assault claims made against Plaintiff by Jane Roe while both were on campus at the University. Specifically, Roe accused Doe of sexually assaulting her first when she was a pre-freshman in October 2017 and then again in February 2019, after she became a student at the University. Ultimately, Princeton found Plaintiff responsible for Nonconsensual Sexual Contact and sanctioned him to 48 months of disciplinary probation. By way of this action Plaintiff seeks an injunction requiring Princeton to vacate its disciplinary finding and expunge all related records, as well as compensatory damages.

In December 2022, Princeton moved to dismiss the Complaint under Federal Rule of Civil Procedure 12(b)(6). ECF No. 24. The Hon. Robert Kirsch, U.S.D.J., granted the motion as to all claims except for the breach of contract claim. ECF Nos. 39 & 40. Plaintiff was given leave to file an Amended Complaint, but instead sought reconsideration of Judge Kirsch's decision. That motion was denied. ECF Nos. 61 & 62. No Amended Complaint has been filed; therefore, only one claim remains in this case—breach of contract.

Plaintiff's breach of contract claim centers on Princeton's code of student conduct entitled Rights, Rules, and Responsibilities (the "Policy"). ECF No. 1 ¶ 39. The Policy governed how claims of sexual misconduct were to be handled by the University. Under the Policy, claims were to be investigated and adjudicated by "a three-person investigative panel of University administrators and/or investigators" who would "conduct an inquiry and determine, by a preponderance

of the evidence, whether th[e] [P]olicy was violated." *Id.* ¶ 45. All members of this panel were to be "impartial and unbiased" and "have training in investigating and evaluating conduct prohibited under the [P]olicy." *Id.* ¶ 46.

In accordance with the Policy, resolution of a sexual misconduct claim involved the panel conducting interviews of the parties and witnesses then reviewing all of the evidence collected. A live hearing was not conducted; rather, the panel would "meet to determine, by a majority decision, whether the respondent, based on the preponderance of evidence standard, violated University policy." *Id.* ¶ 48. The panel then would "prepare a report, which [would] include findings of fact, findings of responsibility, and the panel's rationale." *Id.* If a student was found responsible for violating the Policy, "the dean of undergraduate students and the deputy dean for academic affairs of the Graduate School" were to "jointly determine the penalty." *Id.* ¶ 49.

The Policy allowed either party to a disciplinary proceeding to appeal on certain enumerated grounds, namely, "that: (1) there [wa]s substantial relevant information that was not presented, and reasonably could not have been presented during the investigation; (2) the imposed penalty d[id] not fall within the range of penalties imposed for similar misconduct, or (3) there [had been] procedural unfairness during the disciplinary process." *Id.* ¶¶ 51-52. Similar to the investigative panel, an appeal panel was comprised of three members who would "have training regarding Title IX and prohibited conduct defined under th[e] [P]olicy" and who also were to "be impartial and unbiased." *Id.* ¶ 51.

Roe filed her complaint against Doe in October 2019. After its investigation, the University cleared Doe with respect the 2017 incident but found him responsible for most of the allegations in connection with the 2019 incident. *Id.* ¶¶ 96-97. Doe was given a two-year suspension. Doe filed an appeal, the appellate panel granted the appeal, and the matter was remanded to the original panel for further proceedings. *Id.* ¶ 100.

On remand, the panel re-interviewed the parties and several witnesses. Plaintiff contends that there was a disparity in the way the panel treated each of the parties and the witnesses. For example, Plaintiff claims that "[t]he panel's relentless questioning of Doe bore no resemblance to its treatment of Roe" and its "treatment of Doe's witnesses was far more confrontational than its treatment of Roe's witnesses." *Id.* ¶ 279.

On June 23, 2020, the panel issued a supplemental decision finding Doe responsible for only one of the allegations related to the 2019 incident. *Id.* ¶¶ 106-107, 280, 299. As a result, the penalty against Doe was revised from two-years' suspension to 48 months of probation and censure. *Id.* ¶¶ 108, 311. Doe appealed for a second time, but his appeal was denied. *Id.* ¶¶ 312–13.

