Jamie Hoxie Solano
DYNAMIS LLP
11 Park Place
New York, NY 10007
T: (214) 454-8829
jsolano@dynamisllp.com

Justin Dillon (*pro hac vice*)
Christopher C. Muha (*pro hac vice*)
Kimberly Blasey (*pro hac vice*)
DILLON PLLC
1717 K Street, Suite 900
Washington, DC 20005
T: (202) 787-5858
jdillon@dillonpllc.com
cmuha@dillonpllc.com
kblasey@dillonpllc.com

*Attorneys for Plaintiff John Doe*

**IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| JOHN DOE,<br><br>    Plaintiff,<br><br>v.<br><br>PRINCETON UNIVERSITY,<br><br>    Defendant. | **Case No. 3:22-cv-05887-RK-JTQ** |

**PLAINTIFF'S PROPOSED TOPICS AND
SAMPLE QUESTIONS FOR JANE ROE'S DEPOSITION**

  Pursuant to this Court's March 25th order, John Doe hereby submits topics and sample questions for the deposition of Jane Roe.[1] That order stated that Doe may depose Roe regarding

---

[1] On March 28, counsel for Mr. Doe served a deposition subpoena on Ms. Roe through text and email, noticing her deposition for April 28, 2025, at 9:30 a.m., and asking her to confirm receipt

the second part of his contract claim: "his contention that the University failed to provide an 'impartial, unbiased, and adequately trained panel.'" ECF No. 95 at 13. This includes questions that pertain to whether "Princeton treated Doe more harshly than Roe," "the completeness of interview summaries," and the "intake of Roe's complaint." *Id.* at 14. The Third Circuit has also stated that the following three non-exclusive categories are relevant to a claim that Princeton failed to provide an "impartial, unbiased, and adequately trained panel" under its Rights, Rules, and Responsibilities policy:

1. Whether Princeton "applied inconsistent standards to asses [Roe]'s and [Doe]'s credibility";

2. Whether Princeton "overlooked or minimized glaring and substantial factors that would tend to undermine [Roe]'s veracity . . . including her motivations to lie"; and

3. Whether Princeton "disregarded compelling exculpatory evidence which contradicted [Roe]'s allegations.

*Doe v. Princeton Univ.*, 30 F.4th 335, 347 (3d Cir. 2022) ("*Princeton III*").

Given the above, counsel for Doe plans to ask Ms. Roe about the topics listed below. Consistent with this Court's order, sample lines of questioning—which are obviously illustrative but not exhaustive—are included with some of the examples below. As this Court will see, some of the questions will involve simply attempting to refresh Ms. Roe's memory, in light of her previous certification that she "remember[s] very little about the disciplinary process," including "by whom, or what questions [she] was asked," ECF No. 76-2 at 3-4.

**Topic 1: Ms. Roe's Intake Interview**

1. Do you recall meeting with Regan Crotty to discuss filing a formal complaint?

2. How long was this intake interview?

---

of the subpoena. Counsel for Mr. Doe also sent counsel for Princeton a copy of the subpoena that same day. To date, counsel for Mr. Doe has received no response from either Ms. Roe or from counsel for Princeton.

   3. Do you remember what you told her?

**Topic 2: Ms. Roe's Treatment by the Panel**

1. Do you recall anything negative about the tone with which you were interviewed or the manner in which you were questioned?

2. Do you recall the panel pressing you hard on any points of your testimony?

3. Do you believe the panel treated you fairly? If not, can you elaborate?

**Topic 3: Extent of the Panel's Questions About Changes in Her Testimony and Her Credibility**

The panel found that purported inconsistencies in Doe's testimony diminished his credibility. The extent of the panel's probing of changes in Roe's testimony therefore goes to whether Princeton treated Doe more harshly than Roe (ECF No. 95 at 14), such that Princeton "applied inconsistent standards to assess [the parties] credibility" and whether Princeton "overlooked or minimized glaring and substantial factors that would tend to undermine . . . [Roe's] veracity." *Princeton III*, 30 F.4th at 347.

1. During your first interview, did the panel ask you about how what you were telling them conflicted with certain things you'd said in your intake interview? What did they ask specifically? Did anyone from the panel ever provide you with a suggested explanation for your conflicting information? What did they suggest?

