

April 17, 2025

<u>VIA ECF</u>
The Honorable Justin T. Quinn
U.S. Magistrate Judge
U.S. District Court, District of New Jersey
Clarkson S. Fisher Building & U.S. Courthouse
402 East State Street
Trenton, NJ 08608

      Re:    <u>John Doe v. Princeton University, Case No. 3:22-cv-5887-RK-JTQ, Letter Reply to Princeton's Deposition Response</u>

Dear Judge Quinn:

      Because Princeton knows that this Court does not want Jane Doe's deposition to be a retrial of the underlying matter, it has mischaracterized Mr. Doe's down-the-middle proposal to make it seem as if that's what he seeks to do. It emphatically is not, and Mr. Doe appreciates this opportunity to make that clear.

      **I.**    **Princeton Mischaracterizes *Princeton III***

      First, Princeton objects to Topics 3, 4 and 5—all of which go to questions that the panel did or did not ask Ms. Roe (recall that there are no transcripts)—because Mr. Doe cited to the "three non-exclusive categories" identified in *Princeton III*. *See* ECF No. 100 at 3. Those factors are whether Princeton: (1) "applied inconsistent standards to asses [Roe]'s and [Doe]'s credibility"; (2) "overlooked or minimized glaring and substantial factors that would tend to undermine [Roe]'s veracity . . . including her motivations to lie"; and (3) "disregarded compelling exculpatory evidence which contradicted [Roe]'s allegations." *Doe v. Princeton Univ.*, 30 F.4th 335, 347 (3d Cir. 2022) ("*Princeton III*").

      Princeton says those categories are ***separate*** from Doe's contract claim alleging an "impartial and unbiased" panel, and therefore that Mr. Doe is trying to "sidestep [the Court's] limitation" by referencing them. ECF No. 100 at 3. That assertion is false: ***Princeton III* arrived at those categories *by interpreting the very "impartial and unbiased" contract provision at issue in this case*.** *See Princeton III*, 30 F.4th at 347-48. The Third Circuit made clear they are not "separate" from a contract claim about impartiality and bias; *Princeton III* was literally defining what it meant to breach the "impartial and unbiased investigation" provision that Ms. Roe's deposition is all about.

      This is hardly new territory, notwithstanding Princeton's claims to the contrary. Mr. Doe stated in his opposition to the motion to quash that Ms. Roe's testimony was relevant to his "impartial and unbiased" claim, in part because she could testify whether the *Princeton III* categories, which he paraphrased, had been satisfied. ECF No. 79-1 at 18 ("Whether Princeton ***challenged Ms. Roe on various points***, or ***sought certain***

**Boston**                                          **Miami**                                        **New York**

*information from her*, and what it would have found if it had, is all highly relevant to whether Princeton provided him with an "impartial and unbiased" panel[.]") (emphasis added).[1]

Thus, asking Ms. Roe whether the panel questioned her about changes in her testimony (Topic 3), how her testimony conflicted with other witnesses (Topic 4), or how her testimony conflicted with objective evidence such as hickey photos and phone records (Topic 5) falls within the heartland of *Princeton III*. There is no transcript of these interviews, and the panelists' recollection often differed or were nonexistent. That is why Mr. Doe needs to ask Ms. Roe about them. The suggestion that these topics—which explore the *exact* topics that *Princeton III* said should be explored in *exactly* the same kind of contract claim—are somehow new is simply not true.

Princeton's final argument is that *Princeton III* does not "bind this Court" because it was a motion to dismiss case, not an assessment under Rule 26. ECF No. 100 at 3-4. That's as true as it is irrelevant. Of course *Princeton III* does not dictate whether an entire Rule 26(c) analysis is satisfied here, or in any other case. What it *does* dictate is whether the *Princeton III* categories are relevant to a contract claim that a panel was not "impartial and unbiased." And the Third Circuit has made clear that it is.

## II.     Princeton Grossly Distorts Mr. Doe's Topics and Questions

Princeton also repeatedly distorts Doe's sample questions to make it seem like he wants to retry the underlying disciplinary matter. That is simply not the case.

