UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| JOHN DOE, | : |
| Plaintiff, | : Civil Action No. 22-5887 (RK)(JTQ) |
| v. | : **ORDER** |
| PRINCETON UNIVERSITY, | : |
| Defendant. | : |

It is the duty of this Court to manage the discovery process in a manner that both preserves the truth-seeking function of litigation and protects persons—especially non-parties—from "annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). In this lawsuit, the Court has been called upon to carefully weigh Plaintiff's legitimate interest in obtaining relevant discovery against the potential for undue hardship to a non-party witness. This balancing process lies at the core of the Court's supervisory function under Rule 26.

Plaintiff has subpoenaed the deposition of Jane Roe, the complainant in the student disciplinary proceeding underlying this case. Defendant had sought entry of a protective order barring the deposition. ECF No. 76. That motion was supported by a certification from Jane Roe, who described the impact that learning of this lawsuit had on her mental health, including a relapse of PTSD symptoms that required inpatient care followed by a partial hospitalization program. Roe

asserted that being compelled to sit for a deposition would significantly endanger her mental well-being and jeopardize the progress she has made in treatment. The Court, in balancing all parties' interests, found it appropriate to permit the deposition to proceed but also found good cause existed to impose strict conditions on the deposition in order to minimize the burden on Roe. ECF No. 95 at 15-16.

To enable the Court to appropriately weigh Doe's specific discovery needs against the Roe's interests, the Court directed Doe to submit for approval a list of deposition topics, each accompanied by representative examples of the questions he intends to pose. *See* Fed. R. Civ. P. 26(c)(1)(D) ("The court may, for good cause, issue an order … forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters[.]"). Plaintiff has submitted a list of eight topics with sample questions, which the Court now reviews.

As a threshold matter, it is necessary to clarify the context in which this deposition is proceeding and lens through which the proposed topics are being evaluated. As the Court has felt the need to state several times, this is a breach of contract action. Plaintiff's sole claim is that Princeton breached its obligations to him under Princeton's code of student conduct (the "Policy"), which governed how claims of sexual misconduct were to be handled by the University. As relevant here, Plaintiff's claims center on his allegations that Princeton (a) failed to apply the preponderance of the evidence standard in resolving Roe's claim against him, ECF No. 1 at ¶ 329; and (b) failed to provide "an impartial, unbiased, and adequately trained panel" to investigate and resolve Roe's claims, *id.* ¶¶ 327-37.

It is also important to reaffirm what this case is not. As the Court has stated previously, this is not a forum for Doe to relitigate *de novo* the claims asserted in the underlying disciplinary proceeding. Doe states in his Complaint that he "is innocent" and "he has come to this Court for redress." *Id.* at ¶ 31. However, the central question in this case is not "whether Plaintiff is 'innocent' in the sense that he did not commit the act[s] of which he stood accused." *Doe v. Lynn University, Inc.*, 2017 WL 275448, at *5 (S.D Fla. Jan. 19, 2017). Rather, the question is whether the proceeding through which Princeton found Doe responsible for misconduct was flawed because it failed to provide the process Princeton had promised Doe under the Policy.

Although *Lynn University* involved a claim under Title IX, the decision nevertheless provides some helpful guidance here. Specifically, in discussing the scope of discovery for an "erroneous outcome"[1] claim under Title IX, the *Lynn* court offered the following hypothetical:

> Imagine a student that is, indeed, innocent—in truth and in fact[.] Defendant [University] fails to uncover evidence of the student's innocence through no fault of its own. The physical evidence is in equipoise and a witness with exculpatory testimony simply does not come forward. The decision makers are left to assess the credibility of the parties' testimony. After a procedurally flawless hearing, the decision makers credit the testimony of the accused. The result would be "wrong" as a matter of fact. But Plaintiff very well may not

---

[1] The questions at the heart of the claim in *Lynn* were whether there had been a finding of misconduct after a disciplinary proceeding that could not support that result and, if so, whether there was a connection between that erroneous outcome and the plaintiff's gender.

3

> succeed on an erroneous outcome challenge. *The outcome must be accurate in the sense that it was not the result of a procedurally or otherwise flawed proceeding. It need not be accurate as a matter of truth.*

*Id.* at *5 (emphasis added). Here, like in *Lynn*, the focus is on the process. This distinction "is pivotal," as "it separates the relevant areas of inquiry from the merely tangential ones." *Id.* And this distinction is critical to the Court's task here.

Plaintiff has submitted 8 potential topics of inquiry for Roe's deposition, each with sample questions. The Court addresses each topic in turn below.

Topic One

The first topic is "Ms. Roe's Intake Interview". This topic and the first two sample questions relate to the initiation of Roe's complaint against Doe. This is part of the overall disciplinary process that is at issue in this case and goes to how Defendant initiated its investigation into Roe's claims. Additionally, it appears that information regarding the Roe's intake is not included in the interview summaries prepared by the investigating panel. Therefore, the Court finds the information sought by the first two questions to be relevant, and Doe's need for the discovery outweighs Roe's interests here.

The Court, however, in weighing Plaintiff's need for the information against the burden on Roe, will disallow the third sample question. *See Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 787 (3d Cir. 1994) (A court is to "balance the requesting party's need for information against the injury that might result" if the disclosure is permitted.) The information sought is duplicative—Plaintiff already

has information about what Roe told the administrator who conducted her intake interview. This information is contained in notes that were produced to Doe. As such, the Court finds that Doe's need does not outweigh the burden on Roe as to the third sample question.

