**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**
**(Trenton)**

Linda Wong, Esq.
WONG FLEMING
400 Alexander Park Dr., Ste. 201
Princeton, New Jersey 08543
Tel: (609) 951-9520
Fax: (609) 951-0270
lwong@wongfleming.com

Amanda Shafer Berman (*pro hac vice*)
Eli L. Berns-Zieve (*pro hac vice*)
CROWELL & MORING LLP
1001 Pennsylvania Ave., NW
Washington, DC 20004
Tel: (202) 624-2500
aberman@crowell.com
eberns-zieve@crowell.com

*Attorneys for Defendant The Trustees of Princeton University, a not-for-profit educational corp. of the State of New Jersey (incorrectly referenced in the Complaint as "Princeton University")*

| | |
|---|---|
| JOHN DOE,<br>Plaintiff,<br><br>-vs-<br><br>PRINCETON UNIVERSITY,<br>Defendant. | Civil Action No. 22-5887 (RK) (JTQ)<br><br>Hon. Robert Kirsch, U.S.D.J.<br>Hon. Justin T. Quinn, U.S.M.J. |

**THE TRUSTEES OF PRINCETON UNIVERSITY'S REPLY IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

# TABLE OF CONTENTS

INTRODUCTION....................................................................................................1

ARGUMENT.........................................................................................................2

I. *Princeton III* is not the silver bullet Doe claims. ..........................................2

II. There is no evidence the Panel did not apply the preponderance of the evidence to the *two charges* for which Plaintiff was found responsible..........................................................................................5

III. There is no evidence of bias, let alone any affecting the two findings of responsibility..................................................................7

IV. Plaintiff admits that the Panelists were trained. ........................................11

V. Plaintiff has no competent evidence of damages..........................................11

CONCLUSION .....................................................................................................14

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Buckley v. Trenton Saving Fund Soc'y*,
111 N.J. 355, 544 A.2d 857 (1988) .......... 13

*Doe v. Hobart & William Smith Colls.*,
750 F. Supp. 3d 79 (W.D.N.Y. 2024), *appeal withdrawn*, No. 24-2815, 2025 WL 3071234 (2d Cir. June 17, 2025) .......... 2, 9

*Doe v. Princeton Univ.*,
30 F.4th 335 (3d Cir. 2022) .......... 1, 2, 3, 4, 5, 7, 8

*Doe v. Princeton Univ.*,
790 F. App'x 379 (3d Cir. 2019) .......... 3, 4

*Doe v. Trs. of Princeton Univ.*,
No. 24-7125, 2025 WL 1218314 (D.N.J. Apr. 28), appeal filed, No. 25-2014 (3d Cir. 2025) .......... 3

*Donohue v. Capella Univ., LLC*,
Civ. A. No. 22-5634, 2024 WL 3162921 (D.N.J. June 25, 2024) .......... 3

*Kurnik v. Cooper Health Sys.*,
2008 WL 2829963 (N.J. Super. Ct. App. Div. July 24, 2008) .......... 13

*Davis ex rel. LaShonda D. v. Monroe Cnty. Bd. of Educ.*,
526 U.S. 629 (1999) .......... 7

*Estate of McCartney v. Seton Hall Univ.*,
No. 24-6179, 2025 WL 2408713 (D.N.J. Aug. 20, 2025) .......... 3

*Nkrumah v. Univ. of Pittsburgh - of Commw. Sys. of Higher Educ.*,
No. 2:19-CV-1180, 2022 WL 1062303 (W.D. Pa. Apr. 8, 2022) .......... 2

*Olson v. Macalester Coll.*,
681 F. Supp. 3d 949 (D. Minn. 2023) .......... 2

*Picogna v. Bd. of Educ. of Twp. of Cherry Hill*,
143 N.J. 391, 671 A.2d 1035 (1996) .......... 13

*Powell v. Seton Hall Univ.*,
No. 21-cv-13709, 2022 WL 1224959 (D.N.J. Apr. 26, 2022) ..................................... 3

