**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

---

**JOHN DOE,**

**Plaintiff,**

**v.**

**PRINCETON UNIVERSITY,**

**Defendant.**

**Civil Action Number:**

**22-cv-05887-RK-JTQ**

**Oral Argument**

---

Clarkson S. Fisher Federal Building & U.S. Courthouse
402 East State Street
Trenton, New Jersey 08608
Wednesday, December 10, 2025
Commencing at 1:30 p.m.

**B E F O R E:**

**THE HONORABLE ROBERT KIRSCH,**
**UNITED STATES DISTRICT JUDGE**

**A P P E A R A N C E S**

DYNAMIS LLP
BY: JAMIE HOXIE SOLANO, ESQUIRE
1200 Connell Drive
Berkeley Heights, NJ 07922

-and-

DILLON PLLC
BY: JUSTIN DILLON, ESQUIRE
CHRISTOPHER C. MUHA, ESQUIRE
KIMBERLY BLASEY, ESQUIRE
1717 K Street NW, Suite 900
Washington, D.C. 20006
For the Plaintiff

Paula Horovitz, Official Court Reporter
paula_horovitz@njd.uscourts.gov
609-815-2755
Proceedings recorded by mechanical stenography; transcript produced by computer-aided transcription.

**APPEARANCES CONTINUED:**

WONG FLEMING
BY: AMELIA TAYLOR, ESQUIRE
400 Alexander Park Drive, Suite 201
Princeton, NJ 08540

-and-

CROWELL & MORING LLP
BY: ELI BERNS-ZIEVE, ESQUIRE
AMANDA SHAFER BERMAN, ESQUIRE
1001 Pennsylvania Avenue
Washington, DC 20004
For the Defendant

A L S O P R E S E N T:

The Honorable Justin T. Quinn, United States Magistrate Judge

(PROCEEDINGS held in open court before The Honorable Robert Kirsch, United States District Judge, at 1:35 p.m.)

DEPUTY CLERK: All rise. The Honorable Robert Kirsch presiding.

THE COURT: We'll go on the record, please.

Doe v. Princeton University, Docket Number 22-5887.

Appearances first from the plaintiff.

MS. SOLANO: Good afternoon, your Honor.

Jamie Hoxie Solano on behalf of Dynamis LLP, joined by Chris Muha, Justin Dillon, and Kimberly Blasey of Dillon PLLC, on behalf of the plaintiff, John Doe.

THE COURT: Nice to see you, as always, Ms. Solano. Welcome.

MS. SOLANO: Thank you.

THE COURT: Please be seated.

Who will be speaking for the plaintiff?

MR. MUHA: I will.

THE COURT: And I am sorry, your last name?

MR. MUHA: It's Muha, M-U-H-A.

MR. BERNS-ZEIVE: Good afternoon, your Honor.

MS. BERMAN: Good afternoon, your Honor.

MR. BERNS-ZEIVE: Eli Berns-Zeive of Crowell Moring, on behalf of the Trustees of Princeton University.

MS. BERMAN: Amanda Berman, Crowell Moring, on behalf of Princeton.

THE COURT: Welcome.

MS. TAYLOR: Amelia Taylor on behalf of the Trustees of Princeton University.

THE COURT: Who is speaking for defendant?

MR. BERNS-ZEIVE: Me, your Honor.

THE COURT: And how do I pronounce your name?

MR. BERNS-ZEIVE: Berns-Zieve.

THE COURT: Can I stick with Berns?

MR. BERNS-ZEIVE: You can stick with Eli if you prefer.

THE COURT: Well, thanks. You can be seated.

So I am very familiar with this case. I'm more familiar with this case and the sorted facts of this case than maybe I would have wished.

Having said that, Judge Quinn is here, who I know has labored tirelessly to bring some common sense here. He's got more persistence -- well, he's got plenty of persistence.

I have reviewed the voluminous submissions, and I'm going to give the counsel the benefit of my observations in the jury room off the record. And I appreciate Judge Quinn, his efforts in this case. I know the baton was passed from Judge Arpert to him, both have the same view of the case. And, by the way, it's my view.

So we're going to see what we can come up with. I think the oral argument aspect of today is going to be very

limited because I'm prepared to rule, but I'm hoping for some sensible outcome here, if the parties are reasonable.

Okay? So with that in mind -- did I say something that made your crest fall right there, counsel?

MS. BERMAN: No.

THE COURT: That would not be the first time that I said something that caused a lawyer to shrink.

Did I say something that was inconsistent with your aspirations here today?

MS. BERMAN: No, your Honor. I think you're referring to settlement, and we have discussed that many times, and my client is not prepared to settle the case, so I was taking your statement to refer to that.

THE COURT: You are correct. And I appreciate your client's perspective.

Is your client here?

MS. BERMAN: He is not, your Honor. We don't have a representative from Princeton here today.

THE COURT: I had had my chambers reach out, I think on Monday, to direct somebody -- I think the plaintiff has authority, correct?

MS. SOLANO: Yes, your Honor.

THE COURT: Yes. And I'm surprised to hear that. We communicated very clearly that we expected somebody from Princeton to be here.

I accept what you're saying, that Princeton is not interested in resolving the case. That's neither here nor there. I directed somebody to be here. I am surprised that they are not, unless somebody is sick.

MS. BERMAN: Your Honor, my apologies. We didn't -- so we at Crowell & Moring have been lead in representing Princeton. We didn't receive the call, and, unfortunately, Ms. Wong, primary local counsel, did not convey that to us. She confirmed that there was a hearing; she, unfortunately, did not convey to us that you expected a representative from Princeton to attend. So my apologies on that.

THE COURT: I believe it was in writing. I know I instructed or requested one of my law clerks to reach out.