As noted above, only the breach of contract claim remains in this case. Plaintiff contends that Princeton breached its obligations under the Policy by failing to: (a) apply the preponderance of the evidence standard in resolving Roe's

claim *id.* ¶ 329; and (b) provide "an impartial, unbiased, and adequately trained panel." *Id.* ¶¶ 327-37.[1]

## B. Legal Standard

When a party seeks discovery pursuant to a subpoena under Federal Rule of Civil Procedure 45, the information and documents sought must fall within the scope of proper discovery under Rule 26. *In re Novo Nordisk Sec. Litig.*, 530 F. Supp. 3d 495, 501 (D.N.J. 2021). Rule 26 permits discovery "regarding any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). This Rule clearly "establishes a liberal discovery policy," *S.M. v. Tamaqua Area Sch. Dist.*, 2023 WL 3689607, at *1 (M.D. Pa. May 26, 2023), and "[t]he federal courts have ... long permitted broad and liberal discovery." *Resser v. J.B. Hunt Transp., Inc.*, 2022 WL 1240859, at *1 (M.D. Pa. Apr. 27, 2022) (citing *Sempier v. Johnson & Higgins*, 45 F.3d 724, 734 (3d Cir. 1995); *Pacitti v. Macy's*, 193 F.3d 766, 777 (3d Cir. 1999)). However, the scope of discovery "is not unlimited." *Saller v. QVC, Inc.*, 2016 WL 8716270, at *5 (E.D. Pa. June 24, 2016). A Court may limit discovery where, for example, it is not proportional to the needs of the case or if the burden or expense of the proposed discovery outweighs it benefits. Fed. R. Civ. P. 26(b)(1). A court will also restrict discovery that "is unreasonably cumulative or duplicative, or can be obtained from some other source

---

[1] Doe additionally asserts that by using a single body to both investigate and adjudicate Roe's claims, and by not allowing a live hearing with cross-examination, Princeton breached a requirement that disciplinary proceedings be "fundamentally fair." *Id.*

that is more convenient, less burdensome, or less expensive." Fed. R. Civ. P. 26(b)(2).

If a subpoena requests information that does not fall within the permissible scope of discovery under Rule 26, the subpoena may be quashed or modified. *Schmulovich v. 1161 Rt. 9 LLC*, 2007 WL 2362598, at *2 (D.N.J. Aug. 15, 2007). Notably, and relevant to the present motion, the Court may consider a motion to quash "as one for a protective order pursuant to Rule 26," *Staff4Jobs, LLC v. List Logistics, LLC*, 2020 WL 13580942, at *3 (D.N.J. Oct. 19, 2020), since "a protective order serves as another mechanism to challenge a subpoena that seeks irrelevant information." *Aetrex Worldwide, Inc. v. Burten Distrib.*, Inc., No. 13-1140, 2014 WL 7073466, at *4 (D.N.J. Dec. 15, 2014). "[A]ny person" may move for a protective order to protect a person from "annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c).

"The party seeking a protective order bears the burden of demonstrating the 'good cause' required to support such an order." *Trans Pacific Ins. Co. v. Trans–Pacific Ins. Co.*, 136 F.R.D. 385, 391 (E.D. Pa. 1991). Specifically, the party seeking a protective order must demonstrate "a particular need for protection." *Walgreens Specialty Pharmacy, LLC v. Atrium Admin. Servs., Inc.*, 2020 WL 6042280, at *2 (D.N.J. Oct. 13, 2020) (quoting *Cipollone v. Liggett Grp., Inc.*, 785 F.2d 1108, 1121 (3d Cir. 1986)). Establishing "good cause" requires the movant to "specifically demonstrate [ ] that disclosure will cause a clearly defined and serious injury." *Id.* (quoting *Glenmede Trust Co. v. Thompson*, 56 F.3d 476, 483 (3d Cir. 1995)).