2. In your second interview, when you changed from saying the oral sex *followed* the vaginal sex to saying it *preceded* it, how much did the panel question you about that? What did they ask you about that change in your story?

3. When you changed from saying you gave John Doe one hickey to saying you gave him several, how much did the panel question you about that?

**Topic 4: Extent of the Panel's Questions About Conflicts with Witness Testimony**

The panel found that Roe's purported consistency in reporting her allegations to her friends bolstered her credibility. Whether and to what extent the panel examined how what Ms.

Roe told them differed from what she told her friends therefore also addresses whether Princeton treated Doe more harshly than Roe (ECF No. 95 at 14) to the extent that such testimony reflects that Princeton "applied inconsistent standards to assess [the parties] credibility" and whether Princeton "overlooked or minimized glaring and substantial factors that would tend to undermine . . . [Roe's] veracity." *Princeton III*, 30 F.4th at 347.

1. You told the panel that you gave John Doe a hickey in order to be get out of his room, but Student F said that oral sex was the action you performed in order "to get out of there." What if anything did the panel ask you about this testimony of Student F?

2. Student H reported that you said John Doe held you against the bed, took his pants off, and "pinned [you] on the bed" and "forcibly began to rape [you]." What if anything did the panel ask you about this testimony of Student H?

3. You told the panel that John Doe pulled you on top of him to engage in intercourse, but Student I said that you reported John Doe was "on top of you" and "wouldn't let you leave." What if anything did the panel ask you about this testimony of Student I?

**Topic 5: Extent of the Panel's Questions to Jane Roe About the Objective Evidence**

Like the previous two topics, this topic addresses whether Princeton treated Doe more harshly than Roe because it "overlooked or minimized glaring and substantial factors that would tend to undermine . . . [Roe's] veracity." *Princeton III*, 30 F.4th at 347.

1. Do you recall being shown a picture of hickeys on John Doe's neck from that night?

2. What do you recall about the panel's questioning about the hickeys?
    a. Did they ask you if the picture of John Doe's neck is what jogged your memory about giving John Doe multiple hickeys, rather than just one?
    b. Did they ask you if something else *besides* this picture is what jogged your memory that you gave John Doe multiple hickeys, rather than just one?

3. Did the panel ever ask you about the fact that Student F's phone records showed that he texted you twice while you were in John Doe's room and that John Doe also testified that your phone went off while you were in his room?
    a. What did the panel ask you about these texts?
    b. Do you recall whether they asked you one question or several?

**Topic 6: Panel's Questioning about the Hickeys**

1. Do you recall telling the panel that John Doe asked you for a hickey at the end of the encounter because of an eating club event that was happening the next day?

2. Did the panel ever ask you about the evidence showing that John Doe was actually upset when he learned you had given him several large hickeys?

**Topic 7: Other Questions about the Panel's Thoroughness**

1. Were there any witnesses you asked the panel to interview that they refused to interview?

2. Was there any documentary evidence you asked the panel to collect that they failed to collect?

3. Did the panel ask for a copy of your SHARE records?

**Topic 8: Questions about Her Interactions with Non-Panelists**

1. How often did you meet with Princeton employees besides the panelists to discuss matters related to your complaint?

2. How often did you speak with Regan Crotty to discuss matters related to your complaint?

3. When Student H changed his testimony about what you told him about the incident, did the panel ask you how his change in testimony came about or what role you played in securing that testimony?

DATED: April 7, 2025

Respectfully submitted,

*/s/ Jamie Hoxie Solano*
Jamie Hoxie Solano (NJ Bar No. 426422024)
DYNAMIS LLP
11 Park Place
New York, NY 10007
T: (214) 454-8829
jsolano@dynamisllp.com

*/s/ Justin Dillon*
Justin Dillon (*pro hac vice*)
Christopher C. Muha (*pro hac vice*)
Kimberly Blasey (*pro hac vice*)
DILLON PLLC
1717 K Street, Suite 900

5

       Washington, DC 20005
       T: (202) 787-5858
       jdillon@dillonpllc.com
       cmuha@dillonpllc.com
       kblasey@dillonpllc.com

*Attorneys for Plaintiff John Doe*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 7th day of April, 2025, the foregoing was served upon counsel of record through the Court's CM/ECF filing system.

*/s/ Jamie Hoxie Solano*
Jamie Hoxie Solano