With respect to Topic 3 (whether the panel questioned her about changes in her testimony), for example, Princeton claims that Ms. Roe will be asked to "respond to assertions that her testimony changed or conflicted." That misreads Topic 3, which states that she will be asked only what "***the panel*** ask[ed]" her about such statements, what "***they*** ask[ed] specifically," and whether ***they*** provided a "suggested explanation." (ECF No. 97 at 3, emphasis added). Princeton asserts that such questions do not "bear on the panel's partiality," *see* ECF No. 100 at 5, but *Princeton III* expressly held otherwise. 30 F.4th at 347 (a panel that "overlook[s] or minimize[s] glaring and substantial factors" is not impartial).

Topic 4 is whether the panel questioned Mr. Roe about how her testimony conflicted with other witnesses, which goes to whether the panel "overlooked or minimized" factors that would undermine Roe's credibility. *See Princeton III*, 30 F.4th at

---

[1] Princeton oddly asserts that *Lynn University* supports its argument. ECF No. 100 at 3 & n.1. But the *Lynn University* court didn't limit deposition questioning by claim and approved literally "all" of the plaintiff's proposed questions about the topic, "The Lynn University Disciplinary Process Against [John Doe]," despite blocking questions on other topics. *Doe v. Lynn Univ., Inc.*, No. 9:16-cv-80850, 2017 WL 275448, at *6 (S.D. Fla. Jan. 19, 2017). Mr. Doe agrees that this Court should follow *Lynn University* and permit "all" of his questions about "The [Princeton] University Disciplinary Process."

347. Princeton asserts that "Roe cannot testify to what the Panel 'overlooked,'" ECF No. 100 at 5, again twisting what Mr. Doe intends to ask. The questions are not about what *she* thinks the panel overlooked, but about what the panel *asked* her. Again, these questions are necessitated by Princeton's own decision not to transcribe the interviews.

Topic 5 is whether the panel ever asked Ms. Roe with objective evidence that undermined her story. And again, Princeton tries to distort this and claim that "Doe's focus is on Roe's testimony, not the panel's impartiality." ECF No. 100 at 5. This is again wrong. Topic 5's sample questions ask whether *the panel* showed Roe a picture of the hickeys, whether *the panel* asked her about them, and whether *the panel* asked her about Student F's phone records. ECF No. 97 at 4. This, again, goes to the panel's own bias.

So too for Topic 6 (questions about the panel's questions about hickeys), which Princeton claims is about "Roe's testimony, not her experience with the panel." ECF No. 100 at 6. Again, this just isn't true: The first sample question lays a basic foundation, and the second asks if "*the panel* ever ask[ed]" about it. ECF No. 97 at 5 (emphasis added).

Finally, Princeton objects to Topic 8 (questions about Ms. Roe's interactions with non-panelists) on the grounds that it is irrelevant. That argument fails for two reasons— one on its face and one on the grounds of something that was uncovered during discovery.

First, some of the questions under that topic will ask whether *the panel* questioned Ms. Roe about those interactions with non-panelists (such as with Student H, *see* ECF No. 97 at 5). Questions about what the panel investigated are obviously proper.

Second, questions about whether Roe "m[e]t with Princeton employees besides the panelists," like Regan Crotty (the panelists' direct report, who oversaw all Title IX investigations), are relevant because of something Mr. Doe did not learn until discovery—namely, that the draft of the panel's first decision was actually going to find Mr. Doe *not responsible* for the most serious charges against him. **But when the panel sent that draft to Ms. Crotty—who was not a panelist and played no formal role in the hearing process—she rewrote it to change the outcome, recommending that they find Mr. Doe *responsible* for those charges.** The panel accepted her recommendation and did exactly that. Given Ms. Crotty's—to put it mildly—*unorthodox* intervention in the process, and the fact that she conducted an intake interview of Ms. Roe that was never shared with Mr. Doe (which the Court mentioned in its Order, *see* ECF No. 95 at 14), asking Ms. Roe about her interactions with Ms. Crotty is plainly relevant.

For these reasons, Mr. Doe respectfully requests that this Court approve all of his proposed topics and questions. Mr. Doe assures the Court that he will stay well within the bounds of what it has allowed.

Respectfully submitted,

*/s/ Jamie Hoxie Solano*
Jamie Hoxie Solano

**Boston**  **Miami**  **New York**