Topic Two

The second proposed topic is "Ms. Roe's Treatment by the Panel". This topic encompasses questions about the manner and tone in which Roe was interviewed, and whether she was pressed on any points of her testimony to the panel. The Court finds that this topic is relevant because it goes to the question of alleged bias by the panel. And because Roe is the only source of her subjective impressions of how she was treated by the panel, the Court finds Doe's interests outweigh Roe's here. Questions to Roe on the topic of Roe's treatment by the Panel will be permitted.

Topic Three

The third proposed topic is the "Extent of the Panel's Questions About Changes in Her Testimony and Her Credibility". Based on the sample questions, Plaintiff seeks to question Roe about whether the panel probed her on specific alleged conflicts and/or inconsistencies in her testimony to the panel. Doe contends that such testimony is relevant to whether Princeton treated Doe more harshly than Roe, applied inconsistent standards in assessing credibility, and whether Princeton overlooked or minimized factors bearing on Roe's veracity. For the reasons below, the Court will not permit questioning regarding this topic.

5

As an initial matter, the Court notes that much of Plaintiff's argument in support of this topic is based upon *Doe v. Princeton Univ.*, 30 F.4th 335, 347 (3d Cir. 2022) ("*Princeton III*"). Plaintiff did not raise these arguments in its underlying motion papers, and the Court declines to entertain them now. As the Court has advised the parties before, it will not entertain "newly minted" arguments raised after the completion of briefing. *See Doe v. Princeton Univ.*, 2025 WL 919672, at *5 (D.N.J. Mar. 25, 2025) (*citing Millipore Corp. v. W.L. Gore & Assocs., Inc.*, 2011 WL 5513193, at *9 (D.N.J. Nov. 9, 2011)).

Further, although Doe attempts to cast his proposed questions as inquiries into the manner in which the panel questioned Roe, he is, in effect, seeking to have Roe respond to allegations that her prior testimony was inconsistent or conflicting. As the Court has stated previously in this case, this deposition is not a vehicle for Plaintiff to revisit the substance of Roe's earlier testimony or to confront her with challenges to it.

Lastly, in weighing Plaintiff's need for the information against the burden to Roe if Plaintiff is permitted to pursue this line of inquiry, the Court finds that the proposed questioning on this topic should not be permitted. To be relevant, information falling under this topic must center whether the panel explored certain areas of inquiry with Roe—not the substance of her responses to the panel. Doe has the panel's detailed interview summaries, which reflect the scope and content of the panel's questioning. Princeton has confirmed that if a topic or line of questioning does not appear in the summaries, it was not raised during Roe's

interviews. *See*, *e.g.*, ECF No. 94 at 79 at 13:16. And, as Princeton has pointed out, if the interview summaries show that certain questions were not asked of Roe by the panel, that fact only helps, not harms, Plaintiff's case. Therefore, the Court finds that permitting Doe to question Roe on this proposed topic would subject her to an undue burden without yielding any new or necessary information. Accordingly, the Court will not permit this area of inquiry at Roe's deposition.

Topic Four

Plaintiff's fourth proposed topic is "Extent of the Panel's Questions About Conflicts with Witness Testimony." Doe seeks to question Roe about whether and to what extent the panel examined Roe on how her testimony allegedly differed from what she told her friends about what happened. For the same reasons as with Topic Three, the Court will not permit this area of inquiry at Roe's deposition.

Topic Five

Plaintiff's fifth proposed topic is "Extent of the Panel's Questions to Jane Roe About the Objective Evidence." Doe states that this topic addresses the issue of whether the panel overlooked factors that would tend to undermine Roe's veracity. Again, the substance of the proposed questions leads the Court to believe Plaintiff is seeking to rehash and potentially challenge Roe's earlier testimony. Therefore, for the same reasons as above, the Court will not permit questioning on this topic.

<u>Topic Six</u>

The sixth proposed topic is "Panel's Questioning about the Hickeys." Once again, Plaintiff seeks to rehash and potentially challenge Roe's prior testimony to the panel. For the same reasons as above, the Court will not permit questioning on this topic.

<u>Topic Seven</u>

The seventh proposed topic is "Other Questions about the Panel's Thoroughness." These proposed questions seek information related to whether the panel pursued evidence that Roe believed was relevant to the investigation. The Court will permit questioning on this topic.

<u>Topic Eight</u>

The last proposed topic is "Questions about [Roe's] Interactions with Non-Panelists." The first two proposed questions ask about the *frequency* of Roe's interactions with Princeton employees to discuss matters related to her complaint. The Court will permit questions of this type. The third sample proposed question, however, centers on an alleged change in another students' testimony and Roe's role in circumstances surrounding that alleged change. Although couched in terms of whether the panel asked Roe about this, the question appears to be an impermissible attempt to elicit testimony to undermine Roe's credibility with respect to her complaint against Doe. As such, the Court will not permit inquiry into the information sought by the third question for this topic.

Having considered the relevant factors and for the reasons stated, the Court finds good cause exists to impose the above-described limitations on the scope of Roe's deposition. Accordingly,

**IT IS** on this 5th day of June 2025

**ORDERED** Roe's deposition may proceed, and <u>the parties are to notify the Court of the date and time of the deposition</u>; and it is further

**ORDERED** that the scope of the deposition shall be limited in the manner specified in this Order.

s/ Justin T. Quinn  
HON. JUSTIN T. QUINN  
United States Magistrate Judge