*Wysocki v. Wardlaw-Hartridge Sch.*,
No. 21-cv-14132, 2022 WL 2168212 (D.N.J. June 16, 2022) ..................................... 3

## INTRODUCTION

No reasonable fact-finder could say Doe's disciplinary Panel "violated in some substantial way" the RRR. The Panel conducted thirty-three interviews of twenty-six witnesses, collected and considered documentary evidence (*e.g.*, text messages, photographs, and videos), and issued detailed reports explaining its findings and rationale. Doe received all the process the RRR prescribes: notice of the charges; an interview; the right to submit written statements and evidence; the support of an advisor (in Doe's case, his lawyer); the right to cross-examine Roe; the right to review the case file; and the right to appeal the disciplinary outcome (which Doe did twice).

Following this process, the Panel found Doe *not responsible* on nine of eleven disciplinary charges. Doe cherry-picks aspects of that process he contends show Princeton breached the RRR. But Doe's opposition—indeed his entire case—requires the Court to ignore that *none* of the evidence he relies on to support his breach theories pertains to the two charges for which he was found responsible. Doe cannot show Princeton breached the RRR because of claimed issues with *different charges* for which Doe was found not responsible; that is simply common sense. Doe must have evidence that the two *responsible* findings were the product of an RRR breach. He does not.

Nor does *Princeton III* (which Doe falsely says Princeton ignores) rescue Doe's case. It is Doe who ignores *Princeton III*'s posture, facts, reasoning, and progeny. No district court has applied *Princeton III* at summary judgment, let alone in the expansive way Doe urges. And no reasonable jury could find an RRR breach on this record.

## ARGUMENT

### I. *Princeton III* is not the silver bullet Doe claims.

Doe says "[t]here is no daylight between" this matter and *Princeton III*[1] and accuses Princeton of "bend[ing] over backwards to avoid" it. Dkt. No. 121 ("Doe's Op.") at 10, 14. Both assertions are well off base.

Princeton has relied on *Princeton III* in each of its briefs.[2] But as Princeton has repeatedly explained, *Princeton III* concerned a motion to dismiss. We are at summary judgment. What the Third Circuit found "plausibly" showed bias at the Rule 12 stage now requires actual evidence. District courts regularly distinguish *Princeton III* at the summary judgment stage. *See, e.g.*, *Doe v. Hobart & William Smith Colls.*, 750 F. Supp. 3d 79, 115 (W.D.N.Y. 2024), *appeal withdrawn*, No. 24-2815, 2025 WL 3071234 (2d Cir. June 17, 2025) (distinguishing *Princeton III* as a motion to dismiss case and granting summary judgment to defendant); *Nkrumah v. Univ. of Pittsburgh - of Commw. Sys. of Higher Educ.*, No. 2:19-CV-1180, 2022 WL 1062303, at *10 n.8 (W.D. Pa. Apr. 8, 2022) (distinguishing *Princeton III* as a motion to dismiss case and granting summary judgment to defendant university); *Olson v. Macalester Coll.*, 681 F. Supp. 3d 949, 988–89 (D. Minn. 2023) (distinguishing *Princeton III* as a motion to dismiss case and granting summary judgment to college).

---

[1] *Doe v. Princeton Univ.*, 30 F.4th 335, 343 (3d Cir. 2022) ("*Princeton III*").

[2] *See* Dkt. No. 113-1 ("Princeton's MSJ") at 22; Dkt. No. 120 ("Princeton's Op.") at 11, 12, 14–17.