Ms. Solano, how was that done? Was it done telephonically or by e-mail?

MS. SOLANO: Your Honor, what I received was a phone call, telephonically.

THE COURT: I will assume -- Samantha, do you know how that was done?

LAW CLERK: It was a call to local counsel.

THE COURT: It was a call to local counsel.

And then I confirmed as recently as yesterday that nobody from Princeton in any event said somebody is traveling internationally, so I presumed somebody would be here.

MS. BERMAN: Your Honor, as I said, we did not get the

message from our local counsel that somebody from Princeton had to be here, so we don't have somebody here. My deepest apologies for that. We certainly would have had I known that was the mandate.

THE COURT: Okay. I'll see the two lead lawyers in the jury room, please.

DEPUTY CLERK: All rise.

THE COURT: Everyone else can be seated.

(Off the record discussion held in the jury room.)

THE COURT: You can be seated. Thanks. We're back on the record.

I had an extended off-the-record exchange with counsel. I understand that there are lawyers who prepared for argument today. As I indicated to your colleagues, there's no need because I'm denying the cross-motions. There are some 200 pages of briefings which were submitted very comprehensively by both sides. The case is very well lawyered, with dozens of exhibits. And, essentially, the framework is, for a breach of contract here, the standard, as I understand it, is did the school follow its established procedures, and was the administrative process fundamentally fair. I think Princeton has ably demonstrated that the school followed its established procedures.

Was it, by all accounts, a comprehensive investigation, administratively? By my count, and Ms. Berman,

you can correct me, I think there were 26 witnesses which were interviewed.

Was that just on the first aspect of the investigation, or is that in toto?

MR. BERNS-ZEIVE: There were 26 witnesses in total interviewed, I think 33 times.

THE COURT: Understood.

There are two aspects of this tortured administrative proceeding. 26 individuals were interviewed. The two principals were interviewed seven times between the two of them. The investigators interviewed folks and/or friends for both Doe and Roe.

It's very clear from the iterations and the redactions and the edits throughout that Princeton undertook what I view to be an exhaustive administrative hearing underlying these allegations.

The questions, which abound in terms of summary judgment, is the fundamental fairness aspect. There are a number of genuine issues of material fact which jump off the page.

The one I mentioned to counsel off the record, which was obvious to the Court, is the e-mail correspondence, Mr. Wright, who is one of the investigators in this case. A reasonable jury or a reasonable fact-finder may find after consideration of all of the evidence and making credibility

determinations, which I do not make at this juncture, that that evidenced predisposition, predilection against the plaintiff such that a reasonable jury or fact-finder could find that that investigator was biased and may have influenced his view of the allegations.

I don't need to go much beyond that at this juncture. I know there are aspects that allegations that the plaintiff levels that he was treated differently, disparately from Roe, and there are also aspects of inconsistent credibility determinations on when certain things happened, and Ms. Roe was credited for certain aspects of her allegations but discounted as to others.

I guess the bottom line of what I'm saying is, there are so many factual determinations here that it would be improper for the Court to weigh in, and a full airing in terms of credibility of witnesses, evaluation of body language, subject to cross-examination, which will help inform the finder of fact. So I'm denying the cross-motions.

I do appreciate the excellent lawyering, and I do apologize to the lawyers who prepared on both sides. Your colleagues articulated how hard you worked to prepare for today, and we can do a moot off-the-record if you want.

So I'm denying the cross-motions.

I did feel that it was a productive conversation off the record with counsel, and we will proceed accordingly.

There's an aspect as to the damages, which is separate and distinct from what I just said. In the event that this matter goes forward, folks are going to be busy, and the damages aspect would be more appropriate at an in limine than for the Court to rule now.

I'm not sure the plaintiff, frankly, can get all of the remedies it seeks. I think it would be more appropriate to deal with that in a pretrial in limine, should it go that far.

So I'm not ruling on that aspect of it.

I'm denying the cross-motions, and at a later date, in limine, you can brief that in a limited fashion. I do not allow carte blanche in limine motions. This case is well lawyered. I think it's a bench action. I don't need 75 in limines. I will deal with legal and evidentiary issues as they arise, except for the big-ticket things.

So I generally, in civil cases, limit in limines to three per side and the pagination. But you will get to talk to my learned colleague, Judge Quinn, about this should it go down that road.

Okay? Did I miss anything from the plaintiff?

MR. MUHA: No, your Honor. Thank you.

THE COURT: Where did you folks travel in from?

MR. MUHA: From Washington DC, your Honor.

THE COURT: And what time is your train?

MR. MUHA: Well, we had a 5:30, but I think we'll try

to get an earlier one at this moment.

THE COURT: Okay. And, counsel, where did you come from? Also Washington?

MR. BERNS-ZEIVE: Yes, your Honor.

MR. MUHA: And, your Honor --

THE COURT: You can talk on the train ride home.

MR. MUHA: Absolutely.

MR. BERNS-ZEIVE: Chris and I have done a lot of talking.

MR. MUHA: We get along well despite the language in our brief.

THE COURT: I'm used to that.

Anyway, pleasure to have you all. Excellent jobs in writing, and I'm here to assist the parties in any way I can.

MR. MUHA: Thank you, your Honor.

MR. BERNS-ZEIVE: Thank you.

THE COURT: Thank you. Happy holidays to everybody.

(The proceedings concluded at 2:52 PM)

- - - - - - - - - - - - - - - - - - - - -

**FEDERAL OFFICIAL COURT REPORTER'S CERTIFICATE**

- - - - - - - - - - - - - - - - - - - - -

I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

/S/ Paula Horovitz, RMR, CRR
12/10/2025

*Court Reporter/Transcriber*