6

C. Analysis

1. Standing

Before turning to the Parties' substantive arguments, Doe raises a threshold issue that the Court will address, albeit briefly as it warrants little discussion. Specifically, Doe argues that Princeton lacks standing to bring the instant motion to quash on Roe's behalf. The Court rejects Doe's argument.

"As a general rule, a motion to quash a third-party subpoena must be brought by the third party itself." *Malibu Media, LLC v. Doe*, 2016 WL 524248, at *2 (M.D. Pa. Feb. 10, 2016). However, even if Rule 45 does not provide a mechanism for Princeton to challenge the subpoena, Rule 26 does. Indeed, "unlike Rule 45, Rule 26(c) grants nonproducing parties standing to move for a protective order." *Contour Data Sols. LLC v. Gridforce Energy Mgmt., LLC*, 2022 WL 3907530, at *2 (E.D. Pa. July 25, 2022). As Rule 26 explicitly permits "a party" to seek a protective order, this "rule has been interpreted to provide standing for a party to contest discovery sought from third parties." *Id.* at *2 n.14.

This dooms Doe's argument. Moreover, because a subpoena is subject to the limitations of Rule 26, "the Court has discretion to *sua sponte* bar discovery if the burden or expense of the discovery outweighs its benefit. *Costantino v. City of Atl. City*, 2015 WL 12806490, at *3 (D.N.J. Nov. 4, 2015). As such, the Court rejects Plaintiff's standing argument and will address Princeton's motion on the merits under a Rule 26 analysis.

2. The Parties' Substantive Arguments

Princeton contends that there are a number of grounds justifying the entry of a protective order and/or quashing the subpoena. First, it contends that requiring Roe to sit for a deposition to discuss matters related to her sexual assault complaint would create an extreme burden to Roe. Roe has provided Princeton with a certification, which Princeton includes with its motion, detailing Roe's mental health struggles and the deleterious effects caused by the existence of this lawsuit, including "PTSD episodes and suicidal ideations." ECF No. 76-2 ¶ 12. Roe states that sitting for a deposition would be "extremely difficult" and would "seriously harm [her] mental health." *Id.*

Second, Princeton asserts that Roe lacks knowledge relevant to the case. It points out that this is a breach of contract action, and, therefore, the issue in this case is whether Princeton breached the terms of its agreement with Doe (*i.e.*, the Policy). Princeton contends that Roe has no knowledge of the reasons behind the University's investigative and deliberative processes with respect to Roe's complaint. In particular, pointing to the factors that Judge Kirsch found plausibly alleged a breach of contract claim, Princeton argues that "Roe has no idea why the University allegedly disregarded certain evidence, weighed certain evidence more heavily, or reached the conclusions it did." ECF No. 76-1 at 8 (citing ECF No. 39 at 20-21).

Third, Princeton alleges that Doe can get the information purportedly in Roe's possession from other sources. Princeton points to: (1) that it admitted all

but two of Plaintiff's requests for admission, including all of Plaintiff's requests that certain questions were never asked of Roe; and (2) the twelve depositions noticed by Plaintiff, including all three members of the investigative panel.

Finally, Princeton advances a policy argument, claiming that involving Roe in this lawsuit "will have a chilling effect on students' participation in future disciplinary proceedings." ECF No. 76-1 at 5-10. It asserts that students who suffer sexual assault may be dissuaded from reporting the misconduct to the University given the prospect of being forced to answer invasive questions in a potential court proceeding against the University years later.

In opposition, Doe argues that Roe has information that is relevant and necessary to Doe's case. According to Doe, he "seeks to depose Ms. Roe to discover information about interviews, meetings with Princeton officials, the investigation, and the appeal in which she participated directly, as well as to seek information reflecting on Roe's credibility—including potential motives to lie or to report, contradictory statements, and conversations with others throughout the process." ECF No. 79-1 at 17 (internal quotations and alterations omitted). He contends this information about her interactions with the University "is both unique [to Roe] and relevant to his claim." *Id.* Plaintiff further asserts that "[w]hether Princeton challenged Ms. Roe on various points, or sought certain information from her, and what it would have found if it had, is all highly relevant to whether Princeton provided [Doe] with an 'impartial and unbiased' panel that actually sought to apply the preponderance of the evidence standard fairly." *Id.* at 18.