Doe characterizes *Princeton III* as overruling a body of case law holding that pursuing a breach of contract claim requires a plaintiff to show a school "violate[d] in some substantial way its rules and regulations." *Doe v. Princeton Univ.*, 790 F. App'x 379, 385 (3d Cir. 2019) ("*Princeton II*") (citation omitted); *see also* Princeton's Op. at 12 n.1. But *Princeton III* did not overrule (implicitly or otherwise) *Princeton I* and *Princeton II*, and district courts throughout the Third Circuit continue to apply the "substantial compliance" standard (including in cases in which Doe's counsel are involved). *See, e.g.*, *Doe v. Trs. of Princeton Univ.*, No. 24-7125, 2025 WL 1218314 (D.N.J. Apr. 28), appeal filed, No. 25-2014 (3d Cir. 2025) (citing *Princeton II* and dismissing breach of contract claim); *Estate of McCartney v. Seton Hall Univ.*, No. 24-6179, 2025 WL 2408713, at *2 (D.N.J. Aug. 20, 2025) (noting that courts "typically limit their review to a consideration of whether [] the university *substantially departed* from its own rules and regulations" and dismissing breach of contract claim) (cleaned up; emphasis added); *Donohue v. Capella Univ., LLC*, Civ. A. No. 22-5634, 2024 WL 3162921 (D.N.J. June 25, 2024) (same, and citing *Princeton II*); *Wysocki v. Wardlaw-Hartridge Sch.*, No. 21-cv-14132, 2022 WL 2168212 (D.N.J. June 16, 2022) (same); *Powell v. Seton Hall Univ.*, No. 21-cv-13709, 2022 WL 1224959 (D.N.J. Apr. 26, 2022) (same).

Doe argues *Princeton III* "implicitly overrules" *Princeton I* and *Princeton II* because the Third Circuit only looked "at whether Princeton substantially complied with each of th[e] individual [provisions]" at issue and "did not analyze whether Princeton had substantially complied with *other* procedural promises" in the RRR. Doe's Op. at 13

(first emphasis removed). That is incorrect. The Third Circuit did not do that *at the motion to dismiss stage* because it would have had to weigh the evidence. In fact, the Third Circuit remanded precisely because the district court credited evidence outside the complaint (the panel memo) over the allegations, which was inappropriate at the Rule 12 stage. *Princeton III*, 30 F.4th at 343. But we are no longer at the Rule 12 stage, and so the Court can appropriately now consider the whole of Princeton's process to show it did not "violate[] in some substantial way its rules and regulations." *Princeton II*, 790 F. App'x at 385 (citation omitted).

Doe next argues the Third Circuit "expressly rejected" Princeton's argument that the "mere invocation of the preponderance standard [in the panel memos] meant that a panel had, in fact, applied that standard," and then claims the Third Circuit "held [ ] that Princeton breaches the 2019-2020 RRR's promise to apply the preponderance standard when it fails to consider the entirety of the evidence with a neutral gaze, disregards exculpatory evidence, or renders inconsistent and skewed credibility determinations." Doe's Op. at 14, 16–17 (internal quotation marks and citation omitted; emphasis removed). The Third Circuit said nothing of the sort. The Third Circuit did not hold that, at summary judgment, Princeton cannot show it did not "violate in some substantial way" the RRR by pointing to actual evidence, including the Panel Memo's many applications of the preponderance standard, as well as the Panelists' undisputed, sworn testimony that they applied the preponderance standard. Rather, the Third Circuit held the district court should not have credited the panel memo at the *pleading*

*stage* because it *contradicted plaintiff's allegations*. *See Princeton III*, 30 F.4th at 342 (noting allegations must be credited at the Rule 12 stage "even if it strikes a savvy judge that actual proof of those facts alleged is improbable") (citation omitted); *see also* Princeton's Op. at 15–16. The court did not "expressly reject" the substance of the panel memo as credible evidence at summary judgment.[3] Nor did it hold, or even suggest, that there is a breach of the RRR where some aspect of the panel's analysis might be thought inconsistent or skewed even if, as a whole, the memo and other evidence show that the disciplinary decision was based on sufficient evidence to qualify as a preponderance.