9

Additionally, Plaintiff points to the fact that the panelists he deposed had a limited recollection of events surrounding Doe's disciplinary proceeding, particularly given that the relevant proceedings took place nearly five years ago. Plaintiff argues that Roe's recollection would likely be better than that of the panelists, given that the panelists have investigated dozens of cases, but for Jane Roe "this investigation was a singular moment." *Id.* at 19.

As to the emotional difficulty alleged by Roe, Plaintiff points to other cases in which courts have permitted the depositions of complainants who he claims have alleged similar or even more severe potential harms. *See, e.g.*, *Doe v. Texas Christian Univ.*, 2022 WL 19403998, at *2 (N.D. Tex. Sept. 21, 2022); *Doe v. Lynn Univ., Inc.,* 2017 WL 275448, at *4 (S.D. Fla. Jan. 19, 2017). His counsel also has offered to conduct the deposition in a less intrusive manner to mitigate any difficulties on Roe's part, including agreeing that Doe himself will not be present during questioning, conducting the deposition remotely so Roe will not be present in the same room as counsel, allowing Roe to have one person present with her in additional to counsel, and limiting the deposition to five hours.

In its reply, Princeton points out that the case law on which Plaintiff heavily relies are Title IX cases, which this is not. The University likewise takes issue with Plaintiff's position that its breach of contract claim turns on the accuracy of the outcome of the disciplinary proceeding and whether the panel acted with bias. Rather, according to Princeton, the central issue in this action is whether Princeton

breached its contract by substantially deviating from its policies. ECF No. 81 at 4-5.

It is Princeton's last point here that is critical to the Court's decision on this motion, particularly given the Parties' diverging views on what remains in the case and what then is germane to the allegations. This was a point the Court repeatedly referenced during oral argument, and it is something the Court feels it must emphasize in this decision. This is a breach of contract action. All other claims in this case have been dismissed and Plaintiff elected not to amend his Complaint to either add claims or additional facts to resurrect the claims that were dismissed. Therefore, the only discovery permissible in this case is that which is relevant to the issue of whether Princeton breached its agreement with Plaintiff.

As mentioned above, Plaintiff contends that Princeton breached its obligations to Doe in essentially two ways. The first is with regard to the Policy's requirement that Princeton apply the preponderance of the evidence standard in evaluating claims of sexual misconduct. Plaintiff claims that the University did not apply that standard. He alleges that "the University was aware of a large amount of evidence that called Roe's credibility into question and undermined her claims" and that it was also "aware that Doe had testified consistently and was overwhelmingly supported by the objective evidence," but Princeton nevertheless found against Doe, "based on a rationale that was incoherent and unsupported by the evidence." ECF No. 1 ¶¶ 327-29.

Since it was the *panel* (*and not Roe*) that applied a particular standard, the Court did not believe that Roe would have any relevant information on this issue. Plaintiff thinks differently. When questioned at oral argument about what evidence Roe could provide that would be relevant to the question of how Princeton weighed the evidence during the disciplinary proceeding (that is, whether it applied the preponderance standard), Plaintiff initially argued that he could obtain "demeanor evidence" from the deposition. This was a new theory that Plaintiff failed to raise in its briefing.[2] In essence, Plaintiff contends that this would be relevant to the credibility findings Princeton made and assist the factfinder in this matter with determining whether Roe is believable.

Plaintiff's argument misses the mark. This lawsuit is not an opportunity for Plaintiff to relitigate *de novo* the underlying disciplinary proceeding. The question here is whether Princeton met its obligations under the Policy. And Roe's "demeanor" at a deposition (or trial) many years later has no relevance to the credibility determinations made by Princeton under the circumstances that existed at the time of the disciplinary proceeding. The Court thus rejects Plaintiff's first argument.