## II. There is no evidence the Panel did not apply the preponderance of the evidence to the *two charges* for which Plaintiff was found responsible

The undisputed evidence here more than suffices to show that the Panel applied the preponderance of the evidence standard. It is undisputed the Panel Memo and Supplemental Panel Memo cite and discuss the preponderance standard throughout. *See* Exs. 1, 16. All of the Panelists' undisputed, sworn testimony is that they applied that standard. *See* Ex. 4 ¶¶ 8, 11, 12; Ex. 5 ¶¶ 8, 11, 12; Ex. 10 at 31:23–32:5, 33:23–34:2, 38:6–25; Ex. 11 at 19:15–20, 23:19–24:1, 26:9–13, 27:6–13, 60:8–18; Ex. 12 at 162:21–163:15. It is undisputed Roe (not Doe) appealed the Panel's finding that Doe was *not responsible* for nine of the eleven charges on the ground that the Panel had not properly

[3] Indeed, Princeton moved for summary judgment in *Princeton III* just last week. *See Doe v. Princeton*, No. 3:20-cv-04352-MAS-RLS, Dkt. No. 211. That was an exercise in futility if the Third Circuit already held plaintiff's allegations established a *per se* breach.

applied the preponderance standard[4]—and it is further undisputed the Appeal Panel rejected her appeal because it found the Panel had properly applied the preponderance of the evidence standard. *See* Ex. 22 at PU-0003526–PU-0003527. In short: the undisputed evidence is the Panel applied the preponderance of the evidence standard. No reasonable jury could conclude otherwise.

Doe has no evidence to the contrary. He devotes four pages to arguing the Panel's analysis of the oral sex and penetration charges show it failed to apply the preponderance of the evidence. *See* Doe's Op. at Part I.B. But Doe was found *not responsible* for these charges. And, in any event, how the Panel applied the preponderance of the evidence standard to the oral sex and penetration charges is not evidence of how (or whether) it applied the preponderance standard to the kissing and fondling charges for which the Panel found Doe *responsible*. Doe cites *no evidence* regarding the Panel's application of the standard to those charges, the only two for which he was found responsible. He cannot survive summary judgment by speculating that Crotty "re-writing" a finding (which is not a fair or accurate characterization, *see* Princeton's Op. at Part II.A), for which he was found *not* responsible shows a breach of a separate application of the standard. Doe must have actual evidence that the standard was misapplied *as to the two responsible findings*. He has none.

---

[4] That Roe appealed on this basis while Doe (represented by counsel) saved the argument for litigation shows why the Court should find Doe waived the issue.

What Doe frames as evidence the Panel did not apply the standard is evidence only of his disagreement with *how* the Panel applied the standard. *See, e.g.*, Doe's Op. at 20–21 (taking issue with how the Panel weighed evidence of whether Doe pushed Roe's head down for oral sex). But *Princeton III* forecloses pursuit of a breach claim premised on re-weighing evidence: "[A] plaintiff may not prevail where the evidence is closely balanced or inconclusive." *Princeton III*, 30 F.4th at 347 (citation omitted). And that, in turn, is consistent with Supreme Court precedent, as this Court has noted, that "courts should refrain from second-guessing the disciplinary decisions made by school administrators." Dkt. No. 39 at 18 (quoting *Davis ex rel. LaShonda D. v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 648 (1999)).

## III. There is no evidence of bias, let alone any affecting the two findings of responsibility.

Doe's bias argument boils down to a complaint that the Panel, and particularly Walter Wright, aggressively questioned his story. But Roe's testimony is the Panel critically examined her story and aggressively questioned her too. *See* Princeton's MSJ at Part II.A. The undisputed record is thus that the Panel treated both parties similarly harshly, which is hardly evidence of bias against Doe. Indeed, it is the precise *opposite* of the differential treatment *Princeton III* found plausibly alleged a breach of contract. *See* 30 F.4th at 340 (alleging Princeton pursued a disciplinary investigation of expelled male plaintiff, but not of a female student (his ex-girlfriend) for identical conduct); *see also* Princeton's Op. at 16–17 (detailing *Princeton III*'s allegations of differential treatment).