---

[2] The Court takes a moment to advise the Parties that arguments raised for the first time during oral argument will not be entertained. *See Millipore Corp. v. W.L. Gore & Assocs., Inc.*, 2011 WL 5513193, at *9 (D.N.J. Nov. 9, 2011) (noting that "if raising a 'newly minted argument' is frowned upon in a reply brief, surely a 'newly minted argument' raised for the first time during oral argument is even more problematic").

Plaintiff's additional argument fares no better. Plaintiff states that Roe can provide information as to the completeness of her interview summaries, which he contends goes to Princeton's application of the preponderance standard.[3] The Court disagrees that such information, while potentially relevant to other issues in this case (as discussed below), is relevant to the question of whether Princeton applied the appropriate standard. While testimony from Roe could be used to fill in gaps or confirm the accuracy of information in interview summaries, it cannot speak to *how* Princeton weighed that evidence and what standard it applied. Rather, it goes to what evidence was before the panel for them to consider. For that reason, it has no relevance to the first theory underlying Plaintiff's breach of contract claim.

In sum, the Court finds Roe would have virtually no relevant knowledge regarding whether Princeton failed to apply the preponderance standard. Plaintiff has simply not shown that Roe's testimony would be relevant to the questions of how Princeton reached its decisions and what standard Princeton applied to its consideration of the evidence in the underlying proceeding.

The second manner in which Plaintiff alleges that Princeton breached its obligations to Doe is his contention that the University failed to provide an "impartial, unbiased, and adequately trained panel" to investigate and resolve

---

[3] During the disciplinary process, interviews were conducted with the parties and witnesses. They were not transcribed verbatim for the record but were instead summarized in detail. ECF No. 94 at 56:15 to 57:5. According to Princeton, these summaries are what it relied upon during the disciplinary process. *Id.* at 19:10-13.

Roe's claims. *Id.* ¶¶ 333-34. As to this allegation, the Court finds that Roe may have relevant information. For example, Plaintiff alleges in the Complaint that Princeton treated Doe more harshly than Roe. *Id.* ¶ 319. In this respect, Roe (and Roe alone) can testify as to her experience during the disciplinary process. Such information is probative of the issues relating to impartiality and bias, particularly when compared to Doe's experience.

Also related to these issues is the question of the completeness of the interview summaries. For example, Plaintiff alleges that questions posed to Roe with respect to certain contradictory testimony was purposely left out of the interview summaries. ECF No. 94 at 57:15-19. Plaintiff also points out that statements were taken by the University on intake of Roe's complaint are not included in the interview summaries. Therefore, Plaintiff seeks to explore with Roe whether certain questions were asked of her by Princeton.

Princeton, however, argues that this information could be obtained directly from the University staff that interviewed Roe. Further, Princeton contends that deposing Roe is unnecessary to explore whether certain questions were asked of Roe, because Princeton has taken the position that if something is not in the interview summaries, it was not asked. Because of this, Princeton maintains that Doe already has the information he seeks. However, given Roe's unique perspective as a participant in the underlying disciplinary proceeding, the Court is not persuaded by Princeton's contentions. To be sure, the panel's summaries are just that—summaries. They neither capture verbatim every question asked during the

14

interviews nor provide a transcription of every response or detail of the interview; they are a synopsis of the question-and-answer process between the interviewer and interviewee.  Princeton conceded as much during oral argument Transcript of Oral Argument at 56:15-25.

Therefore, the Court finds that Roe has certain unique, though limited, knowledge relevant to Doe's claim. But Doe's need for this discovery must be balanced against the burden on Roe to provide the information. The Court recognizes that being deposed will impose a substantial burden on Roe. As noted above, under Rule 26, a court may issue a protective order to protect a person "from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1); *see also* Rule 45(d)(3)(A)(iv) (A District Court "must quash or modify a subpoena that . . . subjects a person to undue burden."). In weighing this balance, the Court keeps in mind its obligations to each party—to ensure Doe can fairly and justly litigate his claim, and to ensure Roe, as a nonparty to this case, receives all the substantive and procedural safeguards to which she is entitled.