Doe has no evidence of the Panel treating him *more* harshly than Roe. He argues the Panel breached the RRR because it affirmatively credited Roe's account of the 2019 encounter with Doe as non-consensual even though "she told none of [her friends] the same story she told Princeton." Doe's Op. at 25 (emphasis removed). But there is no evidence that Roe told her friends inconsistent accounts, or something different than what she told the Panel. For the Panel to decline to conclude that Roe told her friends inconsistent accounts just because her friends' recollections varied months later is not "overlook[ing] or minimize[ing] glaring and substantial factors that would tend to undermine [Roe's] veracity[.]" *Princeton III*, 30 F.4th at 347. It would be rare indeed for a disciplinary panel to interview five students months after the fact and have them all recall and consistently convey the same thing. Recollections will always vary. That is why *Princeton III* found "glaring and substantial factors" plausibly showed a breach. *See id.* But more importantly, that is also why the Panel did *not* rely on Roe's friends' testimony to "affirmatively credit" her entire account. The Panel *only* credited that Roe consistently described the 2019 encounter as nonconsensual. *See* Ex. 16 at 5.

Doe's argument that the Panel overlooked a "massive contradiction" about the 2017 incident fares no better. Again, Doe was found *not responsible* for the 2017 incident. And the undisputed record is that it is Princeton's policy to conduct *separate* credibility assessments for separate incidents. *See* Ex. 9 at 203:16–204:18; Ex. 11 at 69:20–70:6. Indeed, the undisputed evidence is that the Panel found certain aspects of Doe's story about the 2017 encounter implausible, but did not consider those inconsistencies when

assessing the credibility of his account regarding the 2019 encounter. *Compare* Ex. 1 at 21–22 *with* Ex. 1 at 25. One need not try very hard to imagine what Doe would be arguing had the Panel found his account of the 2019 encounter not credible because it had found his account of the 2017 encounter with Roe not credible. No reasonable jury could find the Panel breached the RRR by separately assessing separate alleged incidents of misconduct.

Lastly, Doe returns to Roe's account of the hickeys. Again, Doe was found *not responsible* for the hickeys. It is thus unclear how he thinks the Panel "overlooked" inconsistencies in Roe's account of the hickeys. Unable to cite any evidence connecting the Panel finding him *not responsible* on the hickeys to it finding him *responsible* on the kissing and fondling charges, Doe repeats his argument that the Panel breached the RRR because it "found Jane credible whenever she had been clear and consistent[.]" Doe's Op. at 26–27. As detailed at length in Princeton's opposition to Doe's MSJ, the Panel made no such finding. *See* Princeton's Op. at Part II.B *et seq*. But more importantly, there was ample evidence in the disciplinary record of instances of *Doe* sharing with the Panel narratives the Panel then found were not fully factual, which lead the Panel to question his credibility. *See* Ex. 1 at 25–26; Ex. 16 at 7–9; *see also* Ex. 9 at 175:19–176:12, 176:24–178:1; Ex. 10 at 121:1–7, 123:24–124:2, 126:15–18, 153:19–154:13, 156:3–9, 168:8–169:3.

In short: even had the Panel concluded Roe made up a story about the hickeys, it would not have been a breach of the RRR's promise of impartiality for the Panel to

still find Roe more credible than Doe based on the record before it. There are lots of reasons the Panel found Doe not credible. *See, e.g.*, Ex. 1 at 25–26; Ex. 16 at 7–9. But we are not here to reweigh the evidence. The only question is whether a reasonable jury could conclude the Panel exhibited bias in its treatment of Doe as compared to Roe. No jury could.