Having carefully weighed all the pertinent considerations, the Court finds that the scales tip in favor of allowing the deposition to proceed on this issue.  It, therefore, is only fair and reasonable to allow Plaintiff to explore this issue with Roe, lest the Court would deprive Plaintiff of information that is relevant and proportional to his claim.

For these reasons, the Court will allow Roe's deposition to proceed.  That said the Court will impose strict conditions (outlined below) for the deposition that

must be complied with.  These conditions strike the appropriate balance between allowing for Doe's discovery needs and avoiding an undue burden upon Roe.

Accordingly, the deposition will be permitted to proceed under the following conditions:

1. Due to the limited amount of relevant information Roe can provide, the deposition is not to exceed to three hours.

2. The deposition is to be conducted remotely and may not be video recorded.

3. Doe may not be present for, or observe remotely, the deposition.

4. Should Roe wish, she may have one person present with her in addition to counsel.

5. To ensure the deposition proceeds strictly in accordance with this decision, Doe is to submit for approval by the Court a list of topics, each with several examples of questions he intends to ask Roe, and Doe will be limited to only those topics approved by the Court. *See* Fed. R. Civ. P. 26(c)(1)(D) ("The court may, for good cause, issue an order … forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters[.]").

## II. Plaintiff's Motion for Alternative Service

Plaintiff's motion also seeks to have Roe served with a subpoena via alternative means.  The Court grants this motion.

While Roe has not yet been served with Doe's deposition subpoena, the Parties' briefing and Roe's certification make clear that Roe is aware that Plaintiff seeks her testimony in this lawsuit. The submissions also demonstrate the extensive lengths to which Plaintiff has gone to serve Roe with the subpoena, albeit unsuccessfully. Service has been attempted at two different residential addresses to which Roe is linked, including that on her voter registration. It has also been attempted a number of times at Roe's place of employment to no avail. Plaintiff's counsel also has been in contact with both Roe and Roe's father in an attempt to convince Roe to accept service. All of these efforts, and more, have proven unsuccessful. Plaintiff, therefore, asks the Court to permit service of the subpoena by text and/or email. Princeton takes no position on this request.

Federal Rule of Civil Procedure 45(b) governs service of a subpoena. It requires "delivering a copy to the named person," which has long been interpreted as requiring personal service. *Daly v. Restore Integrative Wellness, LLC*, 2024 WL 5057195, at *1 (E.D. Pa. Dec. 10, 2024). However, when circumstances warrant, courts have permitted service of a subpoena by alternative means. *See, e.g., Castillo v. Shippensburg Urban Devs., Inc.*, 2021 WL 12313250, at *1 (M.D. Pa. Nov. 24, 2021) (multiple failed attempts to personally serve); *Van v. Atl. Health Sys.*, 2021 WL 9528031, at *2 (D.N.J. June 9, 2021) (deponent evading service).

Under the circumstances here, the Court finds it appropriate to grant Plaintiff's motion and permit alternative service. Roe plainly is aware of Doe's attempts to serve the subpoena, and the Court finds that she is actively avoiding

17

service. Roe admits that she has been contacted by Plaintiff's process server and Plaintiff's counsel via calls, texts, and emails but she "do[es] not want to be served with a subpoena." ECF No. 76-2 ¶¶ 6-7. As her certification establishes that these methods of communication have successfully reached Roe, Plaintiff may serve Roe by text message and email.

III. Conclusion and Order

The Court having considered the submissions of the parties and the arguments of counsel, and for the reasons above,

**IT IS** on this 25th day of March 2025

**ORDERED** that Princeton's motion to quash/for a protective order [ECF No. 76] is DENIED; and it is further

**ORDERED** that the deposition of Roe shall be permitted to proceed under the conditions outlined in this Memorandum & Order; and it is further

**ORDERED** that Plaintiff is to submit his list of topics and sample questions to the Court for approval no later than April 7, 2025; and it is further

**ORDERED** that Plaintiff's motion for alternative service [ECF No. 79] is GRANTED.

s/ Justin T. Quinn
JUSTIN T. QUINN
United States Magistrate Judge

--terminates ECF No. 76, 79