Unable to produce evidence of the Panel treating him more harshly than Roe, Doe resorts to attempting to discredit her deposition testimony as "self-serving." Doe's Op. at 35. But Roe is not a party; she has no interest to "serve" here. Doe also claims "Princeton's lawyers" prepared Roe to testify with "deposition-prep-truth"—in other words, Doe accuses counsel of encouraging Roe to lie under oath. *Id.* at 36. This is an extraordinary claim for many reasons. First, Doe has no evidence to support it. Second, it is not at all "remarkable" (*id.* at 35) that Princeton assumed the burden and cost of representing Roe as she prepared for and testified at her deposition; Princeton offers such assistance to third party students and alumni involuntarily dragged into a suit against the University, knowing that they may not be able to obtain the assistance of counsel otherwise. Third, lying under oath would certainly not serve Roe's interests—or Princeton's. And finally, that lawyers prepared a witness for a deposition does not make sworn testimony any less true or create a genuine dispute of material fact.

Lawyers prepare most deponents—including Doe—for depositions. That Doe wishes Roe had not testified as she did is clear. But it was Doe that insisted Roe testify

over her objection and Princeton's. *See* Dkt. Nos. 76, 100. Doe must now live with her testimony.

**IV. Plaintiff admits that the Panelists were trained.**

It is undisputed that the panelists were trained. Lacking any evidence to the contrary, Plaintiff shifts the goalposts, arguing the Panelists were not *adequately* trained. But he points to no contractual requirement of "adequate" training. And the undisputed evidence is that the panelists were trained regularly, and specifically on how to investigate and resolve claims of sexual misconduct. *See* SUMF ¶¶ 50–56; Ex. 4; Ex. 5; Ex. 10 at 26:4–7, 72:8–9; *see also* Ex. 23 at 23:7–26:22, 31:18–33:1, 33:11–18, 34:24–35:6; Exs. 24–28. This allegation thus cannot sustain Doe's breach claim at the summary judgment stage. *See* Princeton's MSJ at Part II.B; Princeton's Op. at Part III.C.

**V. Plaintiff has no competent evidence of damages**

Princeton does not disclose disciplinary penalties that did not result in separation from the University. Doe's Probation and Censure penalties thus do not appear on his transcript and will not be shared with a third party unless Doe gives permission, or a court orders it. Doe admits this. *See* Dkt. No. 121-1 ("Doe's SUMF Resp.) ¶¶ 66–68.

Unable to dispute the record in this regard, Doe mischaracterizes it. He says "Princeton wants John and its other students to simply take the unethical position of lying, repeatedly if necessary, about their discipline history." Doe's Op. at 39. That is false. Princeton decides what is or is not part of a student's disciplinary history based on its policies, and it has determined that "Disciplinary Probation" and "Censure" do

not qualify. It is thus no lie for a student who received "Disciplinary Probation" or "Censure" to tell a third-party they have no disciplinary history. They do not.

Doe argues "courts across the country have held that suspension or expulsion … is irreparable harm warranting *preliminary* injunctive relief, because the gap in education will inevitably require the student to explain (after graduation) the reason for the gap, and thus to reveal the *reason* for the discipline, just as John must now do." *See* Doe's Op. at 38 n.2. But Doe was not suspended or expelled. There is no "gap" on his transcript for him to explain. These cases are thus wholly inapposite, and show injunctive relief is not appropriate as Princeton will not disclose Doe's sanction.

Doe's other arguments regarding his claimed damages are easily dispensed with. Doe says he chose not to apply to certain graduate schools—but there is no *evidence* (as required at summary judgment) that those schools would have rejected him. Rather, the lone school to which Doe applied, which Doe admits is one of the most prestigious graduate programs in the country, *admitted him*. *See* Doe's SUMF Resp. ¶¶ 77–78. Doe claims to "know" that his sanction will render certain jobs unobtainable even though Princeton will not disclose it. But what Doe claims to "know" is not evidence of anything—including what those jobs are, what qualifications they require, or whether those jobs would in fact have rejected Doe had he applied (let alone because of a sanction that Princeton would not report to them).

Doe next argues injunctive relief is warranted because, even if Princeton does not disclose his disciplinary history, others will, and so "there is still a real risk that one's

disciplinary history will be discovered." Doe's Op. at 40 (emphasis removed). But no relief the Court can grant will make that any less true. Injunctive relief cannot "erase" Doe's disciplinary process anymore than Princeton's non-reporting policy already has. It certainly cannot "erase" Doe's disciplinary history such that his peers forget it happened. And Doe's peers know about his disciplinary process because *he* disclosed that information. *See* Doe's SUMF Resp. ¶ 71 (admitting that Doe disclosed information about the disciplinary process to his friends, people he has dated, coworkers, and others he has come into contact with); *see also* Pl. Ex. 39 at Doe_0209 – Doe_0210, Doe_0221, Doe_0223 – Doe_0225, Doe_0232, Doe_0236 – Doe_0237, Doe_0243, Doe_0273 – Doe_0274, Doe_0290 (Doe's text messages with friends discussing his University disciplinary process). There is no evidence in the record (and Doe cites none) that Princeton, in violation of its disciplinary privacy and reporting policies, disclosed to third parties that Doe was a respondent in a disciplinary proceeding either while it was ongoing or after.

Lastly, Doe argues emotional distress damages—which are generally not available for breach of contract—are available here because Princeton was "wanton or reckless." Doe's Op. at 41. But to support that claim, Doe merely restates his bias arguments. *Id.* at 41–42. This falls far short, as a matter of law, from showing wanton or recklessness. *See Buckley v. Trenton Saving Fund Soc'y*, 111 N.J. 355, 371, 544 A.2d 857, 866 (1988) (holding that even "intentional or deliberate" conduct is not "wantonly reckless or malicious" so as to warrant emotional distress damages); *cf. Picogna v. Bd. of*

*Educ. of Twp. of Cherry Hill*, 143 N.J. 391, 394–95, 671 A.2d 1035, 1036–37 (1996) (finding emotional distress damages recoverable where school superintendent "intentionally and maliciously" fabricated a record and made false accusations of criminal conduct to support terminating assistant superintendent). Nor is this case remotely akin to the kind of contract cases where punitive damages are ordered—as the unpublished case to which Doe cites makes very clear. *See Kurnik v. Cooper Health Sys.*, 2008 WL 2829963, at *16–17 (N.J. Super. Ct. App. Div. July 24, 2008) (declining to grant punitive damages in breach of contract case and listing the few rare circumstances—for example, breach of a contract of marriage—where they are warranted, none of which exist here).

Most tellingly, Doe's Statement of Undisputed Material Facts includes *zero* facts regarding his claimed damages. It is thus undisputed that Doe cannot prove damages. Summary judgment for Princeton is therefore warranted for this reason too.

## CONCLUSION

For the foregoing reasons, Princeton requests that the Court grant summary judgment in its favor

Dated: November 25, 2025           Respectfully submitted,

                                                    */s/ Linda Wong*

                                               Linda Wong, Esq.
                                               **WONG FLEMING, P.C.**
                                               400 Alexander Park Dr., Ste. 201
                                               Princeton, NJ 08543-3663
                                               Tel: (609) 951-9520

Fax: (609) 951-0270
lwong@wongfleming.com

Amanda Shafer Berman, Esq. (*pro hac vice*)
Eli L. Berns-Zieve, Esq. (*pro hac vice*)
**CROWELL & MORING LLP**
1001 Pennsylvania Ave., NW
Washington, DC 20004
(202) 624-2500
aberman@crowell.com
eberns-zieve@crowell.com

*Attorneys for Defendant The Trustees of Princeton University, a not-for-profit education corp. of the State of New Jersey*

**CERTIFICATE OF SERVICE**

I hereby certify that on November 25, 2025, a true and correct copy of the foregoing was furnished to all counsel of record.

*/s/ Linda Wong*
Linda Wong, Esq.